UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,, <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF WESTON, <br><br> Defendant. | C. A. No. 1:05-CV-11166-EFH |

## ANSWER AND COUNTERCLAIM

1. The Town of Weston ("Weston") is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint for Declaratory Relief and Monetary Judgment ("Complaint"), and therefore denies them.

2. Weston admits the allegations contained in Paragraph 2 of the Complaint.

3. Weston admits the allegations contained in Paragraph 3 of the Complaint.

4. Weston is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint that the Court has jurisdiction over this matter under 28 U.S.C. § 1332 as Hartford has citizenship diverse from Weston, and the amount in controversy exceeds $75,000.00, and, therefore, denies them. Weston denies the remaining allegations contained in Paragraph 4 of the Complaint.

5. Weston admits the allegations contained in Paragraph 5 of the Complaint.

6. Weston admits the allegations contained in Paragraph 6 of the Complaint.

7. Weston admits the allegations contained in Paragraph 7 of the Complaint.

8. Weston admits the allegations contained in Paragraph 8 of the Complaint.

B0423511v1

9. Weston admits the allegations contained in Paragraph 9 of the Complaint.

10. Weston admits that Weston terminated the June 25, 2001 contract for construction between Weston and Jan Five Corporation d/b/a Alexandra Construction effective July 15, 2004. Weston denies the remaining allegations contained in Paragraph 10 of the Complaint.

11. Weston is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint, and therefore denies them.

12. Weston admits the allegations contained in Paragraph 12 of the Complaint.

13. Weston admits that on or about November 18, 2004, Weston and Hartford Fire Insurance Company ("Hartford") executed a Takeover Agreement, a written document, the terms of which speak for themselves. Weston denies the remaining allegations contained in Paragraph 13 of the Complaint.

14. Weston denies the allegations contained in Paragraph 14 of the Complaint.

15. Weston denies the allegations contained in Paragraph 15 of the Complaint.

16. Weston admits that during the course of the performance of the work under the Takeover Agreement, disputes arose between Hartford and Weston. Weston denies the remaining allegations contained in Paragraph 16 of the Complaint.

17. Weston admits that it terminated the Takeover Agreement. Weston denies the remaining allegations contained in Paragraph 17 of the Complaint.

18. Weston repeats, reasserts and incorporates by reference its responses to Paragraphs 1 through 17 above as if fully set forth herein.

19. Weston denies the allegations contained in Paragraph 19 of the Complaint.

20. Weston denies the allegations contained in Paragraph 20 of the Complaint.

21. Weston denies the allegations contained in Paragraph 21 of the Complaint.

B0423511v1

22. Weston repeats, reasserts and incorporates by reference its responses to Paragraphs 1 through 21 above as if fully set forth herein.

23. Weston denies the allegations contained in Paragraph 23 of the Complaint.

24. Weston denies the allegations contained in Paragraph 24 of the Complaint.

25. Weston repeats, reasserts and incorporates by reference its responses to Paragraphs 1 through 24 above as if fully set forth herein.

26. Weston states that statements made in Paragraph 26 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary. To the extent the Court deems that Paragraph 26 necessitates a response from Weston, Weston denies the statements made in Paragraph 26 of the Complaint.

27. Weston states that statements made in Paragraph 27 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary. To the extent the Court deems that Paragraph 27 necessitates a response from Weston, Weston denies the statements made in Paragraph 27 of the Complaint.

28. Weston states that statements made in Paragraph 28 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary. To the extent the Court deems that Paragraph 28 necessitates a response from Weston, Weston denies the statements made in Paragraph 28 of the Complaint.

29. Weston states that statements made in Paragraph 29 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary. To the extent the Court deems that Paragraph 29 necessitates a response from Weston, Weston denies the statements made in Paragraph 29 of the Complaint.

30. Weston denies the allegations contained in Paragraph 30 of the Complaint.

31. Weston denies the allegations contained in Paragraph 31 of the Complaint.

32. Weston denies the allegations contained in Paragraph 32 of the Complaint.

33. Weston denies the allegations contained in Paragraph 33 of the Complaint.

34. Weston repeats, reasserts and incorporates by reference its responses to Paragraphs 1 through 33 above as if fully set forth herein.

35. Weston states that statements made in Paragraph 35 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary. To the extent the Court deems that Paragraph 35 necessitates a response from Weston, Weston denies the statements made in Paragraph 35 of the Complaint.

Weston states that Hartford's "WHEREFORE" section of the Complaint does not contain averments or allegations, and as such, no response is necessary. To the extent the Court deems that the "WHEREFORE" section of the Complaint necessitates a response from Weston, Weston denies the statements made in the "WHEREFORE" section of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Hartford's Complaint fails to state claims upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Hartford lacks standing to claim that Weston breached the June 25, 2001 contract for construction between Weston and Jan Five Corporation d/b/a Alexandra Construction.

### THIRD AFFIRMATIVE DEFENSE

Hartford's claims are barred by the equitable doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Hartford's claims against the City are barred by the doctrine of estoppel.

B0423511v1

**FIFTH AFFIRMATIVE DEFENSE**

Hartford's claims are barred by its own breaches of the Takeover Agreement.

**SIXTH AFFIRMATIVE DEFENSE**

Hartford's claims are barred because it has failed to sustain any damages from Weston's actions and any alleged damages incurred resulted from the acts or omissions of Hartford or third parties or entities over which the Weston had no control.

**SEVENTH AFFIRMATIVE DEFENSE**

Hartford's Complaint is premature in that Hartford has not completed its obligations under the Takeover Agreement.

**EIGHTH AFFIRMATIVE DEFENSE**

Hartford's claims are barred by virtue of its failure to satisfy conditions precedent.

**NINTH AFFIRMATIVE DEFENSE**

Hartford's Complaint is barred by virtue of its failure to comply with the notice and claim provisions of the June 25, 2001 contract for construction between Weston and Jan Five Corporation d/b/a Alexandra Construction.

**TENTH AFFIRMATIVE DEFENSE**

The Court lacks subject matter jurisdiction to hear Hartford's claims.

The City reserves the right to raise such additional affirmative defenses as the evidence developed in this matter may dictate.

**<u>COUNTERCLAIMS</u>**

Weston makes counterclaims against Hartford in response to: (a) Hartford's refusal to fulfill its obligations under a performance bond (the "Bond") naming Weston as beneficiary, whereby Hartford agreed to complete the June 25, 2001 contract for construction between Weston and Hartford's principal, Jan Five Corporation, d/b/a Alexandra Construction Alexandra

5

B0423511v1

and (b) Hartford's subsequent breach of the Takeover Agreement between Weston and Hartford whereby Harford agreed to complete a portion of Alexandra's incomplete and defective work under the Contract.

Weston more fully sets out its claims as follows:

## PARTIES

1. Plaintiff, Town of Weston ("Weston"), is organized pursuant to the laws of the Commonwealth of Massachusetts and has its main office at 378 Town House Road, Weston Massachusetts. Additionally, the Town of Weston School Department has an office at 89 Wellesley Street, Weston Massachusetts.

2. Hartford Fire Insurance Company ("Hartford") is a company affiliated with the Hartford Financial Services Inc., with headquarters in Hartford Connecticut, and is authorized to engage in the business of suretyship within the Commonwealth of Massachusetts. Hartford's principal office for conducting business in Massachusetts is located at 150 Federal Street, Boston, Massachusetts.

## FACTS

3. On or about June 25, 2001, Weston, acting by and through the Town of Weston School Committee, hired Jan Five Corporation, d/b/a Alexandra Construction ("Alexandra"), pursuant to a written contract for construction ("Contract") to perform certain work involving the construction of additions and renovations to the Country and Woodland Elementary Schools (the "Project") in the Town of Weston.

4. Weston fully performed its obligations under the Contract.

5. Throughout the course of the Project's construction, Alexandra failed (among other things) to:

B0423511v1

    (a)    Perform the work in accordance with the Contract's deadlines and time restrictions;

    (b)    Perform the work in accordance with the Contract's Plans and Specifications;

    (c)    Furnish sufficient and properly skilled manpower to the Project;

    (d)    Properly coordinate the Project's trade contractors and properly sequence the work;

    (e)    Prepare submittals in a timely manner;

    (f)    Properly supervise the work of the Project's trade contractors and its own forces;

    (g)    Employ competent supervisory staff;

    (h)    Properly pay its subcontractors;

    (i)    Properly store materials;

    (j)    Comply with the Project's February 20, 2001 Order of Conditions;

    (k)    Provide a safe Project work Site;

    (l)    Comply with the Project's Health & Safety Plan;

    (m)    Promptly and properly correct defective and/or non-conforming work;

    (n)    Provide Work Plans when working in occupied areas;

    (o)    Provide coordination drawings;

    (p)    Keep the Project Site clean; and

    (q)    Timely and properly perform approximately $700,000 in punch list items on the Project.

6.    Pursuant to the Contract, Alexandra was required to provide a performance surety bond with Weston as beneficiary.

7.    Hartford, as surety, issued a performance bond (the "Bond") to Alexandra that secures performance by Alexandra of all work required under the Contract. Pursuant to the Bond's terms, Harford agreed to complete all of Alexandra's obligations under the Contract in

B0423511v1

the event "the Contract is violated or not complied with or abandoned by [Alexandra], or is terminated by [Weston] for cause."

8.   The Project was scheduled, in the Contract, to be substantially complete on August 1, 2003. The Project was not certified as substantially complete until November 13, 2003.

9.   By July 1, 2004, approximately 229 days after certification of substantial completion, Alexander had failed to complete approximately $700,000 in punch-list items that had been outstanding on the Project.

10.  On or about July 1, 2004, Weston sent a letter, certified mail, return receipt requested, to Alexandra notifying it that Weston would terminate the Contract for cause in 14 days if Alexandra failed to complete its work under the Contract. Weston provided a copy of the July 1, 2004 "14-day" letter to Hartford.

11.  By July 15, 2004, Alexander had failed to complete the outstanding punch-list work, and other incomplete and defective work on the Project.

12.  On or about July 15, 2004, Weston sent a second letter, certified mail, return receipt requested, to Alexandra notifying it that Weston was terminating the Contract due, among other things, to Alexandra's failure to complete it work on the Project.

13.  Also on or about July 15, 2004, Weston sent a letter, certified mail, return receipt requested, to Hartford, notifying it that Weston had terminated the Contract for cause, and demanded that Hartford fulfill its obligations under the Bond.

14.  Hartford refused to fulfill its obligations under the Bond. Instead, Hartford insisted on entering into an agreement whereby Hartford would complete only portions of Alexandra's work under the Contract (the "Takeover Agreement"). In an effort to have at least

B0423511v1

portions of the Project completed as expeditiously as possible, Weston agreed to negotiate the terms of the Takeover Agreement.

15. During the negotiations, Weston received notice, in a letter dated September 21, 2004 from Carlisle SynTec Incorporated ("Carlisle"), the roofing system supplier to the Project, that Alexandra had failed to pay A.J. Desjardins Roofing Co. ("Desjardins") its roofing subcontractor for its work on the Project. Carlisle informed Weston that Carlisle would revoke the warranty for the Project's roofing system unless and until Desjardins was paid.

16. Weston notified Hartford in a letter dated October 6, 2004 of Carlisle's demands, enclosing Carlisle's September 21, 2004 letter. Weston further demanded that Hartford, pursuant to its obligations under the Bond, pay Desjardins all amounts due under the subcontract.

17. Hartford failed to respond to Weston's notification and demand.

18. In a facsimile transmission dated October 12, 2004, Carlisle notified Weston that it would be suspending additional warranties on Carlisle's roofing system until Desjardins was paid.

19. Weston notified Hartford in a letter also dated October 12, 2004 of Carlisle's latest actions, and again demanded that Hartford perform its obligations under the Bond and pay Desjardins amounts owed under the subcontract.

20. Hartford failed to respond to Weston's second notification and demand.

21. On or about November 18, 2004, Weston and Hartford executed the Takeover Agreement. Pursuant to the Takeover Agreement, the parties agreed that Weston reserved all of its rights under the Contract and the Bond. Weston and Hartford further agreed that the Bond will remain in full force and effect despite the execution of the Takeover Agreement.

9

22. Further pursuant to the Takeover Agreement, Weston and Hartford agreed on a "Scope of Work," valued at $541,732.60 (approximately 69 % of the $787,159.60 in incomplete and defective work left on the Project by Alexandra), that Hartford would complete.

23. Under the explicit terms of the Takeover Agreement, Hartford agreed to complete the interior portion of the Scope of Work by January 31, 2005, and the exterior portion of the Scope of Work by May 15, 2005.

24. The Contract between Alexandra and Weston, which Hartford is obligated to complete pursuant to the Bond, included a "time is of the essence" provision.

25. Pursuant to the Takeover Agreement, Hartford further agreed to provide Weston with a weekly written "look ahead" schedule for the upcoming week's work, describing the work it intended to perform, and containing a list of the trade contractors that will perform that week's work, along with the dates, times and locations within each School where such work would be performed. The "look ahead" schedules were critical to Weston as it needed to make sure that the scheduled work would not affect the safety and security of the students attending the schools in which the work was to be performed.

26. Weston agreed to pay for the Project Architect's services related to one (1) final inspection and review of completed items of the Scope of Work. Hartford agreed to pay for any other inspection and review, other than the final inspection and review, requested by Hartford.

27. The Takeover Agreement also obligated Hartford to take certain measures to guard the health and safety of the students and staff of the Country and Woodland Elementary Schools, and to guard from disrupting school operations while it performed work at the Schools. Hartford repeatedly failed to fulfill these obligations.

B0423511v1

28. Hartford, over Weston's objections, retained Alexandra to perform the Scope of Work under the Takeover Agreement.

29. Despite Hartford's agreement to complete the interior portion of the Scope of Work by January 31, 2005, Alexandra failed to begin work until December 4, 2004, nearly three (3) weeks after the execution of the Takeover Agreement. Moreover, Weston was informed that Alexandra would perform work only on weekends and over the holiday break.

30. As of December 7, 2004, Hartford had failed to provide Weston with a "look ahead" schedule. Weston notified Hartford that it had serious concerns whether Hartford would be able to complete the interior portion of the Scope of Work by the agreed upon date of January 31, 2005, given Alexandra's late start and its intention to only work weekends and holidays. Weston also questioned Hartford's commitment to manage the work given the lack of "look ahead" schedules, and the fact that Hartford's representative for the Scope of Work failed to accompany Weston and Alexandra on the walk-through of the work.

31. On December 9, 2004 Hartford again failed to provide Weston with a "look ahead" schedule for the upcoming week's work. In a letter dated December 9, 2004, Weston informed Hartford of its failure, and reminded Hartford that the schedule was necessary to assure student safety and to prevent disruptions to teachers and students.

32. By December 23, 2004, the only information Hartford had provided in the few "look ahead" schedules it bothered to provide were the dates that Alexandra intended to perform work. Hartford failed to inform Weston of the time, the type and the location of work to be performed, and the trades that would perform the work as it was required to do by the Takeover Agreement. As a result, Alexandra and its subcontractors began disrupting classroom materials and furniture when performing work. Alexandra further failed to use proper air quality and

11

hygiene controls. Finally, Alexandra's subcontractors failed to bring adequate equipment to perform their work; in one instance, painters arrived to work without ladders.

33. Weston, in a letter from counsel dated December 23, 2004, informed Hartford of Hartford's failures to comply with it obligations under the Takeover Agreement. Weston also expressed concern that Hartford would be unable to complete the work by the January 31, 2005 deadline.

34. On January 10, 2005, Hartford announced that Alexandra would complete the interior portion of the Scope of Work at the Country Elementary School by January 13, 2004. Hartford insisted that Weston have the Project Architect conduct a preliminary inspection of the Country Elementary School.

35. Despite Hartford's announcement, by January 13, 2005 significantly less than half of the agreed upon interior work at the Country Elementary School had been completed.

36. Weston and Hartford met on January 13, 2005 to discuss the lack of progress on the Scope of Work, and Hartford's continued failure to comply with its several obligations under the Takeover Agreement. Prior to the meeting, Hartford had supplied Weston with a punch-list schedule for the outstanding interior Scope of Work.

37. Hartford represented that it would improve its efforts and performance, and would complete the interior portion of the Scope of Work by January 31, 2005, as originally agreed to. Hartford also agreed to provide more detailed "look ahead" schedules in compliance with the terms of the Takeover Agreement. Finally, Hartford agreed to pay the cost of the Architect's review and inspection of the work performed to date.

38. Despite Hartford's representations, the punch-list schedule supplied by Hartford did not include several items Hartford had originally agreed to complete in the Takeover

B0423511v1

Agreement, but had not been completed. Moreover, Hartford's representative for the Scope of Work was completely unfamiliar with the contents of the punch-list schedule.

39. Following the meeting, Weston memorialized its concerns with Hartford's performance to date, as well as its doubts that Hartford would complete the interior work on time, in a letter dated January 13, 2005.

40. By January 31, 2005, the date by which Hartford had agreed to complete the interior portion of the Scope of Work, Hartford had failed to complete even half of the work.

41. In a letter dated February 15, 2005, Weston informed Hartford of its failure to complete the interior portion of the Scope of Work, and provided Hartford with the Project Architect's analysis of outstanding work. Despite Hartford's failures to date, Weston extended the time for Hartford to complete the interior portion of the Scope of Work to February 26, 2005 – through the February school vacation. Weston informed Hartford that if it failed to complete the interior portion of the Scope of Work by February 26, 2005, Weston would hold Hartford in breach of both the Takeover Agreement and the Bond.

42. On February 15, 2005, Alexandra informed Weston that it would stop working until the Project Architect completed a full, but still preliminary, inspection and review of the work it had performed to date. In a February 17, 2005 letter to Hartford, Weston demanded that Hartford explain how it would complete the interior portion of the Scope of Work by February 26, 2005 if Alexandra intended to stop work.

43. On or about February 17, 2004, Hartford requested additional inspections and reviews by the Project Architect of the Scope of Work performed to date. Hartford agreed that it would pay the costs of these inspections and reviews – as it was obligated to do pursuant to the terms of the Takeover Agreement.

B0423511v1

44. The Architect's inspections and reviews demonstrated that, by March 31, 2005, Hartford had completed only 46 percent of the interior portion of the agreed upon Scope of Work.

45. By April 1, 2005, Hartford had still not paid Desjardins, and had made no effort to have the roofing system warranties reinstated. On April 1, 2005, Weston sent a letter to Hartford reminding Hartford of Weston's prior demands and correspondence regarding the roofing system warranties. Weston again demanded that Hartford comply with its obligations under the Bond to complete the Contract by providing Weston with full warranties for the roofing system.

46. In a letter dated April 12, 2005, Weston notified Hartford that Hartford was in default of its obligations under the Takeover Agreement and the Bond, and that Weston was terminating the Takeover Agreement. Weston cited as the reasons for terminating Hartford: (a) Hartford's failure to complete more than one half of the agreed upon interior work; (b) Hartford's repeated (and continual) failure to provide "look ahead" schedules that complied with the requirements of the Takeover Agreement; (c) Hartford's failure to comply with proper air quality and hygiene practices, as required by the Takeover Agreement; and (d) Hartford's failure to take any action to have the roofing system warranties reinstated.

47. As of April 15, 2005, Hartford had also failed to pay the Project Architect for the review and inspection the Hartford had requested and for which it had agreed to pay pursuant to the Takeover Agreement.

48. In a letter dated April 15, 2005, Weston reminded Hartford of its obligation to pay for the Project Architect's services, and demanded that Hartford immediately pay the Architect's fees.

14

49. Due to the substantial amount of the Scope of Work from the Takeover Agreement left to complete – and the additional work remaining under the original Contract for Construction – the Project Architect has not performed a final inspection and review of the work completed.

50. To date, Hartford has continued to refuse to fulfill its obligations under the Bond and complete the remaining work under the Contract.

51. To date, Hartford has refused to pay the Architect for its services in providing the inspections and reviews demanded by Hartford.

## COUNT I

### (Claim on Bond)

52. Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 51 of its Counterclaim as though fully set forth herein.

53. Alexandra violated and failed to comply with the Contract.

54. As a result, Weston terminated Alexandra for cause.

55. Hartford agreed, pursuant to the terms of the Bond, to take such action as is necessary to complete the Contract.

56. Hartford has failed to take such action as is necessary to complete the Contract.

57. All conditions precedent to the maintenance of this third-party claim have been performed.

58. Weston has suffered, and continues to suffer, damages due to Hartford's failure to comply with the terms of the Bond.

B0423511v1

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count I of Weston's Third-Party Complaint, in an amount to be determined at trial, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

## COUNT II

### (Breach of Contract)

59.     Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 58 of its Counterclaim as though fully set forth herein.

60.     Hartford was required by the Takeover Agreement to complete the interior portion of the Scope of Work by January 31, 2005.

61.     Hartford failed to complete the interior portion of the Scope of Work by January 31, 2005, and as of March 31, 2005, had completed only 46 percent of the interior portion of the Scope of Work.

62.     Hartford was required by the Takeover Agreement to pay for any and all inspections and reviews by the Project Architect of the Scope of Work it requested prior to the final inspection and review. Hartford requested several inspections and reviews of the Scope of Work.

63.     Harford has failed and refused to pay for the inspections and reviews by the Project Architect it requested.

64.     Hartford was required by the Takeover Agreement to exercise proper air quality and hygiene practices while performing the Scope of Work.

65.     Hartford failed and refused to exercise proper air quality and hygiene practices while performing the Scope of Work.

B0423511v1

66. Hartford's failures and refusals to comply with the Takeover Agreement constitute material breaches of the Takeover Agreement.

67. Weston has suffered, and continues to suffer, damages due to Hartford's breaches of the Takeover Agreement.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count II of Weston's Counterclaim, in an amount to be determined at trial, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

## COUNT III

### (Breach of Covenant of Good Faith and Fair Dealing)

68. Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 67 of its Counterclaim as though fully set forth herein.

69. The Takeover Agreement contains an implied covenant of good faith and fair dealing.

70. Hartford's actions constitute a breach of that covenant.

71. Weston has suffered, and continues to suffer, damages due to Hartford's breach.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count III of Weston's Counterclaim, in an amount to be determined at trial, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

B0423511v1

## COUNT IV

### (Violation of M. G. L. c. 93A)

72. Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 71 of its Counterclaim as though fully set forth herein.

73. The conduct at issue occurred primarily and substantially in the Commonwealth of Massachusetts.

74. Hartford is engaged in trade or commerce within the meaning of M.G.L. c. 93A.

75. Hartford represented to Weston in the Takeover Agreement that it would pay the costs for all reviews and inspections by the Project Architect that it requested prior to the final inspection.

76. Upon requesting several inspections and reviews by the Project Architect, Hartford specifically represented to Weston that it would pay for the several requested inspections.

77. When Hartford made the representations that it would pay the costs for the inspections and reviews it requested, it had no intention of paying such costs.

78. Hartford has refused to pay the costs of the Architect's reviews and inspections it has requested.

79. Weston has suffered and continues to suffer substantial damages as direct and proximate result of Hartford's actions.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count IV of Weston's Counterclaim, in an amount to be determined at trial, including treble damages and attorneys' fees, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

B0423511v1

## COUNT V

### (Violation of M.G.L. c. 176D and M.G.L. c. 93A)

80. Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 77 of its Counterclaim as though fully set forth herein.

81. At all relevant times, Hartford was engaged in the business of providing surety bonds within the Commonwealth of Massachusetts.

82. At all relevant times, Hartford was an insurer for purposes of M.G.L. c. 176D.

83. Hartford's failure to acknowledge and act reasonably promptly upon Weston informing Hartford of its claim arising from the roofing system warranty issue constitutes unfair claim settlement practices.

84. Hartford failed to conduct a reasonable investigation of Weston's claim that Hartford was responsible under the Bond to act to have the roofing system warranties reinstated.

85. Hartford's failure constitutes an unfair claim settlement practice.

86. Hartford's refusal to perform substantial portions of the Contract in settlement of Weston's claims, when liability became reasonably clear, constitutes an unfair claim settlement practice

87. Weston has suffered and continues to suffer substantial damages as direct and proximate result of Hartford's unfair settlement practices.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count IV of Weston's Counterclaim, in an amount to be determined at trial, including treble damages and attorneys' fees, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

B0423511v1

**WHEREFORE,** the Town of Weston demands a trial by jury, and judgment:

(a) Against Hartford on Weston's Counterclaim;

(b) Awarding Weston treble damages and attorneys fees;

(c) Awarding Weston the costs and disbursements of this action; and

(d) For such other, further and different relief as this Court deems just and proper.

## JURY DEMAND

The Town of Weston hereby demands a trial by jury on Hartford's claims, and Weston's counterclaims.

THE TOWN OF WESTON
By its attorneys,

/ s / Joseph A. Barra
Joseph A. Barra, BBO # MA - 632534  NY - 2366623
jbarra@ghlaw.com
John P. Martin, BBO # 637667
jmartin@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
August 5, 2005                                        (617) 345-7000