UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) |  |
|  | ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | C. A. No. 1:05-cv-11166-EFH |
| TOWN OF WESTON, | ) ) |  |
| Defendant. | ) ) |  |

## TOWN OF WESTON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY

In support of its Motion to Stay, filed contemporaneously, the Town of Weston ("Weston") submits this Memorandum of Law. This Court should stay this matter because: (i) all of the issues raised by Hartford in the instant action are currently being litigated in a parallel State Court Action; (ii) Hartford's claims are all state law claims; (iii) the claims in both actions arise out of the same transactions underlying the instant matter; (iv) both Hartford and Weston are parties to the State Court Action; (v) the state court took jurisdiction over this matter one year before Hartford filed its Complaint in the instant matter; (vi) the state court is perfectly able to protect Hartford's rights; and (vii) maintaining parallel actions could lead to inconsistent judgments and piecemeal litigation. In the interest of wise judicial administration in conserving scarce judicial resources, and the resources of the parties, the Court should stay this matter until the parallel state court action has been resolved.

## I.    <u>FACTS</u>[1]

On or about June 25, 2001, Jan Five Corporation d/b/a Alexandra Construction ("Alexandra") entered into a contract with the Town of Weston (the "Construction Contract") for the construction of a project known as Additions and Renovations to the Country and Woodland Schools in Weston, Massachusetts (the "Project"). *See* a true and accurate copy of the <u>Construction Contract</u> attached hereto at *Exhibit A*.[2]  Alexandra is a Massachusetts corporation with a principal place of business located at 109 Oak Street, Newton, Massachusetts. *See* a true and accurate copy of <u>Alexandra's Complaint</u>, ¶ 1, filed in *Jan Five Corp. d/b/a Alexandra Construction v. Town of Weston, and Design Partnership of Cambridge*, C.A. No. 2004-02787 (Massachusetts, Middlesex Superior Court), attached hereto at *Exhibit B*.

Hartford, as surety and Alexandra, as principal, made, executed and delivered to Weston a Performance Bond No. 08BCSAV7773 dated June 25, 2001 (the "Bond"). The penal sum of the Bond is $27,677,000.00. *See* a true and accurate copy of the <u>Performance Bond</u> attached hereto at *Exhibit C*.

On or about July 1, 2004, Weston notified Alexandra and Hartford that it intended to terminate Alexandra if Alexandra failed to complete its work under the Construction Contract.

On or about July 12, 2004, Alexandra filed a complaint in Middlesex Superior Court, Commonwealth of Massachusetts (the "State Court Action"), claiming that Weston breached the Construction Contract. *See Exhibit B*. Alexandra also asserted claims against the Project Architect alleging, among other things, "design errors." *Id.*

On or about July 15, 2004, as a result of disputes that arose between Weston and Alexandra, Weston terminated the Construction Contract with Alexandra. Weston demanded

---

[1] The facts included in the "Fact" section of this memorandum are offered for purposes of this pleading only.
[2] In attaching the Construction Contract, Weston is omitting the voluminous plans and specifications and the General Conditions which were incorporated into the Construction Contract by reference.

that Hartford, as surety, arrange for completion of the Construction Contract pursuant to the terms of the Bond.

On or about September 3, 2004, Weston filed counterclaims against Alexandra in the State Court Action for breach of the Construction Contract, misrepresentation, and unfair and bad faith business practices in violation of M.G.L. c. 93A. *See* a true and accurate copy of Defendant's Answer, Counterclaims & Cross-Claims, attached hereto at *Exhibit D*.

On or about November 18, 2004, with a reservation of rights by both parties, Weston and Hartford executed a Takeover Agreement to arrange for work to be performed in order to complete the Project. *See* a true and accurate copy of the Takeover Agreement, p. 2, attached hereto at *Exhibit E*.[3] Pursuant to the Takeover Agreement, Hartford agreed, in conformance with the Construction Contract, to: (1) complete punch-list work on the Project; (2) complete other incomplete work on the Project not included on punch-lists; (3) repair certain defective work on the Project discovered after the completion of punch-lists; (4) perform warranty work on the Project; and (5) perform certain landscaping work pursuant to the Construction Contract.

During the course of the work under the Takeover Agreement, disputes arose between Hartford and Weston concerning the scope of the work to be completed under the Takeover Agreement, the Construction Contract and other obligations of the parties under the Takeover Agreement. Weston terminated the Takeover Agreement on or about April 12, 2005.

On or about Friday, June 3, 2005, in accordance with Massachusetts Superior Court Rule 9A, Weston served on Alexandra a motion to file a third-party complaint against Hartford in the State Court Action. *See* a true and accurate copy of Defendant Town of Weston's Motion to File

---

[3] In attaching the Takeover Agreement, Weston is omitting the exhibits to the Takeover Agreement with the exception of Exhibit A of the Agreement. Any additional information provided by the other exhibits would be cumulative, and therefore, not necessary for the Court's consideration.

Third-Party Complaint Against Hartford Fire Insurance Company, attached hereto as *Exhibit F*.[4]

Weston's third-party complaint in the State Court Action asserted that Hartford breached the

Takeover Agreement. *See* a true and accurate copy of Town of Weston's Third-Party Complaint

Against Hartford Fire Insurance Company, attached at *Exhibit G*, pp 12-13. Weston also made a

claim on the Bond. *See id.*, pp. 11-12.

On Monday, June 6, 2005, Hartford filed the instant Complaint claiming that Weston

breached the Construction Contract, the Takeover Agreement and the Bond. Included in

Hartford's Complaint is a claim that Weston provided Alexandra with deficient designs for the

Project. Hartford also requested a declaration by this Court that Weston breached the

Construction Contract, the Takeover Agreement and the Bond.

On June 24, 2005, Weston filed its motion to file a third-party complaint against Hartford

in the State Court Action. On July 7, 2005, the Massachusetts Superior Court allowed Weston's

Motion, and on July 13, 2005, Weston filed its third-party complaint against Hartford in the State

Court Action.

On December 14, 2005, this Court ordered the Town of Weston to file, by January 10,

2006, a motion to stay the instant action pending resolution of the State Court Action. The Town

of Weston's Motion to Stay, filed contemporaneously with this memorandum, constitutes

Weston's response to the Court's Order.

## II.    ARGUMENT

### A.    The Court Should Stay Hartford's Claim for Declaratory Judgment

"It is well-settled that the decision to render declaratory relief is left to the sound

discretion of the trial court and the trial court may decline to exercise jurisdiction under the Act."

---

[4] The several exhibits submitted with Defendant Town of Weston's Motion to File Third-Party Complaint Against Hartford Fire Insurance Company are not included.

4

*Aetna Casualty and Surety Co. v. Alpha Mechanical, Inc.*, 9 F.Supp.2d 585, 587 (W.D.N.C. 1998. As held by the First Circuit Court of Appeals "the Declaratory Judgment Act neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 534 (1st Cir. 1995) (internal quotations omitted). *See also Travelers Casualty & Surety Company v. Boston Gas Company*, 76 F.Supp.2d 59, 62 (D.Mass. 1999) ("The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'") (*citing Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137 (1995)); *Bituminous Casualty Corporation v. J & L Lumber Col, Inc.*, 373 F.3d 807, 809 (6th Cir. 2004).

Moreover, where, as here, (a) the claims are state law claims, (b) being addressed in an underlying state court action already in progress, (c) arising out of the same transactions, and (4) involving the same (or some of the same) parties in the state law action, federal courts should be especially reluctant to exercise its jurisdiction over a declaratory judgment claim. *See Sherwin-Williams Co. v. Homes County*, 343 F.3d 383, 389 (5th Cir. 2003); *Bituminous Casualty Corporation v. Combs Contracting Inc.*, 236 F.Supp.2d 737, 742 (E.D.Ky. 2002); *Travelers Casualty & Surety Company, supra*, 76 F.Supp.2d at 62 (*citing Wilton, supra*, 515 U.S. at 282).

As articulated by the 11th Circuit

> "Unnecessary interference with state court litigation should be avoided. The Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state to federal court, and it is not the function of the federal declaratory action merely to anticipate a defense that otherwise would be presented in a state action."

*Angora Enterprises, Inc. v. Condominium Association of Lakeside Village, Inc.*, 796 F.2d 384, 387-88 (11th Cir. 1986). Hartford's Complaint contains nothing more than a reiteration of

Alexandra's claims in the parallel State Court Action, as well as defenses and counterclaims that were raised, and could be raised, in response to Weston's Third-Party Complaint in state court.

Here,

> [e]xercise of federal jurisdiction ... risks unnecessary commitment of scarce judicial resources, multiplicative expenditures on legal services, inconsistent rulings at numerous litigation junctures, and the appearance of disregard for the state trial court's authority and expertise in violation of basic norms of federal and state comity.

*U.S. Fidelity & Guaranty Co. v. Algernon-Blair, Inc.*, 705 F.Supp. 1507, 1514 (M.D.Ala. 1988).

In staying Hartford's claim for declaratory judgment, this Court should refer to the following guidelines "when a parallel state court action is pending":

> (1) the scope of the pending state court proceeding and the nature of defenses open there; (2) whether the claims of all parties in interest can be adjudicated satisfactorily in the state proceeding; (3) whether necessary parties have been joined; (4) whether all necessary parties are amenable to process in the state proceeding; and (5) the virtue of avoiding "uneconomical" proceedings, "vexatious" proceedings, and "gratuitous interference" by a federal court with an orderly and comprehensive suit pending in a state court, presenting the same issues not governed by federal law, between the same parties.

*Travelers Casualty & Surety Co.*, 76 F.Supp.2d at 62 (*citing Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-283, 115 S.Ct. 2137 (1995). *See also Sherwin-Williams Co.*, 343 F.3d at 389 (listing similar factors). Each of these factors argues for stay of Hartford's declaratory judgment claim.

### 1.    The Scope of the pending State Court action encompasses all of Hartford's claims in Federal Court.

As demonstrated above, Hartford's complaint seeks adjudication of liability under the Construction Contract, the Takeover Agreement, and the Bond. The "claims at issue in this federal action are those that are also being litigated in the pending state court action." *See Travelers Casualty & Surety Co.*, 76 F.Supp.2d at 63. *See also Bituminous Casualty Corp. v. J*

*& L Lumber Co., Inc.*, 373 F.3d at 815 (where federal action raises same state law issues already being litigated in state court, stay or dismissal appropriate).

In the parallel State Court Action, Weston and Alexandra have made claims for breach of the Construction Contract against each other, and Weston has asserted third-party claims against Hartford for breach of the Takeover Agreement, as well as a claim on the Bond. Therefore, Hartford's assertions that Weston breached the Takeover Agreement, the Construction Contract and the Bond are available to Hartford as defenses and counterclaims in the state court action. In dismissing Hartford's claim, the Court must determine "whether the issues before [it] **could be** fully resolved in the other action, and where the issues are likely to be most comprehensively adjudicated." *See Dow Jones & Co.*, 237 F.Supp.2d at 444 (emphasis added).

The circumstances here are virtually identical to those encountered by the federal district court in *U.S. Fidelity & Guaranty Co., supra.* There, an owner terminated a contract with its general contractor in the midst of a construction project. *See* 705 F.Supp. at 1509. The owner filed suit in state court against the general contractor for breach of the construction agreement, and the general contractor filed counterclaims alleging the owner breached the construction agreement. *Id.* USF & G, the general contractor's surety, filed a complaint in federal district court "ask[ing] this court to declare the rights and obligations of the parties with respect to the construction project at issue in the case, and to declare the rights and obligations of USF & G with respect to the claims made the subject of the pending state litigation and the two bonds." *Id.* at 1509-1510. The federal court dismissed the surety's complaint stating

> USF & G's liability under the bonds at issue here is largely
> contingent on, and subordinate to, resolution of the primary issues
> of breach …contested by [the general contractor] and [the owner]'
> as noted above. These are the same issues raised in the state court
> proceeding, and resolution of the issues there would settle much of

>the question of USF & G's current rights and obligations with
>respect to the other parties."

*Id.* at 1515-16.

Similarly, Hartford's liability under the Bond, Weston's and Alexandra's respective liabilities under the Construction Contract, as well as Hartford's and Weston's respective liabilities under the Takeover Agreement, are contingent upon resolution of the claims currently being litigated by Weston, Hartford and Alexandra in the parallel State Court Action. Using the same rationale as the federal district court in *U.S. Fidelity & Guaranty Co.*, this Court should stay Hartford's declaratory judgment claim.Because the issues raised by Hartford in this action will be fully litigated in the State Court Action, this Court should dismiss Hartford's claim for declaratory relief.

### 2. Only the State Court can satisfactorily adjudicate the claims of all parties in interest.

Where a declaratory judgment cannot assure adjudication of the claims of all parties in interest in a transaction, a declaratory judgment claim should be dismissed. *See Aetna Casualty and Surety Co.*, 9 F.Supp.2d at 588. Here, there are at least three parties in interest – Weston, Hartford and Alexandra – and all three are parties in the parallel State Court Action. Alexandra cannot be a party to the instant action before this Court because Weston and Alexandra are both citizens of Massachusetts, thereby destroying any possibility of diversity jurisdiction. Therefore, this Court cannot resolve all of the issues arising from the Project between Alexandra and Weston.

Moreover, adjudication of Hartford's declaratory judgment claim by this Court presents the real danger of conflicting judgments. *See Travelers Casualty and Surety Co.*, 76 F.Supp.2d at 67-68. Because Alexandra is not (and cannot be) a party to this action, a finding by this Court that Weston did not breach the Construction Contract would not be binding on Alexandra. *See*

8

*Bituminous Casualty Corp. v. J & L Lumber Co., Inc.*, 373 F.3d at 814. Apart from causing

Weston to twice litigate the issue, a significant risk exists that this Court's finding that Weston

did not breach the Construction Contract would conflict with a determination by the state court

that Weston did breach the Construction Contract. The Court should avoid this risk and stay

Hartford's claim pending the outcome of the parallel State Court Action. *See Travelers Casualty*

*and Surety Co.*, 76 F.Supp.2d at 68.

Only the state court is able to adjudicate all of the claims – all of which are state law

claims – between <u>all</u> of the interested parties. Because the state court is in the better position to

adjudicate Weston's, Alexandra's and Hartford's claims, this Court should dismiss Hartford's

declaratory judgment claim. *See Aetna Casualty and Surety Co.*, 9 F.Supp.2d at 588.

**3.**      <u>**Alexandra cannot be joined in the Federal Court action, and Hartford**</u>
<u>**is amenable to process in state court.**</u>

As demonstrated above, because there is no diversity between Weston and Alexandra,

Alexandra, an interested party, cannot be joined to the instant Federal Court action. It is

therefore clear that Hartford is asserting a declaratory judgment action because it cannot remove

the state court action to federal court. "The Declaratory Judgment Act was not intended to

provide a loophole to allow parties to litigate in federal court issues that would otherwise be

decided in state court." *Penn-American Insurance Co. v. Coffee*, 238 F.Supp.2d 744, 748

(E.D.Va. 2003). *See also Travelers Casualty & Surety Co.*, 76 F.Supp2d at 65. Additionally,

despite Hartford's "<u>preference</u> for a federal forum," Hartford has made no assertion it is not

amenable to process in state court. *See Travelers Casualty & Surety Co.*, 76 F.Supp. at 66

(emphasis in original).

Therefore, the state court is the more appropriate forum for adjudicating all of the claims

of all of the parties.

9

### 4.    Dismissing Hartford's declaratory judgment claim would avoid uneconomical and vexatious proceedings.

"[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court, presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175 (1942). Because all of the issues raised by Hartford in the instant action are state law issues already being litigated in the parallel state court action, it would be an uneconomical use of the Court's and the parties' resources for this Court to also try Hartford's declaratory judgment claims. *See Bituminous Casualty Corp. v. J. & L. Lumber Co., Inc.*, 373 F.3d at 816-817 ("[w]e question the need for declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner."); *Travelers Casualty Surety Co.*, 76 F.Supp.2d at 67-68 (*citing Liberty Mutual Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir. 1985)) (wastefulness and potential harm of conflicting judicial decisions that result from piecemeal and duplicitous litigation).

### 5.    Additional factors argue for the Court to decline jurisdiction.

Courts have considered other factors, also relevant here, for declining jurisdiction over declaratory judgment claims. Where "there is a danger of preclusion, depending on the timing of the respective decisions," courts should exercise their judgment in declining jurisdiction. *See Penn-America Ins. Co. v. Coffee*, 238 F.Supp.2d at 747. *See also Aetna Casualty and Surety Co.*, 9 F.Supp.2d at 587. Here, Hartford filed its complaint within days of Westin serving its Third-Party Complaint via Massachusetts Superior Court Rule 9A, but before Westin, pursuant to Rule

9A, could file the third-party complaint in state court. It is clear Hartford "race[d] for *res judicata*." *See Aetna Casualty and Surety Co.*, 9 F.Supp.2d at 587. Weston faces the real danger of being precluded from litigating all of claims presently in state court – including its counterclaims against Alexandra which were asserted by Weston a full year before Hartford initiated this action.

Additionally, Courts have declined to exercise jurisdiction where a party seeks a "federal hearing in a case otherwise not removeable." *See Aetna Casualty and Surety Co.*, 9 F.Supp.2d at 587. *See also Penn-America Ins. Co.*, 238 F.Supp.2d at 748. Because Weston and Alexandra are both citizens of Massachusetts for purposes of diversity jurisdiction, "at the time [Hartford] filed its action in federal court, it knew the state court action could not be removed as there was no federal question." *See Penn-America Ins. Co.*, 238 F.Supp.2d at 748. "The Declaratory Judgment Act was not intended to provide a loophole to allow parties to litigate in federal court issues that would otherwise be decided in state court." *Id.* It is clear that Hartford is attempting to use the Act as such a loophole, and, for that reason alone the Court should decline jurisdiction.

Finally, where state law provides a remedy as effective as the federal courts, federal courts should decline jurisdiction. *See Bituminous Casualty Corp. v. J. & L. Lumber Co., Inc.*, 373 F.3d at 816. In *Bituminous Casualty Corp.*, as here, a state declaratory judgment statute was available to the plaintiff asserting a declaratory judgment claim in federal court. *See id.* Based on the existence of a state law declaratory judgment remedy, the court in *Bituminous Casualty Corp.* dismissed the plaintiff's federal court claim for declaratory relief. *Id.* Similarly, Massachusetts offer Hartford a statutory remedy available in the State Court Action, to which Hartford is already a party. See M.G.L. c. 231A, § 1. Thus, the remedies sought by Hartford are

available in the parallel state court action, and the Court should dismiss Hartford's claim for declaratory judgment.

### 6.    Conclusion

Because (1) Hartford is using the declaratory judgment act to litigate its breach of contract claims, and (2) the issues raised by Hartford are state law claims, all currently before a state court, and (3) because only the state court can settle the disputes between all of the parties in interest, this Court should stay Hartford's declaratory judgment claims.

### B.    The Court Should Also Stay Hartford's Remaining Breach of Contract Claims.

This Court should stay Hartford's breach of contract claims for substantially the same reasons this Court should stay Hartford's declaratory judgment claim – in the interest of "wise judicial administration." The decision by federal district courts to stay or dismiss federal proceedings in light of concurrent state court action is left to the discretion of this Court. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct.1236, 1246 (1976); *Moorer v. Demopolis Waterworks and Sewer Board*, 374 F.3d 994, 997 (11th Cir. 2004); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir. 1988). In acknowledging this discretion, the United States Supreme Court crafted a two-prong inquiry: (1) whether the cases are parallel; and (2) whether, in light of a multi-factor balancing test, dismissal (or a stay) would serve "wise judicial administration." *See Colorado River Water Conservation District*, 424 U.S. at 817, 96 S.Ct. at 1246. Here both prongs support a stay of the action before this Court.

Under the first prong of this inquiry, cases are parallel if "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate*

*Material Corp.*, 847 F.2d at 1287. As demonstrated above, all of the issues before this Court are currently being litigated in the State Court Action. In both actions the subjects being litigated are liability under the Construction Contract, the Takeover Agreement and the Bond. In both actions Weston and Hartford are parties (with Alexandra an additional party in the State Court Action). Therefore, the first prong of the inquiry is satisfied. *See Interstate Material Corp.*, 847 F.2d at 1287.

In addition to the first prong, the balance of the relevant factors included in the second prong of the inquiry argue for staying or dismissing this action in deference to the parallel action concurrent in the state court. The relevant factors to be considered here are: (1) whether there is a danger of piecemeal litigation; (2) the order in which jurisdiction was obtained by the state court; (3) whether the dispute involves important issues of federal law best left to the federal courts; (4) whether an inference can be made that the federal complaint was vexatious and contrived; (5) whether the federal action could be mooted by resolution of the pending State Court Action; and (6) whether the parties' rights can be adequately protected in the state court proceeding. *See Colorado River Water Conservation District*, 424 U.S. at 818-819, 96 S.Ct. at 1246-1247; *Moorer*, 374 F.3d at 997; *Interstate Material Corp.*, 847 F.2d at 1288-1289.[5] "One factor alone can be the sole motivating reason" for the Court's decision to stay an action. *See Moorer*, 374 F.3d at 997 (noting that danger of piecemeal litigation was sole motivating factor behind dismissal in *Colorado River*).

Here, as demonstrated above, there is a clear danger of piecemeal litigation. *See Interstate Material Corp.*, 847 F.2d at 1289 ("there would be a grand waste of efforts by both the courts and parties in litigating the same issues … in two forums at once.") Were this Court to

---

[5] Two other factors considered by the *Colorado River* court – whether the state court has taken jurisdiction over res or property, and whether the venue would cause hardship – are not at issue here. *See Colorado River Water Conservation District*, 424 U.S. at 819-820, 96 S.Ct. at 1246-1247.

find in Weston's favor on Hartford's claim for breach of the Construction Contract, Weston

would still have to litigate the very same issue against Alexandra in the parallel state court

action. Additionally, because the state court would not be bound by a judgment by this Court in

favor of Weston over Hartford, the danger exists that the state court could render a judgment

against Weston in the State Court Action, resulting in conflicting judgments. Therefore, the

danger of piecemeal litigation favors this Court staying the instant matter pending resolution of

the State Court Action. *See Colorado River Water Conservation District*, 424 U.S. at 819-820,

96 S.Ct. at 1247.

The second factor also weighs in favor of stay or dismissal as the state court exercised

jurisdiction over the issues here a full year prior to Hartford filing its Complaint in this Court.

*See Colorado River Water Conservation District*, 424 U.S. at 819-820, 96 S.Ct. at 1247;

*Interstate Material Corp.*, 847 F.2d at 1289. Moreover, discovery is under way in the State

Court Action, while discovery in the instant matter has not yet begun.

The third factor is whether federal law issues are involved. *See Colorado River Water

Conservation District*, 424 U.S. at 819-820, 96 S.Ct. at 1247; *Moorer*, 374 F.3d at 997. Here,

Hartford's claims involve state law only, and there are no federal claims at issue. Therefore,

there is no danger to the uniformity of federal law, or of impinging on the expertise of the federal

courts, by allowing the state court decide Hartford's purely state law claims. *See Will v. Calvert

Fire Insurance Co.*, 437 U.S. 655, 670, 98 S.Ct. 2552, 2561 (1978). Therefore the third factor

argues strongly for staying the instant action.

Fourth, the contrived and vexatious nature of Hartford's Complaint is clear from

Hartford's timing and the Complaint's substance. *See Interstate Material Corp.*, 847 F.2d at

1289. It is obvious that Hartford filed its Complaint only after it had notice that Weston was

14

about to add Hartford as a third-party to the State Court Action in an attempt to wrest jurisdiction from the state court over the state law claims already filed in that court. Moreover, all four (4) of Hartford's counts in its Complaint make claims for breach of the Construction Contract, to which Hartford is not a party and under which it has no standing to state claims. Given that there is no reason "why all claims and all parties could not have been, and still could be, part of one suit" in state court, it is clear that Hartford's purpose in filing its federal action was to force Weston to use scarce municipal resources to gain advantage in any settlement discussions. *See id.* Therefore, the timing and substance of Hartford's Complaint argue for a stay.

Fifth, each and every issue raised in Hartford's federal action will be resolved in the State Court Action. Hartford has raised claims for breach of the Construction Contract, the Takeover Agreement and the Bond. In the State Court Action, both Weston and Alexandra have raised claims for breach of the Construction Contract. Moreover, Weston has raised claims for breach of the Takeover Agreement, and has made a claim on the Bond. Additionally, Hartford, Weston and Alexandra are all parties to the State Court Action. Therefore, all of Hartford's claims before this Court will become moot upon completion of the State Court Action. *See Interstate Material Corp.*, 847 F.2d at 1289.

Finally, there is no danger that the state court will be unable to adequately protect Hartford's rights if this Court or stays Hartford's Complaint. *See Moorer*, 374 F.3d at 997. As demonstrated above, Hartford's claims raise <u>only</u> issues of state contract law, and such issues are currently before the state court. There can be no suggestion that the state court is not competent to address all of Hartford's claims. *See id.* (allowing dismissal even when federal law claims at issue where no evidence state court unable to protect rights of the parties).

15

Therefore, the balance of the relevant factors tips heavily in favor of this Court staying Hartford's breach of contract claims. A stay of Hartford's breach of contract claims will serve the purpose of "wise judicial administration" encouraged by the U.S. Supreme Court in *Colorado River*, and this Court should, therefore, stay those claims.

**III.    CONCLUSION**

For the foregoing reasons, this Court should stay the instant litigation pending the resolution of the parallel State Court Action.

Respectfully submitted,

TOWN OF WESTON
By its attorneys,


/ s / John P. Martin
Joseph A. Barra, BBO # 632534
jbarra@ghlaw.com
John P. Martin, BBO # 637667
jmartin@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

Dated: January 10, 2006


**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail.

By:      / s / John P. Martin

Date:    January 10, 2006

16

B0424592v1

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>TOWN OF WESTON, )<br><br>Defendant. ) | C. A. No. 1:05-cv-11166-EFH |

**EXHIBIT A**

**TO**

**TOWN OF WESTON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY**

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS                                03/21/01
The Design Partnership of Cambridge, Inc., Project 2003

## SECTION 00500

### OWNER - CONTRACTOR AGREEMENT

THIS AGREEMENT, made this  25th  day of  June  , 2001, by and between the TOWN OF WESTON, MA. as represented by the WESTON SCHOOL COMMITTEE, herein called the "Owner" and

Jan Five Corporation d/b/a Alexandra Construction

20 Ossipee Road, Newton, Massachusetts  02464

a corporation organized and existing under the laws of  Massachusetts

~~a partnership consisting of~~

~~an individual doing business as~~

hereinafter called the "Contractor".

WITNESSETH, that the Owner and Contractor, for the consideration hereinafter named, agree as follows:

Article 1.  SCOPE OF THE WORK:   The Contractor shall furnish all of the materials and perform all of the work shown and described in the Contract Documents titled ADDITIONS AND RENOVATIONS TO THE COUNTRY AND WOODLAND SCHOOLS, prepared by the Design Partnership of Cambridge, Inc., 500 Rutherford Avenue, Charlestown, MA  02129, and shall do everything required by this Agreement and the Contract Documents.

Article 2.  TIME OF COMPLETION:   The Contractor hereby agrees to commence work within five calendar days (Saturdays, Sundays and legal holidays excluded) from receipt of a written "Notice to Proceed" from Owner and to **Substantially Complete the entire Work by August 1, 2003** and no later.

The parties acknowledge that time is of the essence in the performance of this Contract.

Article 3.  THE CONTRACT PRICE:  The Owner shall pay the Contractor for the performance of the Work, subject to additions and deductions by Change Order as provided in the Conditions of the Contract, in current funds, the sum of:

TWENTY-EIGHT MILLION SIX HUNDRED SEVENTY-SEVEN THOUSAND ---------

----------------------------------- DOLLARS  ($   28,677,000.00).

The Contract Price is subdivided as follows:

Item 1:  The Work of the General Contractor, being all work other than that covered by Item 2.

TWENTY-ONE MILLION ONE HUNDRED FIFTY-NINE THOUSAND AND

FIFTY-FIVE ---------------------- DOLLARS  ($   21,159,055.00).

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS                    03/21/01
The Design Partnership of Cambridge, Inc., Project 2003

Item 2:  Filed Sub-Contractors as follows:

| Filed Sub-Bid Work | Subcontractor | Amount |
|---|---|---|
| Masonry Work | D'Agostino Associates, Inc. | $    1,414,000.00 |
| Miscellaneous Metals | Larkin Iron & Fence, Inc. | $      477,800.00 |
| Waterproofing, Dampproofing And Caulking | DeBrino Caulking Associates, Inc. | $      294,785.00 |
| Roofing and Flashing | A.J. Desjardins Roofing Company, Inc. | $    1,100,000.00 |
| Metal Windows | Chandler Architectural Products, inc. | $      544,400.00 |
| Glass and Glazing | Prudential Door & Window Co., Inc. | $      148,710.00 |
| Ceramic Tile | RLM Flooring, Inc. | $      265,900.00 |
| Acoustical Tile | The Cheviot Corporation | $      345,900.00 |
| Resilient Flooring | RLM Flooring, Inc. | $      141,000.00 |
| Painting | W.D.Fowler, Inc. | $      214,700.00 |
| Elevators | Atlas Elevator Services, Inc. | $        72,750.00 |
| Plumbing | Included in "Item One" work | $              0.00 |
| HVAC | Included in "Item One" work | $              0.00 |
| Electrical | Aldon Electric, Inc. | $    2,498,000.00 |
| | Total of Item 2: | $    7,517,945.00 |

**Article 4.  PAYMENTS:**  The Owner agrees to pay the Contractor in current funds for the performance of the Contract as provided in the CONDITIONS OF THE CONTRACT and by Massachusetts statutes.

**Article 5.  THE CONTRACT:**  The following together with this Agreement, form the CONTRACT:

> The Contract Documents as listed in the Table of Contents of the Project Manual.
> The Specifications as listed in the Table of Contents of the Project Manual.
> The Contract Drawings.
> Addenda No.    One    through        Four    inclusive.
> Modifications issued after the execution of the Contract.

**Article 6.  REQUIRED TERMS:**  This Contract shall be considered to include all provisions required to be included in it by the Massachusetts General Laws, Chapter 30 and 149, as amended, and any other applicable laws. as though such terms were set forth herein.

**Article 7.   DAMAGES:**   The Contractor agrees to pay the Owner the sum of $1,000 per day as liquidated damages for his failure to Substantially Complete the Work or designated portions or phases thereof by the date or dates stipulated herein.  Such sum shall be payable for each day after the date of Substantial Completion stipulated herein that the Work is not substantially complete.  This provision is in addition to and not in substitution of any other rights or claims the Owner may have for the

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS          03/21/01
The Design Partnership of Cambridge, Inc., Project 2003

Contractor's failure to achieve Substantial Completion by the date or dates stipulated in the Contract Documents.

Article 8.   ALTERNATES:  The following ALTERNATES have been accepted and the Contract Sum stated in Article 3 of this Agreement includes and has been adjusted to reflect the total cost of each accepted alternate.

| Alternate Number | Indicate Accepted or Rejected | Original Bid Value of Alternate |
|---|---|---|
| Alternate No. 1 | Accepted | $96,000.00 |
| Alternate No. 2 | Accepted | $43,000.00 |
| Alternate No. 3 | Rejected | $52,000.00 |

Article 9.   TERMINATION:  The Owner shall have the right to terminate the contract, without cause, upon ten (10) days' written notice to the Contractor.   In the event that the Contract is terminated pursuant to this paragraph, the Contractor shall be reimbursed in accordance with the Contract Documents for all Work performed up to the termination date, and for all materials or equipment not incorporated in the Work, but delivered and suitably stored at the site.

IN WITNESS WHEREOF, the parties hereto on the day and year first above written have executed this Agreement in ~~two (2)~~ five (5) counterparts, each of which shall, without proof of accounting for the other counterpart, be deemed an original thereof.

*SEAL*                                            TOWN OF WESTON, MASSACHUSETTS
                                                  SCHOOL COMMITTEE

COMMONWEALTH OF MASSACHUSETTS

_____ *[County]* _____, _____

Then personally appeared the above _____

_____

of the aforesaid _____ and acknowledged the foregoing

instrument to be the free act and deed of _____ before me.

_____ My Commission expires: _____

OWNER - CONTRACTOR AGREEMENT
00500 - 3

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS          03/21/01
The Design Partnership of Cambridge, Inc., Project 2003

Notary Public


*SEAL*                              CONTRACTOR


                                   Jan Five Corporation d/b/a Alexandra Construction

                                   20 Ossipee Road

                                   Newton, Massachusetts    02464
                                   Address

                                   By _____
                                       Gregory T. Clark

                                   Title    Treasurer

Note:  If the Contractor is a corporation, attach Certificate of Vote by Board of Directors stating that the officer signing the contract has the authority of the Corporation to sign contracts binding on the Corporation.

**(This Notary Section for Contractor)**
### COMMONWEALTH OF MASSACHUSETTS

_Middlesex_                    (County) _June 21_            , _2001_

Then personally appeared the above  _Gregory  T. Clark_

of the aforesaid  _Jan Five  Corporation_          and acknowledged the foregoing

instrument to be the free act and deed of _Gregory T. Clark / Jan Five Corp_  before me.

_Patricia Hannon_                    My Commission expires: _May 3, 2002_
Notary Public

### AWARDING AUTHORITY APPROVALS

I certify that an appropriation in the amount of this contract is available therefor, and that the Weston School Committee has been authorized to execute the contract and approve all requisitions and change orders:

_____        _6/26/01_
Awarding Authority Accountant            Date

Approved as to form of agreement:
KOPELMAN AND PAIGE, P.C.
by _____            _June 25, 2001_
Awarding Authority Legal Counsel         Date

**END OF OWNER - CONTRACTOR AGREEMENT**

OWNER - CONTRACTOR AGREEMENT
00500 - 4

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF WESTON, <br><br> Defendant. | C. A. No. 1:05-cv-11166-EFH |

## EXHIBIT B

### TO

### TOWN OF WESTON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY

# COMMONWEALTH OF MASSACHUSETTS
## The Trial Court
### Superior Court Department

Middlesex, ss

Civil Action No:

## 04-2787

Jan Five Corp. d/b/a )
Alexandra Construction )
        Plaintiff )

v. )

    )

Town of Weston and Design )
Partnership of Cambridge, )
      Defendants )

```
F I L E D
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR _____ ESSEX
JUL 12 2004
Edward-william
              CLERK
```

Complaint

## Parties

1.  Plaintiff, Jan Five Corp. d/b/a Alexandra Construction, (hereinafter "Alexandra") is a Massachusetts corporation with a usual place of business located at 109 Oak Street, Newton, Massachusetts.

2.  Defendant, Town of Weston, (hereinafter "Weston") is a body politic organized and existing pursuant to the laws of the Commonwealth of Massachusetts with a usual place of business located at 89 Wellesley Street, Weston, Massachusetts.

3.  Defendant, Design Partnership of Cambridge, Inc. (hereinafter "DPC") is a Massachusetts corporation with a usual place of business located at 500 Rutherford Avenue, Charlestown, Massachusetts.

## Facts

4.  On or about June 25, 2001, Alexandra as general contractor and Weston as the Owner entered into a written agreement for the construction of the "Addition and Renovations to the Country and Woodland Schools (hereinafter referred to as the "Project").

5.  DPC was the designer of the Project and, at all times relevant hereto, was the Project architect.

6.  The total amount of Alexandra's contract with Weston was $28,677,000.

7.  Alexandra performed additional work at Weston's request whereby Weston and Alexandra agreed to increase the contract value by $910,867.00.

8.  Alexandra and its subcontractors performed additional work on behalf of Weston, which Weston has not accepted and/or acknowledged, in the amount of $521,651.00.

9.  Alexandra and its subcontractors have performed work on the Project with a total value of $30,109,518.00.

10.     Weston has made payments to Alexandra totaling $28,581,340.00.

## Count One
### (Breach of Contract v. Weston)

11.   Alexandra repeats and realleges the allegations contained in paragraphs 1 through 10 of its Complaint as if fully set forth herein.

12.   Alexandra has substantially completed it work on the Project.

13.   Alexandra has repeatedly demanded payment from Weston and Weston has failed, refused and/or neglected to make payment to Alexandra.

14.   Weston has breached its contract with Alexandra by failing, refusing and/or neglecting to make payment as required by the contract, by failing, refusing and/or neglecting to grant reasonable time extension for additional work performed by Alexandra, by failing, refusing and/or neglecting to provide change orders for additional work performed by Alexandra and by wrongfully withholding payments from Alexandra based upon an inaccurate and deceptive punchlist.

15.   Weston has no legal justification for withholding payment from Alexandra.

16.   Alexandra has suffered substantial damages as a result of Weston's breach.

Wherefore, Alexandra Construction demands that judgment be entered against Weston for the full amount of its damages as determined by this Court, together with costs, attorney's fees and such other and further relief as this Court deems just and fair.

## Count II
### (Quantum Meruit v. Weston)

17.   Alexandra repeats and realleges the allegations contained in paragraphs 1 through 16 of its Complaint as if fully set forth herein.

18.   Alexandra has provided work, labor, materials and equipment on the Project having a fair and reasonable value of $30,109,518.00 and has received payment from Weston in the amount of $28,581,340.00.

19.   Alexandra is entitled to the balance of $1,528,178.00.

Wherefore, Alexandra Construction demands that judgment be entered against Weston for the full amount of its damages as determined by this Court, together with costs, attorney's fees and such other and further relief as this Court deems just and fair.

## Count III
### (M.G.L.A. c. 93A v. DPC)

20.    Alexandra repeats and realleges the allegations contained in paragraphs 1 through 19 of its Complaint as if fully set forth herein.

21.    Alexandra and DPC are both engaged in business in accordance with M.G.L. c. 93A.

22.    During the course of the Project, DPC issued a monetized punchlist that contained a substantial number of items that DPC knew were already complete and/or were not part of Alexandra's scope of work.

23.    DPC issued the monetized punchlist for the purpose of justifying not paying Alexandra on the Project.

24.    DPC has intentionally not reviewed the punchlist, and it has inflated the values on the punchlist for the purpose of justifying not paying Alexandra on the Project.

25.    DPC has wrongfully and intentionally refused to remove the items from the monetized punchlist that it knows were not in Alexandra's scope of work.

26.    DPC has wrongfully and intentionally refused to certify Alexandra's applications for payment.

27.    DPC's actions were taken in bad faith and are in violation of M.G.L. c. 93A.

28.    As a result of DPC's bad faith actions, Alexandra has suffered substantial damages.

Wherefore, Alexandra Construction demands that judgment be entered against Weston for the full amount of its damages as determined by this Court, together with costs, attorney's fees, treble damages and such other and further relief as this Court deems just and fair.

## Count IV
### (Contractual Interference v. DPC)

29.    Alexandra repeats and realleges the allegations contained in paragraphs 1 through 28 of its Complaint as if fully set forth herein.

30.    DPC was under contract to Weston to provide design and architectural administration services for the Project.

31.    As a result of its contract with Weston, DPC was aware of Alexandra's contract with Weston.

32.    As part of its contract administration services on the Project, DPC was required to issue punchlists, change orders and to certify Alexandra's applications for payment.

33.    During the course of the Project, DPC wrongfully and intentionally interfered with Alexandra's contract with Weston by issuing punchlists with inflated values, by issuing inaccurate and deceptive punchlists that contained numerous items that had already been completed and/or were not in Alexandra's scope of work, by not certifying Alexandra's applications for payment in an amount that accurately reflected the amount of work completed and by not issuing change orders for work performed by Alexandra Construction that DPC knew was not in Alexandra's scope of work.

34.    DPC wrongfully and intentionally took these actions so that it would be able to gain an advantage in its own contract dispute with Weston by hiding and/or minimizing its own design and contract administration errors.

35.    DPC's wrongful and intentional actions caused Weston to breach its contract with Alexandra by not paying Alexandra in a timely manner, by not paying Alexandra for work performed, by not paying Alexandra for additional work performed that was beyond Alexandra's scope of work, by Weston wrongfully withholding payments from Alexandra based upon the inaccurate and deceptive punchlists issued by DPC and by Weston failing, refusing and/or neglecting to grant reasonable contract time extensions to Alexandra due to the numerous design changes issued by DPC during the course of the Project.

36.    As a direct result of DPC's actions, Alexandra suffered and continues to suffer substantial damages.

Wherefore, Alexandra Construction demands judgment against DPC for the full amount of its damages as determined by this Court, together with costs, attorney's fees and such other and further relief as this Court deems just and fair.

Plaintiff demands a trial by jury on all counts.

Respectfully submitted,

Scott K. DeMello, Esq.
109 Oak Street
Newton, MA  02464
617-630-8150
July 9, 2004

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF WESTON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C. A. No. 1:05-cv-11166-EFH

## EXHIBIT C

### TO

### TOWN OF WESTON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY

B0444226v1

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS     03/21/01
The Design Partnership of Cambridge, Inc., Project No. 2003

SECTION 00615

PERFORMANCE BOND
Bond No. 08BCSAV7773

KNOW ALL MEN BY THESE PRESENTS that Jan Five Corporation d/b/a

Alexandra Construction, 20 Ossipee Road, Newton, MA 02164

as Principal, and    Hartford Fire Insurance Company

150 Federal Street, Boston, MA 02110-1753

as Surety, are held and firmly bound unto the Awarding Authority, in the sum of Twenty-Eight

Million Six Hundred Seventy-Seven Thousand and --00/100 Dollars ($28,677,000.00)
lawful money of the United States of America to be paid to the Awarding Authority for which payment,
well and truly to be made, we bind ourselves, our respective heirs, executors, administrators, successors
and assigns, jointly and severally, firmly by these presents.

WHEREAS the said Principal has made a contract with the Awarding Authority bearing date of

June 25     2001, for the construction of   Country and Woodland Schools,

Weston, MA.   Project No. 2003       (Project),

Now the condition of this obligation is such that if the Principal shall well and truly keep and perform all
the undertakings, covenants, agreements, terms and conditions of said contract and any extensions
thereof that may be granted by the Awarding Authority, with or without notice to the surety, and during
the life of any guaranty required under the contract, and shall also well and truly keep and perform all
the undertakings, covenants, agreements, terms, and conditions of any and all duly authorized
modifications, alterations, changes or additions to said contract that may hereafter be made, notice to the
surety of such modifications, alterations, changes or additions being hereby waived, then this obligation
shall become null and void; otherwise it shall remain in full force and virtue.

In the event that the contract is violated or not complied with or abandoned by the Contractor, or is
terminated by the Awarding Authority for cause, said surety hereby further agrees that said surety shall,
if requested in writing by the Awarding Authority, take such action as is necessary to complete said
contract.

In witness whereof we hereunto set our hands and seals this 25th day of   June  , 2001.
Jan Five Corporation d/b/a Alexandra Construction

By Principal: _____     [Seal]

Hartford Fire Insurance Company
By Surety: _____
    John J. Curtin, Jr., Attorney-in-Fact

Address:   150 Federal Street, Boston, MA. 02110-1753

Surety Agent: Curtin Int'l Ins. & Bonding Agcy., Inc [Seal]

Address:   81 Hartwell Avenue, Lexington, MA.   02421-3127

Telephone:   (781)863-0044

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS                03/21/01
The Design Partnership of Cambridge, Inc., Project No. 2003

## CERTIFICATE AS TO CORPORATE PRINCIPAL
### (PERFORMANCE BOND)

I, _Teresa Clark_, certify that I am the _Clerk_

of the corporation named as principal in the within bond; that _Gregory Clark_

who signed said Bond on behalf of the Principal was then _President_

of said corporation and I know his signature and his signature thereon is genuine; and that said Bond
was duly signed, sealed and attested for and on behalf of said corporation by authority of its governing
body.

Signed: _Teresa M. Clark_                                   [Seal]

Date: _June 25_, 20 _01_

Rate of Premium on this bond is $_____ per thousand.

Total Amount of Premium Charge is $_____.

### END OF PERFORMANCE BOND

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF WESTON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C. A. No. 1:05-cv-11166-EFH

## EXHIBIT D

### TO

**TOWN OF WESTON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY**

B0444228v1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
C.A. NO. 04-2787

```
————————————————————    )
                             )
JAN FIVE CORP., d/b/a        )
ALEXANDRA CONSTRUCTION,      )
         Plaintiff,          )
                             )        THE DEFENDANT HEREBY
                             )        DEMANDS A JURY TRIAL
v.                           )        ON ALL CLAIMS
                             )
TOWN OF WESTON AND DESIGN    )
PARTNERSHIP OF CAMBRIDGE,    )
         Defendants,         )
————————————————————    )

————————————————————    )
                             )
TOWN OF WESTON,              )
         Plaintiff-in-Counterclaim,  )
v.                           )
                             )
JAN FIVE CORP., d/b/a        )
ALEXANDRA CONSTRUCTION,      )
         Defendant-in-Counterclaim.  )
————————————————————    )
```

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

SEP 03 2004

*[signature]*
CLERK

## DEFENDANT'S ANSWER, COUNTERCLAIMS & CROSS-CLAIMS

The defendant, the Town of Weston ("Weston") by its counsel, Gadsby Hannah LLP respectfully submits the following Answer, Counterclaims & Cross-Claims in response to the July 9, 2004 Complaint ("Complaint") of the plaintiff, Jan Five Corp. d/b/a/Alexandra Construction ("Alexandra").

### PARTIES

1.    Weston denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. 1 of the Complaint.

2.    Weston denies each and every allegation contained in paragraph no. 2 of the Complaint, except admits that Weston is organized pursuant to the laws of the Commonwealth of Massachusetts and has its main office at 378 Town House Road,

1

Weston, MA. 02493. Additionally, the Town of Weston School Department has an office at 89 Wellesley Street, Weston, MA. 02493.

3.    Weston denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. 3 of the Complaint.

## FACTS

4.    Weston admits the allegations contained in paragraph no. 4 of the Complaint, and respectfully refers the Court to a true, accurate and complete copy of the contract between Weston and Alexandra (the "Construction Contract").

5.    Weston admits the allegations contained in paragraph no. 5 of the Complaint, and respectfully refers the Court to a true, accurate and complete copy of the contract between Weston and the defendant, Design Partnership of Cambridge ("DPC").

6.    Weston denies each and every allegation contained in paragraph no. 6 of the Complaint, except admits that the original Construction Contract price was $28,677,000.

7.    Weston denies each and every allegation contained in paragraph no. 7 of the Complaint, except admits that the Construction Contract price was amended by certain change orders totaling $910,867.

8.    Weston denies each and every allegation contained in paragraph no. 8 of the Complaint, except admits that the Construction Contract price was amended by certain change orders totaling $910,867.

9.    Weston denies each and every allegation contained in paragraph no. 9 of the Complaint, except admits that Alexandra performed a portion of the work required by the Construction Contract, but did not complete its work and was terminated in July 2004.

10.    Weston denies each and every allegation contained in paragraph no. 10 of the Complaint, except admits that it paid Alexandra more than $28,581,340.

**COUNT I**
**(Breach of Contract v. Weston)**

2

11.    Weston repeats, reiterates and realleges each and every allegation applicable to the responses contained in paragraph nos. 1 through 10 of the Complaint as though fully set forth herein.

12.    Weston denies each and every allegation contained in paragraph no. 12 of the Complaint, except admits that on or about November 1, 2003, DPC issued a Certificate of Substantial Completion and Weston respectfully refers the Court to a true, accurate and complete copy of same.

13.    Weston denies each and every allegation contained in paragraph no. 13 of the Complaint, except admits that Alexandra has demanded payment from Weston for which Alexandra is not entitled.

14.    Weston denies each and every allegation contained in paragraph no. 14 of the Complaint.

15.    Weston denies each and every allegation contained in paragraph no. 15 of the Complaint.

16.    Weston denies each and every allegation contained in paragraph no. 16 of the Complaint.

## COUNT II
### (Quantum Meruit v. Weston)

17.    Weston repeats, reiterates and realleges each and every allegation applicable to the responses contained in paragraph nos. 1 through 16 of the Complaint as though fully set forth herein.

18.    Weston denies each and every allegation contained in paragraph no. 18 of the Complaint, except admits that Weston has paid Alexandra more than $28,581,340.

19.    Weston denies each and every allegation contained in paragraph no. 19 of the Complaint.

## COUNT III
### (M.G.L.A. c.93A v. DPC)

3

20.-28. As the allegations contained in paragraph nos. 20 through 28 of the Complaint do not pertain to Weston, Weston provides no response.

## COUNT IV
### (Contractual Interference v. DPC)

29.-36. As the allegations contained in paragraph nos. 29 through 36 of the Complaint do not pertain to Weston, Weston provides no response.

## AFFIRMATIVE DEFENSES

### I.

The Complaint fails to state a cause of action upon which relief can be granted.

### II.

If Alexandra has sustained any damages as alleged, which damages are expressly denied, then all such damages will have been caused in whole or in part by the affirmative wrongdoing, fault, poor business judgment, negligence and failure of due care (hereinafter "culpable conduct") of Alexandra and/or its agents and any recovery should thereby be denied and/or diminished in proportion to which Alexandra's culpable conduct bears to the conduct which caused the alleged damages.

### III.

If Alexandra has sustained any damages as alleged, which damages are expressly denied, then all such damages will have been caused in whole or in part by the affirmative wrongdoing, fault, poor business judgment, negligence and failure of due care (hereinafter "culpable conduct") of persons other than or in addition to Weston and Alexandra's recovery should thereby be denied and/or aproportioned among such persons according to the degree of responsibility that each is found to have in proportion to their culpable conduct.

### IV.

Alexandra may not maintain each and every cause of action because it has failed to mitigate its damages.

4

V.

Weston is entitled to a set off or credit to the extent that Alexandra recovers any damages by collateral source.

VI.

If any damage was occasioned as alleged in the Complaint, then such damage was the result of an Act of God or Force Majeure and/or an inevitable or unavoidable superceding cause and not the conduct of Weston.

VII.

Alexandra's claims are barred by the doctrines of waiver, latches and/or estoppel.

VIII.

Alexandra may not maintain each and every cause of action alleged in the Complaint because such claims are barred by the principle of assumption of the risk.

IX.

Alexandra may not maintain each and every cause of action alleged in the Complaint because it has sustained no injury as a consequence of Weston's conduct.

X.

Alexandra may not maintain each and every cause of action alleged in the Complaint because it has failed to join all necessary parties.

XI.

Alexandra's claim is an over-exaggeration of its alleged damages, is in bad faith and renders its claims against Weston void.

## AS AND FOR THE TOWN OF WESTON'S CROSS-CLAIMS AGAINST THE DESIGN PARTNERSHIP OF CAMBRIDGE

1.      If Alexandra sustained any damages in the manner set forth in the Complaint through any conduct other than its own, such damages were sustained by reason of the sole active and primary carelessness, recklessness and/or affirmative acts of omission or commission by DPC, its agents, servants and/or employees without any active or affirmative negligence on the part of Weston contributing thereto.

5

2.      By reason of the foregoing, DPC will be liable to Weston under the doctrines of apportionment, contribution and/or indemnification (both contractual and implied) for the full amount of any verdict and judgment, or for a proportionate share thereof, that Alexandra may recover against Weston including, but not limited to, the costs of investigation and attorneys' fees and disbursements incurred in the defense of this action and the prosecution of this cross-claim.

## AS AND FOR THE TOWN OF WESTON'S COUNTERCLAIMS AGAINST JAN FIVE CORPORATION D/B/A ALEXANDRA CONSTRUCTION

### Parties

1.      The Town of Weston ("Weston") is organized pursuant to the laws of the Commonwealth of Massachusetts and has its main office at 378 Town House Road, Weston, MA. 02493.  Additionally, the Town of Weston School Department has an office at 89 Wellesley Street, Weston, MA. 02493.

2.      The defendant Jan Five Corporation d/b/a Alexandra Construction ("Alexandra") is a Massachusetts Corporation with a usual place of business at 109 Oak Street, Newton, MA. 02464.

### Facts

3.      On or about June 25, 2001, Weston, acting by and through the Town of Weston School Committee, hired Alexandra pursuant to a written contract ("Contract") to perform certain work involving the construction of additions and renovations to the Country and Woodland Schools (the "Project").

4.      Weston paid Alexandra over $28,677,000 in accordance with its Contract obligations.

5.      Weston fully performed its obligations under the Contract.

6.      Throughout the course of the Project's construction, Alexandra failed (among other things) to:

a.      Perform the work in accordance with the Contract's deadlines and time restrictions;

6

b.  Perform the work in accordance with the Contract's Plans and Specifications;

c.  Furnish sufficient and properly skilled manpower to the Project;

d.  Properly coordinate the Project's trade contractors and properly sequence the work;

e.  Prepare submittals in a timely manner;

f.  Properly supervise the work of the Project's trade contractors and its own forces;

g.  Employ competent supervisory staff;

h.  Properly pay its subcontractors;

i.  Properly store materials;

j.  Comply with the Project's February 20, 2001 Order of Conditions;

k.  Provide a safe Project work Site;

l.  Comply with the Project's Health & Safety Plan;

m.  Promptly and properly correct defective and/or non-conforming work;

n.  Provide Work Plans when working in occupied areas;

o.  Provide coordination drawings;

p.  Keep the Project Site clean; and

q.  Correct defective and/or nonconforming work.

7.  Alexandra also failed to timely and properly perform numerous of the Project's Punch List items.

8.  As a result of Alexandra's poor performance, Alexandra was terminated in July 2004.

## COUNT I
## (Breach of Contract)

9.  Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 8 of this Counterclaim as though fully set forth herein.

7

10.  Alexandra's conduct as described herein and elsewhere in the Project's records is a breach of the Contract's material terms.

11.  As a result of Alexandra's Breach of Contract, Weston has been damaged, in an amount to be determined at trial which damages include, but are not limited to:

   a.  Additional bussing costs;

   b.  Payment to Regis College for Weston's pre-school program;

   c.  Additional personnel costs for security and administration;

   d.  Additional custodial and outside vendor costs;

   e.  Additional lighting equipment costs for security;

   f.  Packing, storage and escalated moving costs;

   g.  Lost rental income for use of the Project's gymnasiums;

   h.  Unnecessary consulting fees, legal fees and administrative costs;

   i.  Children were not able to eat hot meals because the cafeteria was not operational; and

   j.  The schools were not able to offer the full benefit of certain educational programs.

## COUNT II
### (Breach of Contract)

12.  Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 11 as though fully set forth herein.

13.  The Contract provided that time was of the essence.

14.  Pursuant to the Contract, Alexandra agreed to pay Weston the sum of $1,000 per day as liquidated damages for his [sic] failure to Substantially Complete the Work or designated portions or phases thereof by the date or dates stipulated in the Contract.

15.  Alexandra did not Substantially Complete the Project in accordance with the Contract's deadlines.

8

16.    Alexandra's failure to timely achieve Substantial Completion of the Work is a breach of a material obligation of the Contract.

17.    As a result of Alexandra's Breach of Contract, Weston has been damaged and is entitled to liquidated damages.

## COUNT III
### (Breach of Implied Covenant of Good Faith and Fair Dealing, Mass. G. L. c. 93A)

18.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 17 as though fully set forth herein.

19.    Alexandra is engaged in business in accordance with Mass. G. L. c. 93A.

20.    Implied in the Contract was an obligation on part of Alexandra to act in good faith and to deal with Weston in a fair and equitable manner.

21.    Alexandra failed to act in good faith and did not treat Weston fairly and equitably. Alexandra breached its implied covenant of good faith and fair dealing by (among other things):

    a.    Billing Weston for work it did not perform;

    b.    Billing Weston for extra work at a premium when in fact the work Alexandra was performing was already within the scope of Alexandra's base Contract work;

    c.    Performing Time and Materials work inefficiently; and

    d.    Claiming that it had completed certain Punch List work, when in fact, such work was not performed, or was performed improperly.

22.    As a result of Alexandra's Breach of the Contract's implied covenant of good faith and fair dealing, Weston has been damaged in an amount to be determined at trial.

## COUNT IV
### (Breach of Warranty, Mass. G. L. c. 93A)

23.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 22 as though fully set forth herein.

9

24.    Alexandra warranted both expressly and implicitly that (among other things), its work would be of good quality, free from faults and defects and in conformance with the Project's Contract Documents.

25.    Alexandra's work was of poor quality, defective and did not conform to the Project's Contract Documents.

26.    Alexandra's defective work included, but is not limited to:

    a.    Boiler equipment failure;

    b.    Malfunctioning automatic temperature controls;

    c.    Fire notification system failures;

    d.    Leaky roofs and skylights;

    e.    Lighting equipment failure; and

    f.    Improper flashing and other building envelope issues.

27.    As a result of Alexandra's Breach of Warranty, Weston has been damaged, in an amount to be determined at trial. Such damages include, but are not limited to the costs that Weston has paid and will continue to pay in the future to vendors to correct the deficiencies referenced above and described elsewhere in the Project's records.

### COUNT V
### (Fraud, Deceit, Misrepresentation, Mass. G. L. c. 93A)

28.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 27 as though fully set forth herein.

29.    In meetings with Weston School Officials, Building Committee Members and Weston's consultants, Alexandra misrepresented to Weston that Alexandra had sufficient resources (i.e.: manpower, labor, equipment and materials, etc.) to complete the relevant portions of the Project before the start of the applicable school year.

30.   Alexandra's misrepresentations were of material facts, were knowingly, recklessly, intentionally or negligently made with constructive and/or actual knowledge of their falsity with the intent that Weston would rely upon them.

31.   Weston relied upon Alexandra's misrepresentations to its detriment by (among other things), refraining from exercising certain of its remedies under the Contract and Massachusetts' law.

a.    As a result of Alexandra's Fraud, Deceit and/or Misrepresentations, Weston has been damaged, in an amount to be determined at trial.

**WHEREFORE,** the Town of Weston demands judgment:
A.   Against Alexandria dismissing the Complaint;
B.   Against Alexandria on Weston's Counterclaims:
C.   Against DPC on Weston's Cross claims;
D.   Awarding Weston the costs and disbursements of this action; and
E.   For such other, further and different relief as this Court deems just and proper.

Respectfully submitted,
Attorneys for
TOWN OF WESTON

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy
of the above document was served upon the
attorney of record for each party by mail/hand.
Date: 9/1/04

Joseph A. Barra, Esq.  BBO# 632534
Richard K. Allen, Esq. BBO# 553744
Gadsby Hannah, LLP
225 Franklin Street
Boston, MA 02110-2811
Tel: (617) 345-7000
Fax: (617) 204-8061

September 1, 2004

11

B0379848

UNITED STATES DISTRICT COURT
For the District of Massachusetts

```
_____
                               )
HARTFORD FIRE INSURANCE        )
COMPANY,                       )
                               )
            Plaintiff,         )
                               )
      v.                       )          C. A. No. 1:05-cv-11166-EFH
                               )
TOWN OF WESTON,                )
                               )
            Defendant.         )
_____)
```

## EXHIBIT E

### TO

### TOWN OF WESTON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY

# WESTON/HARTFORD

# TAKEOVER
# AGREEMENT

# NOVEMBER 18, 2004

## **TAKEOVER AGREEMENT**

This Takeover Agreement is made and entered into this 18th day of November, 2004 by and between the Town of Weston, as represented by the Weston School Committee (hereinafter "Weston"), and Hartford Fire Insurance Company (hereinafter "Hartford" or "Surety") (collectively, "the Parties").

### RECITALS

WHEREAS, on or about June 25, 2001, Jan Five Corporation d/b/a Alexandra Construction ("Alexandra" or "Principal") entered into a contract with Weston for the construction of a project known as Additions and Renovations to the Country and Woodland Schools in Weston, Massachusetts ("Project"). The original contract, including all contract documents forming a part of the original contract, and all change orders, modifications, amendments and addenda shall be referred to herein as the "Construction Contract"; and

WHEREAS, under the terms of the Construction Contract, Alexandra and Hartford made, executed and delivered to Weston a Performance Bond No. 08BCSAV7773 dated June 25, 2001 ("Performance Bond") as well as a Labor and Material Payment Bond No. 08BCSAV7773 dated June 25, 2001 ("Payment Bond") (collectively, the "Bonds"); and

WHEREAS, the penal sum of the Performance Bond is unencumbered and the full penal sum of $27,677,000.00 (twenty-seven million six hundred thousand seventy-seven and 00/100 dollars) is available, as of the date of this Takeover Agreement; and

WHEREAS, the penal sum of the Payment Bond is unencumbered and the full penal sum of $27,677,000.00 (twenty-seven million six hundred thousand seventy-seven and 00/100 dollars) is available, as of the date of this Takeover Agreement; and

WHEREAS, Weston terminated the Construction Contract, effective July 15, 2004; and

1

WHEREAS, Alexandra disputes the termination of the Construction Contract; and

WHEREAS, Weston has demanded that the Surety complete or procure the completion of the Construction Contract under the terms of the Performance Bond; and

WHEREAS, certain disputes exist between Alexandra and Weston, but the Surety nonetheless wishes to arrange for work to be performed under the Construction Contract. The Parties disagree as to the nature and extent of the balance of work to be performed in order to complete the Project. Nevertheless, the Surety has agreed to have the work described below performed in order to preserve continuity of performance while reserving each others respective rights concerning such disputes; and

WHEREAS, the Surety, with a complete reservation of all rights and defenses available to both it and Alexandra, including the right to contest the termination of Alexandra, has agreed to perform the work described below in accordance with the requirements of the Construction Contract and pursuant to the terms of the Performance Bond and the terms of this Takeover Agreement.

<u>AGREEMENTS</u>

NOW, THEREFORE, in consideration of the agreements and undertakings set forth in this Takeover Agreement, and for other good and valuable consideration, the sufficiency and adequacy therefore being hereby acknowledged, the Parties agree as follows:

1.      Consistent with its obligations under the Performance Bond, the Surety agrees to take such action as is necessary to perform the following work described below through its principal, Alexandra, ("Completion Contractor (1) all items on the June 24, 2004 Monetized Punchlist, as modified, the April 22, 2004 MEP/FP Punchlist, as modified, the April 22, 2004 Landscape Punchlist, as modified and the April 22, 2004 Kitchen Equipment Punchlist, as modified (collectively, the "Punchlists") attached hereto as **Exhibit A**, and (2) all work described

2

in the following four lists attached hereto as **Exhibit B**: "Incomplete Work not in  the Punch list

as of 6/24/2004"; list of alleged "Warranty Claims and Latent Defects (dated 11/8/04)" (to the

extent any such warranties are still in effect); Landscape Items described in the June 21, 2004

Memorandum to Bill Barnes from Ian Ramey; and the October 24, 2003 Field Report from

David M. Conway (revised 11/10/2004).  All items in Exhibits A and Exhibit B are hereinafter

collectively referred to as the "Scope of Work".  Weston acknowledges that the Surety, by its

execution of this Takeover Agreement, and by arranging for the performance of the Scope of

Work herein, is acting in its capacity as the surety for the Principal, and not as a completing

contractor.  Weston further acknowledges that the Surety's execution of this Takeover

Agreement, and arrangement for the Scope of Work herein, is not intended to be any form of

admission by the Surety that the items listed in the Scope of Work are properly part of the

Construction Contract.

2.      Notwithstanding the provisions of Paragraph 1, the Architect has determined that

certain items set forth in the Punchlists have already been completed by Alexandra.  A list of

such items entitled "Elementary School Projects Completed Punch list as of 09/30/04" is

contained herein in Exhibit C.   The Architect has further determined that certain other items

should be removed from the Punch Lists.  A list of such items entitled "Country and Woodland

Elementary Schools Punch list Changes (as of November 4, 2004) is also contained in Exhibit C.

All items in Exhibit C are hereby removed from the Scope of Work.

3.      Notwithstanding the provisions of Paragraph 1, Weston and the Surety each

acknowledge that there are items set forth in the Scope of Work that Alexandra disputes and

claims to be outside the scope of work required to be performed under the Construction Contract

(the "Disputed Items").  Such Disputed Items are collectively defined and set forth in Exhibit D,

3

which is attached hereto.  The items described in Exhibit D are divided into two categories.  The first category represents items that the Surety will not perform.  These items are shaded.  With respect to the remaining items in Exhibit D that are not shaded, the Surety agrees that it will perform these items, but reserves its right to later claim that such items are not part of the Construction Contract and/or are not valued properly.   A schedule describing the value of the items that the Surety disputes, does not dispute, and/or rejects is annexed hereto as **Exhibit E** and is entitled "Punch List Scope Analysis".  To the extent that the Surety does not complete the full Scope of Work (contained in Exhibits A and B) or any of the Disputed Items, Weston reserves its rights to retain from the Construction Contract Balances, the value of any work not so completed including the reasonable costs associated with Weston's completion of these items. The right to retain such funds is in addition to any other rights that Weston may have including, but not limited to Weston's right to bring suit against the Surety for its alleged failure to perform any work that Weston contends is the Surety's responsibility.   To the extent Weston seeks to require the Surety to correct newly arisen warranty and/or latent defect issues, the Parties agree to follow the relevant terms of the Construction Contract.  The Surety reserves any right it may have to refuse to perform any such work.  To the extent the Surety elects to complete Disputed Items, the Surety reserves the right to seek additional compensation for completing the Disputed Items.  Weston and the Surety each acknowledge that the Surety will not be required to perform any new change order work (other than warranty and/or latent defect work) as provided above.

4.      Prior to the commencement of the Work under the Construction Contract, the Surety shall provide evidence to Weston that the Completion Contractor has met the required insurance obligations under the Construction Contract.

5.      Weston represents to the Surety and agrees that, as of the date of this Takeover

Agreement:

(a)      The authorized amount of the Construction Contract, including all

approved change orders is the sum of $29,587,867.00 (twenty-nine million five

hundred eighty-seven thousand eight hundred sixty-seven and 00/100 dollars);

(b)      Weston has made payments to Alexandra totaling the sum of

$28,710,848.40 (twenty-eight million seven hundred ten thousand eight hundred

forty-eight and 40/100 dollars) on the Construction Contract;

(c)      The "Construction Contract Balance" shall be hereinafter defined as the

sum of $877,018.60 (eight hundred seventy-seven thousand eighteen and 60/100

dollars), which is the balance of funds remaining in the Construction Contract,

notwithstanding Weston's claims.

(d)      In accordance with the Mass. Gen. L. c. 30, § 39K and the provisions of

the Construction Contract, including but not limited to Article 9 and Paragraph

14.2.1 of the Construction Contract, Weston shall pay to the Surety the

Construction Contract Balance, less (1) a retention based on Weston's estimate

of the fair value of its claims against Alexandra, the Surety or the Completion

Contractor, including but not limited to liquidated damages, (2) the fair and

reasonable estimated cost of completing the incomplete and unsatisfactory items

of work that Weston may opt to complete by other means, (3) a retention for

direct payments to subcontractors based on demands for same in accordance

5

with the provisions of Mass. Gen. L. c. 30, 39F (hereinafter the "Construction Contract Balance Due").

6.    Weston expressly reserves all rights and claims that may be available under contract, at law, or in equity, including under the terms and provisions of the Construction Contract and the Bonds.  Weston expressly reserves the right to hold and deduct from the Construction Contract Balance and/or the Construction Contract Balance Due its claims under contract, at law or in equity, including, but not limited to the following claims:

(a)    Until satisfactorily completed, the monetized value of any remaining incomplete and/or defective items on the Project (see Exhibits A and B, attached hereto);

(b)    at least $151,000 for liquidated damages;

(c)    Until satisfactorily completed, at least $36,064.36 for damages incurred in relation to defective work;

(d)    at least $42,066.19 for damages incurred to date in relation to direct payments made by Weston to subcontractors, and/or direct payments placed into joint interest-bearing accounts pursuant to subcontractor direct payment demands, under Mass. Gen. L. c. 30, § 39F;

(e)    the value of any other, or future direct payments to be made by Weston under Mass. Gen. L. c. 30, § 39F including, but not limited to payments that Weston may make in response to the October 26, 2004 Direct Payment Demand of Chandler in the amount of $32,488;

6

(f)      the value of any and all costs associated with additional services provided by the Architect, which the Contractor is obligated to bear pursuant to the provisions of the Construction Contract, including but not limited to Paragraphs 12.2.1, 13.5.3 and 14.2.1;

(g)      the value of any and all costs associated with services provided by the Project manager, resulting from breach of contract by Alexandra;

(h)      the value of any and all costs associated with and/or resulting from Alexandra's breach of contract, including but not limited to:

    (i)      additional busing costs;

    (ii)      payment to Regis College for housing Weston's pre-school program;

    (iii)      costs associated with additional personnel for security and administration;

    (iv)      costs associated with additional custodial staff;

    (v)      costs associated with outside vendors;

    (vi)      costs associated with additional lighting equipment for security;

    (vii)      escalated costs associated with packing, storage and moving;

    (viii)      lost rental income for use of the Project's gymnasiums;

(ix)    costs associated with consulting fees, legal fees and administrative costs;

(x)    costs associated with the loss of certain educational programs;

(xi)    the value of any and all costs associated with and/or resulting from Alexandra's breach of warranty;

7.    Payment shall be made by Weston to the Surety in accordance with the provisions of the Construction Contract and Mass. Gen. L. c. 30, § 39K. Each of the Surety's requisitions shall be in accordance with the Construction Contract and will also contain a marked up copy of Exhibits A & B identifying the work for which the Surety is seeking payment.

8.    The Surety expressly reserves all of the Surety's and/or Alexandra's rights and claims that may be available under contract, at law, or in equity, including under the terms and provisions of the Construction Contract and the Bonds including, but not limited to the following claims:

(a)    Outstanding Change Proposals

(b)    Overtime/Acceleration Claim

(c)    Aldon O.T. Claim

(d)    Prudential Glass Claim

(e)    Beauce Atlas Claim

(f)    A.J. Desjardins Claim

(g)    Winter & General Conditions Claim

Weston shall require that the Architect review and make a determination regarding the "Outstanding Change Proposals in accordance with the standards and requirements of the

8

Construction Contract Documents. Weston shall submit Alexandra's Outstanding Change Proposals to the Architect immediately upon execution of this Takeover Agreement.

9. Except as noted herein, nothing in this Takeover Agreement should be construed as limiting the obligations and/or rights of the Parties under the Construction Contract and/or under the Performance Bond. The Parties reserve their rights to make future claims under the Construction Contract and the Bonds.

10. The Surety shall complete the work required by the Construction Contract and specifically all items in the Scope of Work by: (1) January 31, 2005 for interior items; and (2) May 15, 2005 for exterior items.

11. Unless an exception to this condition is provided for by Weston in writing, completion of the work required by the Construction Contract shall not interfere with the operations of the schools and shall take place before 6:00 a.m. and after 3:00 p.m. on weekdays when school is in session.   Subject to emergencies and any exception to this condition that may be agreed to by the Parties, Weston agrees to provide Hartford with complete and unfettered access to all areas of the Project necessary for completion of the Project at the times set forth above and on weekends and holidays, provided that, to the extent that work is scheduled outside of the hours of the regular custodial shift at the schools, the Surety agrees to pay for the cost of having custodians on-site in order to allow access to the schools, as may be necessary. On the Wednesday of each week, the Surety is to provide Weston with a written "look ahead" schedule of the work it intends to perform over the course of the following week. Such notice is to include a list of the trade contractors that the Completion Contractor will be using to perform the Scope of Work and a description of the dates, times and locations where and when such work will be performed. All work shall be performed consistent with the Construction Contract

provisions required for air quality and hygiene practices and maintenance of Weston's occupancy requirements.

12.    The Surety will be represented at the Project by Anthony Branca of PI Associates, or such other individual that the Surety may designate (the "Surety's Representative"). The Surety's Representative will represent the Surety on a day to day basis as work progresses at the Project. Weston agrees to provide the Surety's Representative with a reasonable work area and access to a phone, facsimile and copier for the performance of his duties while at the Project. Hartford agrees that it will reimburse Weston for the reasonable cost of the Surety's Representative's use of the phone, facsimile and/or copier. The Surety's Representative has no authority to negotiate changes to the Scope of Work without the express written consent of the Surety. The Surety will oversee the Completion Contractor's compliance of the work to be completed. The Surety will sign all pay requisitions submitted to Weston. Payments from Weston shall be made payable to the Surety.

13.    Weston will be represented at the Project by its clerk of the works, Lenny Bisson, or such other individual that Weston may designate ("Weston's Representative"). Weston's Representative shall be present at the Project site on a day to day basis to monitor the work that the Completion Contractor is performing. . Unless otherwise provided by Weston in writing subsequent to this Takeover Agreement, Weston's Representative has no authority to approve work. Weston and the Surety acknowledge and agree that determinations as to whether Scope of Work items have been completed shall be made in accordance with the provisions of the Construction Contract, except as may be modified by this Takeover Agreement.

14.    Weston and Hartford agree that Weston's Representative and the Surety's Representative will work cooperatively to make joint preliminary determinations concerning

10

whether Scope of Work items have been performed. Upon receipt of notification that items in the Scope of Work have been performed, , Weston shall require that Bill Barnes of the Design Partnership of Cambridge ("the Architect") review the completed items of the Scope of Work for acceptance of portions of the Project and elimination and/or deletion of items on the Punchlists. If Bill Barnes is not available in isolated circumstances to review the completed items, Weston shall require that the Architect provide another qualified architect with knowledge of the Project and authority to review and make determinations concerning the completion of the Scope of Work.

15.    Weston agrees to pay for the Architect's services related to one complete inspection and review of completed items of work at the request of the Surety. From time to time, the Surety may also submit a written request to Weston for inspection and review by the Architect of those Scope of Work items the Surety claims are complete. The Surety agrees that if the Surety makes such a request, the Surety will pay for the Architect's services associated with such inspection. Weston agrees that if the Surety makes such a request, Weston will require that the Architect conduct an inspection of those items within two (2) weeks of the receipt of such written request. .

16.    Weston agrees that the total liability of the Surety under this Takeover Agreement and under the Performance Bond is limited to and shall not exceed the bond penalty of the Performance Bond. All payments made by the Surety for performance of the Scope of Work shall be credited against the bond penalty of the Performance Bond. Nothing in this Takeover Agreement constitutes a waiver of such bond penalty, or an increase in the liability of the Surety under the Performance Bond.

17.     The Surety's Payment Bond shall remain in full force and effect in accordance with its terms and provisions.  Weston agrees that the total liability of the Surety under its Payment Bond is limited to and shall not exceed the bond penalty of the Payment Bond.  All payments made by the Surety under its Payment Bond shall be credited against the bond penalty of the Payment Bond.  Nothing in this Takeover Agreement constitutes a waiver of the bond penalty under the Payment Bond, or an increase of the liability of Hartford under the Payment Bond.  Weston acknowledges that the Surety, in accordance with the terms of the Payment Bond, has the discretion to settle or compromise and otherwise independently handle any and all claims under the Payment Bond.

18.     Weston expressly reserves all rights and claims that may be available under contract, at law, or in equity, including under the terms and provisions of the Construction Contract and the Bonds.  Weston expressly reserves the right to prosecute any claims under the Construction Contract and performance under the Construction Contract, Performance Bond, or this Takeover Agreement.

19.     The Surety does not waive the rights of the Surety or its Principal, if any, to contest the validity of the termination by Weston of the Construction Contract, whether items of work are properly in the Scope of Work, or of any other claims that the Principal may have against Weston or any other person, corporation or entity.  If it is determined by an appropriate forum that the termination was not proper, then the Surety reserves all of its rights against Weston as may arise from such determination.

20.     Except for the reservation of rights as set forth herein, this Takeover Agreement is solely for the benefit of Weston and the Surety.  Weston and the Surety do not intend by any provision of this Takeover Agreement to create any rights in or to increase the rights of any

12

third-party beneficiaries, nor to confer any benefit upon or grant enforceable rights under this Takeover Agreement or otherwise to anyone other than Weston and the Surety. Weston and the Surety acknowledge that nothing in this Takeover Agreement shall extend or increase the rights, if any, of any third party claimants under the Performance Bond or Payment Bond.

21.     With respect to the work to be performed under the Construction Contract, this Takeover Agreement constitutes the whole of the understandings, discussions and Takeover Agreements by and between Weston and the Surety.   Other than the Construction Contract, Weston and the Surety acknowledge that there have been no oral, written, or other Takeover Agreements of any kind as a condition precedent to, or to induce the execution of this Takeover Agreement.  Other than the Construction Contract, any written or oral discussions conducted prior to the effective date of this Takeover Agreement with respect to the work performed herein shall not in any way vary or alter the terms of this Takeover Agreement.

22.     This Takeover Agreement may not be changed, amended or altered in any way except by a writing executed by both Weston and the Surety.  This Takeover Agreement shall be governed and controlled by the laws of the Commonwealth of Massachusetts. The existing claim provisions of Section 4.5 of the Construction Contract shall apply as though fully set forth herein.

23.     This Takeover Agreement shall extend to and be binding upon the parties hereto and their respective successors and assigns.

24.     Any notices given by Weston to the Surety, or the Surety to Weston, under this Takeover Agreement shall be addressed as follows:

As to Weston:

Ms. Judith Belliveau
Assistant Superintendent for Business

13

Weston Public Schools
89 Wellesley Street
Weston, MA 02493

With a copy to:
Joseph A. Barra, Esq.
Gadsby Hannah, LLP
225 Franklin Street
Boston, MA 02110

**As to the Surety:**

Mr. Kenneth A. Cranston
The Hartford
Hartford Plaza T4
Hartford, CT 06115
Phone (860) 547-8229
Facsimile (860) 547-2092

With a copy to:
Bradford R. Carver, Esq.
Cetrulo & Capone LLP
Two Seaport Lane, 10th Floor
Boston, MA 02210
Phone (617) 217-5500
Facsimile (617) 217-5200

25.    This Takeover Agreement may be executed in counterparts, and shall be effective as of the date first written above.

26.    In the event that one or more provisions of this Takeover Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, illegality and enforceability of the remaining provisions contained in this Takeover Agreement shall not be in any way affected or impaired thereby.

27.    It is understood and agreed by Weston and Hartford that this Takeover Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the Takeover Agreement to be drafted.

IN WITNESS WHEREOF, the parties have executed this Takeover Agreement on the date indicated above, and each of the undersigned hereby represent that they are duly authorized to execute this document on behalf of and to bind the respective parties to the terms of this Takeover Agreement.

THE TOWN OF WESTON, AS REPRESENTED BY THE WESTON SCHOOL COMMITTEE

By: _____

By: _____

By: _____

By: _____

By: _____

HARTFORD FIRE INSURANCE COMPANY,

By: _____

Mr. Kenneth A. Cranston

01154-0017
347325v1

IN WITNESS WHEREOF, the parties have executed this Takeover Agreement on the date indicated above, and each of the undersigned hereby represent that they are duly authorized to execute this document on behalf of and to bind the respective parties to the terms of this Takeover Agreement.

THE TOWN OF WESTON, AS REPRESENTED BY THE WESTON SCHOOL COMMITTEE

By: _____

By: _____

By: _____

By: _____

By: _____

HARTFORD FIRE INSURANCE COMPANY,

By: _____

     Mr. Kenneth A. Cranston

15

01154-0017
347325v1

11/12/04                          WESTON ELEMENTARY SCHOOLS
                                    Punch List Scope Analysis

| Exhibit A | Not Disputed | Disputed | Refused | TDPC Value |
|---|---|---|---|---|
| Landscape | $1,300.00 | $0.00 | $0.00 | $1,300.00 |
| Kitchen Equipment | $2,350.00 | $0.00 | $0.00 | $2,350.00 |
| Mechanical, Electrical, Plumbing, Fire Protection | $195,130.00 | $0.00 | $200.00 | $195,330.00 |
| Country School Roof | $8,200.00 | $0.00 | $0.00 | $8,200.00 |
| Country School Exterior Phase I | $9,730.00 | $4,850.00 | $1,000.00 | $15,580.00 |
| Country School Exterior Phase II | $15,275.60 | $29,625.00 | $0.00 | $44,900.60 |
| Country School Interior Part A | $30,839.00 | $7,175.00 | $2,225.00 | $40,239.00 |
| Country School Interior Part B | $32,985.00 | $14,335.00 | $3,875.00 | $51,195.00 |
| Country School Interior Part C | $24,165.00 | $5,445.00 | $3,275.00 | $32,885.00 |
| Woodland School Rip-Rap | $0.00 | $0.00 | $25,000.00 | $25,000.00 |
| Woodland School Roof | $2,000.00 | $5,000.00 | $0.00 | $7,000.00 |
| Woodland School Exterior Phase I | $7,375.00 | $11,750.00 | $1,475.00 | $20,600.00 |
| Woodland School Exterior Phase II | $10,475.00 | $8,350.00 | $3,600.00 | $22,425.00 |
| Woodland School Interior Part A | $27,583.00 | $7,560.00 | $4,925.00 | $40,068.00 |
| Woodland School Interior Part B | $11,760.00 | $5,510.00 | $350.00 | $17,620.00 |
| Woodland School Interior Part C Phase I | $18,745.00 | $8,760.00 | $10,150.00 | $37,655.00 |
| Woodland School Interior Part C Phase II | $24,240.00 | $5,325.00 | $4,250.00 | $33,815.00 |
| Woodland School Interior Part D | $28,940.00 | $27,425.00 | $1,000.00 | $57,365.00 |
| | | | | |
| SUBTOTAL | $451,092.60 | $141,110.00 | $61,325.00 | $653,527.60 |

| Exhibit B | Not Disputed | Disputed | Refused | Value |
|---|---|---|---|---|
| JNEI Field Report Rev. Date 11/10/04 | $4,000.00 | $0.00 | $1,700.00 | $5,700.00 |
| Warranty Claim - Sitework | $13,700.00 | $0.00 | $11,200.00 | $24,900.00 |
| complete Work Not In Punchlist | $72,940.00 | $18,982.00 | $0.00 | $91,922.00 |
| arranty Claims and Latent Defects | $0.00 | $11,110.00 | $0.00 | $11,110.00 |
| | | | | |
| SUBTOTAL | $90,640.00 | $30,092.00 | $12,900.00 | $133,632.00 |
| | | | | |
| TOTAL | $541,732.60 | $171,202.00 | $74,225.00 | $787,159.60 |

Carlisle Consulting Group, Inc.

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )   C. A. No. 1:05-cv-11166-EFH |
| TOWN OF WESTON, | ) ) ) |
| Defendant. | ) ) ) |

## EXHIBIT F

### TO

### TOWN OF WESTON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY

B0444229v1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                    SUPERIOR COURT DEPARTMENT
                                                 OF THE TRIAL COURT

JAN FIVE CORPORATION, d/b/a            )
ALEXANDRA CONSTRUCTION,               )
                                      )
              Plaintiff,              )
                                      )
v.                                    )
                                      )
TOWN OF WESTON and DESIGN             )
PARTNERSHIP OF CAMBRIDGE,             )
                                      )
              Defendants.             )              C. A. No. 2004-02787
                                      )
                                      )
TOWN OF WESTON,                       )
                                      )
        Plaintiff-in-Counterclaim,    )
                                      )
v.                                    )
                                      )
JAN FIVE CORPORATION, d/b/a           )
ALEXANDRA CONSTRUCTION,               )
                                      )
      Defendant-in-Counterclaim.      )
                                      )

## DEFENDANT TOWN OF WESTON'S MOTION TO FILE THIRD-PARTY COMPLAINT AGAINST HARTFORD FIRE INSURANCE COMPANY

Defendant Town of Weston moves the Court, pursuant to Mass. R. Civ. P. 14, to allow it to serve a Third-Party Complaint on Hartford Fire Insurance Company ("Hartford"),[1] which issued a performance bond to Plaintiff Jan Five Corp. d/b/a Alexandra Construction ("Alexandra") for the construction project that is the subject matter of this litigation. In further support of its Motion, Weston offers the following:

---

[1] A copy of Weston's proposed Third-Party Complaint is attached hereto at *Exhibit A*.

1.      On or about June 25, 2001, Weston, acting by and through the Town of Weston School Committee, hired Alexandra pursuant to a written contract ("Contract") to perform certain work involving the construction of additions and renovations to the Country and Woodland Elementary Schools in Weston Massachusetts ("Project").

2.      Pursuant to the Contract, Alexandra was required to provide a performance surety bond, with Weston as beneficiary.

3.      Hartford Fire Insurance Company ("Hartford") issued a performance bond (the "Bond") guaranteeing performance by Alexandra of all work required under the Contract. Pursuant to the Bond's terms, Hartford agreed to complete all of Alexandra's obligations under the Contract in the event "the Contract is violated or not complied with or abandoned by [Alexandra], or is terminated by [Weston] for cause." <u>See</u> true and accurate copy of the Performance Bond, attached hereto at *Exhibit B*.

4.      On or about July 1, 2004, Weston sent a letter, certified mail, return receipt requested, to Alexandra notifying it that Weston would terminate the Contract for cause in 14 days if Alexandra failed to complete its work under the Contract.  <u>See</u> true and accurate copy of July 1, 2004 letter attached hereto at *Exhibit C*.  Weston provided a copy of the July 1, 2004 "14-day" letter to Hartford.

5.      On or about July 12, 2004, Alexandra filed its *Complaint* in the instant litigation alleging Weston breached the Contract.

6.      On or about July 15, 2004, Weston sent a second letter, certified mail, return receipt requested, to Alexandra notifying it that Weston was terminating the Contract for cause. <u>See</u> true and accurate copy of July 15, 2004 attached hereto at *Exhibit D*.

2

7.      Also on or about July 15, 2004, Weston sent a letter, certified mail, return receipt requested, to Hartford, notifying it that Weston had terminated the Contract for cause, and demanding that Hartford fulfill its obligations under the Bond. See true and accurate copy of July 15, 2004 letter, attached hereto at *Exhibit E.*

8.      On or about September 3, 2004, Weston filed *Defendant's Answer, Counterclaims & Cross-Claims* in response to Alexandra's *Complaint*.

9.      In its Counterclaims, Weston alleged, among other things, that Alexandra failed to complete its obligations under the Contract.

10.     Hartford refused to complete all of Alexandra's obligations under the Contract as required by the Bond. Instead, Hartford requested that Weston enter into a "takeover agreement" whereby Hartford would complete only portions of the work left uncompleted by Alexandra.

11.     The parties executed the "takeover agreement" on or about November 18, 2004. Pursuant to the express terms of the "takeover agreement" the parties agreed that

> nothing in this Takeover Agreement should be construed as limiting the obligations and/or rights of the Parties under the Construction Contract and/or under the Performance Bond. The Parties reserve their rights to make future claims under the Construction Contract and the Bonds.

See true and accurate copy of Takeover Agreement, attached hereto at *Exhibit F.*

12.     Further pursuant to the terms of the "takeover agreement," Hartford was required to complete all interior work that Hartford had agreed to perform by January 31, 2005.

13.     Hartford immediately failed to comply with its obligations under the "takeover agreement," and Weston became concerned that Hartford would fail to complete the interior work by January 31, 2005. See true and accurate copy of letter dated December 7, 2004, attached hereto at *Exhibit G.*

14.     By March 31, 2005, Hartford had completed less than half of the interior work it had agreed to complete.

15.     The "takeover agreement" also obligated Hartford to take certain measures to guard the health and safety of the students and staff of the County and Woodland Elementary Schools, and to guard from disrupting school operations while it performed work at the Schools. Hartford repeatedly failed to fulfill these obligations.

16.     Weston repeatedly reminded Hartford of its obligations under the Bond and the "takeover agreement," and expressed its concern with Hartford's inability to comply with its obligations under the "takeover agreement."

17.     In a letter dated April 12, 2005, Weston terminated the "takeover agreement," declaring Hartford in default of both the Bond and the "takeover agreement." See true and accurate copy of letter dated April 12, 2005, attached hereto at *Exhibit H*.

18.     Weston's claims against Hartford arise out of the Contract and the Project, which constitute the subject matter of Plaintiff Alexandra's claims against Weston.

19.     The deadline for all discovery requests and completion of depositions is August 31, 2006, more than fifteen (15) months from the date of this Motion, and no pre-trial or trial date has been set by the Court.

20.     No party will be unduly prejudiced by allowing Weston's Motion.

21.     Allowing Weston's Motion will promote judicial economy as it will prevent duplicative litigation.

4

WHEREFORE, the Town of Weston hereby requests that the Court grant *Defendant Town of Weston's Motion to File a Third-Party Complaint Against Hartford Fire Insurance Company*.

Respectfully submitted,
TOWN OF WESTON
By its attorneys,

Joseph A. Barra, BBO #632534 (MA)
2366623 (NY)
John P. Martin, BBO #637667
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

Dated:  June 3, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the *Defendant Town of Weston's Motion to File a Third-Party Complaint Against Hartford Fire Insurance Company* was served upon the attorney of record for each party by first class mail.

By:

Date:  6/3/2005

5

B0414315v1

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| )<br>HARTFORD FIRE INSURANCE )<br>COMPANY, )<br> )<br>          Plaintiff, )<br> )<br>    v. )<br> )<br>TOWN OF WESTON, )<br> )<br>          Defendant. )<br> ) | C. A. No. 1:05-cv-11166-EFH |

## EXHIBIT G

### TO

### TOWN OF WESTON'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY

B0444232v1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

JAN FIVE CORPORATION, d/b/a )
ALEXANDRA CONSTRUCTION, )
    )
    Plaintiff, )
    )
v. )
    )
TOWN OF WESTON and DESIGN )
PARTNERSHIP OF CAMBRIDGE, )
    )
    Defendants. )
_____ )
    )
TOWN OF WESTON, )
    )
    Plaintiff-in-Counterclaim, )
    )
v. )
    )
JAN FIVE CORPORATION, d/b/a )
ALEXANDRA CONSTRUCTION, )
    )
    Defendant-in-Counterclaim. )
_____ )
    )
TOWN OF WESTON, )
    )
    Third-Party Plaintiff, )
    )
v. )
    )
HARTFORD FIRE INSURANCE )
COMPANY, )
    )
    Third-Party Defendant. )
_____ )

**THE DEFENDANT HEREBY
DEMANDS A JURY TRIAL
ON ALL CLAIMS**

C. A. No. 2004-02787

```
FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

JUL 13 2005

Edward J. Sullivan
                    CLERK
```

## TOWN OF WESTON'S THIRD-PARTY COMPLAINT AGAINST HARTFORD FIRE INSURANCE COMPANY

B0414026v1

The Town of Weston ("Weston") serves this Third-Party Complaint on Hartford Fire Insurance Company ("Hartford") in response to: (a) Hartford's refusal to fulfill its obligations under a performance bond (the "Bond") naming Weston as beneficiary, whereby Hartford agreed to complete the contract for construction ("Contract"), between Weston and Hartford's principal, Jan Five Corporation, d/b/a Alexandra Construction ("Alexandra"), of two (2) elementary schools for Weston in the event "the Contract is violated or not complied with or abandoned by [Alexandra], or is terminated by [Weston] for cause;" and (b) Hartford's subsequent breach of a "takeover agreement" with Weston whereby Harford agreed to complete a portion of Alexandra's incomplete and defective work under the Contract.

Weston more fully sets out its claims as follows:

## PARTIES

1. Plaintiff, Town of Weston ("Weston"), is organized pursuant to the laws of the Commonwealth of Massachusetts and has its main office at 378 Town House Road, Weston Massachusetts. Additionally, the Town of Weston School Department has an office at 89 Wellesley Street, Weston Massachusetts.

2. Hartford Fire Insurance Company ("Hartford") is company affiliated with the Hartford Financial Services Inc., with headquarters in Hartford Connecticut, and is authorized to engage in the business of suretyship within the Commonwealth of Massachusetts. Hartford's principal office for conducting business in Massachusetts is located at 150 Federal Street, Boston, Massachusetts.

## FACTS

3. On or about June 25, 2001, Weston, acting by and through the Town of Weston School Committee, hired Jan Five Corporation, d/b/a Alexandra Construction ("Alexandra"), pursuant to a written contract for construction ("Contract") to perform certain work involving the

2

construction of additions and renovations to the Country and Woodland Elementary Schools (the "Project") in the Town of Weston.

4.     Weston fully performed its obligations under the Contract.

5.     Throughout the course of the Project's construction, Alexandra failed (among other things) to:

a.     Perform the work in accordance with the Contract's deadlines and time restrictions;

b.     Perform the work in accordance with the Contract's Plans and Specifications;

c.     Furnish sufficient and properly skilled manpower to the Project;

d.     Properly coordinate the Project's trade contractors and properly sequence the work;

e.     Prepare submittals in a timely manner;

f.     Properly supervise the work of the Project's trade contractors and its own forces;

g.     Employ competent supervisory staff;

h.     Properly pay its subcontractors;

i.     Properly store materials;

j.     Comply with the Project's February 20, 2001 Order of Conditions;

k.     Provide a safe Project work Site;

l.     Comply with the Project's Health & Safety Plan;

m.     Promptly and properly correct defective and/or non-conforming work;

n.     Provide Work Plans when working in occupied areas;

o.     Provide coordination drawings;

p.     Keep the Project Site clean; and

q.     Timely and properly perform approximately $700,000 in punch list items on the Project.

3

6.      Pursuant to the Contract, Alexandra was required to provide a performance surety bond with Weston as beneficiary.

7.      Hartford, as surety, issued a performance bond (the "Bond") to Alexandra that secures performance by Alexandra of all work required under the Contract.  Pursuant to the Bond's terms, Harford agreed to complete all of Alexandra's obligations under the Contract in the event "the Contract is violated or not complied with or abandoned by [Alexandra], or is terminated by [Weston] for cause."

8.      The Project was scheduled, in the Contract, to be substantially complete on August 1, 2003.  The Project was not certified as substantially complete until November 13, 2004.

9.      By July 1, 2004, approximately 229 days after certification of substantial completion, Alexander had failed to complete approximately $700,000 in punch-list items that had been outstanding on the Project.

10.     On or about July 1, 2004, Weston sent a letter, certified mail, return receipt requested, to Alexandra notifying it that Weston would terminate the Contract for cause in 14 days if Alexandra failed to complete its work under the Contract.  Weston provided a copy of the July 1, 2004 "14-day" letter to Hartford.

11.     By July 15, 2004, Alexander had failed to complete the outstanding punch-list work, and other incomplete and defective work on the Project.

12.     On or about July 15, 2004, Weston sent a second letter, certified mail, return receipt requested, to Alexandra notifying it that Weston was terminating the Contract due, among other things, to Alexandra's failure to complete it work on the Project.

4

13.     Also on or about July 15, 2004, Weston sent a letter, certified mail, return receipt requested, to Hartford, notifying it that Weston had terminated the Contract for cause, and demanding that Hartford fulfill its obligations under the Bond.

14.     Hartford refused to fulfill its obligations under the Bond.  Instead, Hartford insisted on entering into an agreement whereby Hartford would complete only portions of Alexandra's work under the Contract (the "Takeover Agreement").  In an effort to have at least portions of the Project completed as expeditiously as possible, Weston agreed to negotiate the terms of the Takeover Agreement.

15.     During the negotiations, Weston received notice, in a letter dated September 21, 2004 from Carlisle SynTec Incorporated ("Carlisle"), the roofing system supplier to the Project, that Alexandra had failed to pay A.J. Desjardins Roofing Co. ("Desjardins") its roofing subcontractor for its work on the Project.  Carlisle informed Weston that Carlisle would revoke the warranty for the Project's roofing system unless and until Desjardins was paid.

16.     Weston notified Hartford in a letter dated October 6, 2004 of Carlisle's demands, enclosing Carlisle's September 21, 2004 letter.  Weston further demanded that Hartford, pursuant to its obligations under the Bond, pay Desjardins all amounts due under the subcontract.

17.     Hartford failed to respond to Weston's notification and demand.

18.     In a facsimile transmission dated October 12, 2004, Carlisle notified Weston that it would be suspending additional warranties on Carlisle's roofing system until Desjardins was paid.

19.     Weston notified Hartford in a letter also dated October 12, 2004 of Carlisle's latest actions, and again demanded that Hartford perform its obligations under the Bond and pay Desjardins amounts owed under the subcontract.

5

20.     Hartford failed to respond to Weston's second notification and demand.

21.     On or about November 18, 2004, Weston and Hartford executed the Takeover Agreement. Pursuant to the Takeover Agreement, the parties agreed that Weston reserved all of its rights under the Contract and the Bond. Weston and Hartford further agreed that the Bond will remain in full force and effect despite the execution of the Takeover Agreement.

22.     Further pursuant to the Takeover Agreement, Weston and Hartford agreed on a "Scope of Work," valued at $541,732.60 (approximately 69 % of the $787,159.60 in incomplete and defective work left on the Project by Alexandra), that Hartford would complete.

23.     Under the explicit terms of the Takeover Agreement, Hartford agreed to complete the interior portion of the Scope of Work by January 31, 2005, and the exterior portion of the Scope of Work by May 15, 2005.

24.     The Contract between Alexandra and Weston, which Hartford is obligated to complete pursuant to the Bond, included a "time is of the essence" provision.

25.     Pursuant to the Takeover Agreement, Hartford further agreed to provide Weston with a weekly written "look ahead" schedule for the upcoming week's work, describing the work it intended to perform, and containing a list of the trade contractors that will perform that week's work, along with the dates, times and locations within each School where such work would be performed. The "look ahead" schedules were critical to Weston as it needed to make sure that the scheduled work would not affect the safety and security of the students attending the schools in which the work was to be performed.

26.     Weston agreed to pay for the Project Architect's services related to one (1) final inspection and review of completed items of the Scope of Work. Hartford agreed to pay for any other inspection and review, other than the final inspection and review, requested by Hartford.

27.    The Takeover Agreement also obligated Hartford to take certain measures to guard the health and safety of the students and staff of the Country and Woodland Elementary Schools, and to guard from disrupting school operations while it performed work at the Schools. Hartford repeatedly failed to fulfill these obligations.

28.    Hartford, over Weston's objections, retained Alexandra to perform the Scope of Work under the Takeover Agreement.

29.    Despite Hartford's agreement to complete the interior portion of the Scope of Work by January 31, 2005, Alexandra failed to begin work until December 4, 2004, nearly three (3) weeks after the execution of the Takeover Agreement. Moreover, Weston was informed that Alexandra would perform work only on weekends and over the holiday break.

30.    As of December 7, 2004, Hartford had failed to provide Weston with a "look ahead" schedule. Weston notified Hartford that it had serious concerns whether Hartford would be able to complete the interior portion of the Scope of Work by the agreed upon date of January 31, 2005, given Alexandra's late start and its intention to only work weekends and holidays. Weston also questioned Hartford's commitment to manage the work given the lack of "look ahead" schedules, and the fact that Hartford's representative for the Scope of Work failed to accompany Weston and Alexandra on the walk-through of the work.

31.    On December 9, 2004 Hartford again failed to provide Weston with a "look ahead" schedule for the upcoming week's work. In a letter dated December 9, 2004, Weston informed Hartford of its failure, and reminded Hartford that the schedule was necessary to assure student safety and to prevent disruptions to teachers and students.

32.    By December 23, 2004, the only information Hartford had provided in the few "look ahead" schedules it bothered to provide were the dates that Alexandra intended to perform

work. Hartford failed to inform Weston of the time, the type and the location of work to be performed, and the trades that would perform the work as it was required to do by the Takeover Agreement. As a result, Alexandra and its subcontractors began disrupting classroom materials and furniture when performing work. Alexandra further failed to use proper air quality and hygiene controls. Finally, Alexandra's subcontractors failed to bring adequate equipment to perform their work; in one instance, painters arrived to work without ladders.

33. Weston, in a letter from counsel dated December 23, 2004, informed Hartford of Hartford's failures to comply with it obligations under the Takeover Agreement. Weston also expressed concern that Hartford would be unable to complete the work by the January 31, 2005 deadline.

34. On January 10, 2005, Hartford announced that Alexandra would complete the interior portion of the Scope of Work at the Country Elementary School by January 13, 2004. Hartford insisted that Weston have the Project Architect conduct a preliminary inspection of the Country Elementary School.

35. Despite Hartford's announcement, by January 13, 2005 significantly less than half of the agreed upon interior work at the Country Elementary School had been completed.

36. Weston and Hartford met on January 13, 2005 to discuss the lack of progress on the Scope of Work, and Hartford's continued failure to comply with its several obligations under the Takeover Agreement. Prior to the meeting, Hartford had supplied Weston with a punch-list schedule for the outstanding interior Scope of Work.

37. Hartford represented that it would improve its efforts and performance, and would complete the interior portion of the Scope of Work by January 31, 2005, as originally agreed to. Hartford also agreed to provide more detailed "look ahead" schedules in compliance with the

8

terms of the Takeover Agreement.    Finally, Hartford agreed to pay the cost of the Architect's review and inspection of the work performed to date.

38.    Despite Hartford's representations, the punch-list schedule supplied by Hartford did not include several items Hartford had originally agreed to complete in the Takeover Agreement, but had not been completed.  Moreover, Hartford's representative for the Scope of Work was completely unfamiliar with the contents of the punch-list schedule.

39.    Following the meeting, Weston memorialized its concerns with Hartford's performance to date, as well as its doubts that Hartford would complete the interior work on time, in a letter dated January 13, 2005.

40.    By January 31, 2005, the date by which Hartford had agreed to complete the interior portion of the Scope of Work, Hartford had failed to complete even half of the work.

41.    In a letter dated February 15, 2005, Weston informed Hartford of its failure to complete the interior portion of the Scope of Work, and provided Hartford with the Project Architect's analysis of outstanding work.  Despite Hartford's failures to date, Weston extended the time for Hartford to complete the interior portion of the Scope of Work to February 26, 2005 – through the February school vacation.  Weston informed Hartford that if it failed to complete the interior portion of the Scope of Work by February 26, 2005, Weston would hold Hartford in breach of both the Takeover Agreement and the Bond.

42.    On February 15, 2005, Alexandra informed Weston that it would stop working until the Project Architect completed a full, but still preliminary, inspection and review of the work it had performed to date.  In a February 17, 2005 letter to Hartford, Weston demanded that Hartford explain how it would complete the interior portion of the Scope of Work by February 26, 2005 if Alexandra intended to stop work.

9

43.    On or about February 17, 2004, Hartford requested additional inspections and reviews by the Project Architect of the Scope of Work performed to date.  Hartford agreed that it would pay the costs of these inspections and reviews – as it was obligated to do pursuant to the terms of the Takeover Agreement.

44.    The Architect's inspections and reviews demonstrated that, by March 31, 2005, Hartford had completed only 46 percent of the interior portion of the agreed upon Scope of Work.

45.    By April 1, 2005, Hartford had still not paid Desjardins, and had made no effort to have the roofing system warranties reinstated.  On April 1, 2005, Weston sent a letter to Hartford reminding Hartford of Weston's prior demands and correspondence regarding the roofing system warranties.  Weston again demanded that Hartford comply with its obligations under the Bond to complete the Contract by providing Weston with full warranties for the roofing system.

46.    In a letter dated April 12, 2005, Weston notified Hartford that Hartford was in default of its obligations under the Takeover Agreement and the Bond, and that Weston was terminating the Takeover Agreement.  Weston cited as the reasons for terminating Hartford:  (a) Hartford's failure to complete more than one half of the agreed upon interior work; (b) Hartford's repeated (and continual) failure to provide "look ahead" schedules that complied with the requirements of the Takeover Agreement; (c) Hartford's failure to comply with proper air quality and hygiene practices, as required by the Takeover Agreement; and (d) Hartford's failure to take any action to have the roofing system warranties reinstated.

47.    As of April 15, 2005, Hartford had also failed to pay the Project Architect for the review and inspection the Hartford had requested and for which it had agreed to pay pursuant to the Takeover Agreement.

10

48.    In a letter dated April 15, 2005, Weston reminded Hartford of its obligation to pay for the Project Architect's services, and demanded that Hartford immediately pay the Architect's fees.

49.    Due to the substantial amount of the Scope of Work from the Takeover Agreement left to complete – and the additional work remaining under the original Contract for Construction – the Project Architect has not performed a final inspection and review of the work completed.

50.    To date, Hartford has continued to refuse to fulfill its obligations under the Bond and complete the remaining work under the Contract.

51.    To date, Hartford has refused to pay the Architect for its services in providing the inspections and reviews demanded by Hartford.

## COUNT I

### (Claim on Bond)

52.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 51 as though fully set forth herein.

53.    Alexandra violated and failed to comply with the Contract.

54.    As a result, Weston terminated Alexandra for cause.

55.    Hartford agreed, pursuant to the terms of the Bond, to take such action as is necessary to complete the Contract.

56.    Hartford has failed to take such action as is necessary to complete the Contract.

57.    All conditions precedent to the maintenance of this third-party claim have been performed.

B0414026v1

58.    Weston has suffered, and continues to suffer, damages due to Hartford's failure to comply with the terms of the Bond.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count I of Weston's Third-Party Complaint, in an amount to be determined at trial, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

## COUNT II

### (Breach of Contract)

59.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 51 as though fully set forth herein.

60.    Hartford was required by the Takeover Agreement to complete the interior portion of the Scope of Work by January 31, 2005.

61.    Hartford failed to complete the interior portion of the Scope of Work by January 31, 2005, and as of March 31, 2005, had completed only 46 percent of the interior portion of the Scope of Work.

62.    Hartford was required by the Takeover Agreement to pay for any and all inspections and reviews by the Project Architect of the Scope of Work it requested prior to the final inspection and review.  Hartford requested several inspections and reviews of the Scope of Work.

63.    Harford has failed and refused to pay for the inspections and reviews by the Project Architect it requested.

64.    Hartford was required by the Takeover Agreement to exercise proper air quality and hygiene practices while performing the Scope of Work.

12

65.    Hartford failed and refused to exercise proper air quality and hygiene practices while performing the Scope of Work.

66.    Hartford's failures and refusals to comply with the Takeover Agreement constitute material breaches of the Takeover Agreement.

67.    Weston has suffered, and continues to suffer, damages due to Hartford's breaches of the Takeover Agreement.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count II of Weston's Third-Party Complaint, in an amount to be determined at trial, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

### COUNT III

### (Breach of Covenant of Good Faith and Fair Dealing)

68.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 51 and 59 through 67 as though fully set forth herein.

69.    The Takeover Agreement contains an implied covenant of good faith and fair dealing.

70.    Hartford's actions constitute a breach of that covenant.

71.    Weston has suffered, and continues to suffer, damages due to Hartford's breach.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count III of Weston's Third-Party Complaint, in an amount to be determined at trial, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

B0414026v1

## COUNT IV

### <u>(Violation of M. G. L. c. 93A)</u>

72.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 51 and 59 through 71 as though fully set forth herein.

73.    The conduct at issue occurred primarily and substantially in the Commonwealth of Massachusetts.

74.    Hartford is engaged in trade or commerce within the meaning of M.G.L. c. 93A.

75.    Hartford represented to Weston in the Takeover Agreement that it would pay the costs for all reviews and inspections by the Project Architect that it requested prior to the final inspection.

76.    Upon requesting several inspections and reviews by the Project Architect, Hartford specifically represented to Weston that it would pay for the several requested inspections.

77.    When Hartford made the representations that it would pay the costs for the inspections and reviews it requested, it had no intention of paying such costs.

78.    Hartford has refused to pay the costs of the Architect's reviews and inspections it has requested.

79.    Weston has suffered and continues to suffer substantial damages as direct and proximate result of Hartford's actions.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count IV of Weston's Third-Party Complaint, in an amount to be determined at trial, including treble damages and attorneys' fees, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

B0414026v1

## COUNT V

### (Violation of M.G.L. c. 176D and M.G.L. c. 93A)

80.     Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 51 and 59 through 80 as though fully set forth herein.

81.     At all relevant times, Hartford was engaged in the business of providing surety bonds within the Commonwealth of Massachusetts.

82.     At all relevant times, Hartford was an insurer for purposes of M.G.L. c. 176D.

83.     Hartford's failure to acknowledge and act reasonably promptly upon Weston informing Hartford of its claim arising from the roofing system warranty issue constitutes unfair claim settlement practices.

84.     Hartford failed to conduct a reasonable investigation of Weston's claim that Hartford was responsible under the Bond to act to have the roofing system warranties reinstated.

85.     Hartford's failure constitutes an unfair claim settlement practice.

86.     Hartford's refusal to perform substantial portions of the Contract in settlement of Weston's claims, when liability became reasonably clear, constitutes an unfair claim settlement practice

87.     Weston has suffered and continues to suffer substantial damages as direct and proximate result of Hartford's unfair settlement practices.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count IV of Weston's Third-Party Complaint, in an amount to be determined at trial, including treble damages and attorneys' fees, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

WHEREFORE, the Town of Weston demands a trial by jury, and judgment:

A.     Against Hartford on Weston's Third-Party Complaint;

15

B0414026v1