UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF WESTON,<br><br>Defendant. | C. A. No. 05-CV-11166-EFH |

## DEFENDANT TOWN OF WESTON'S MOTION TO JOIN JAN FIVE CORP. D/B/A ALEXANDRA CONSTRUCTION

Defendant Town of Weston ("Weston") hereby moves the Court to join Jan Five Corp. d/b/a Alexandra Construction ("Alexandra"), Plaintiff Hartford Fire Insurance Co.'s principal, as a defendant in counterclaim pursuant to Rules 20(a) and 13(h) of the Federal Rules of Civil Procedure. Alternatively, the Court should allow Weston to join Alexandra as a necessary plaintiff pursuant to Rule 19(a).

Alexandra should be joined as a defendant in this lawsuit because (1) Weston's right to relief from Alexandra arises out of the same transaction – the Construction Contract – as its counterclaim against Hartford, (2) Weston cannot be afforded complete relief on the claims involving the Construction Contract in Alexandra's absence, (3) Alexandra has claimed an interest in the Construction Contract, and (4) without Alexandra as a party, Weston would be subject to the risk of incurring multiple or inconsistent obligations.[1]

---

[1] Attached to this motion at *Exhibit A* is a copy of Weston's proposed Amended Answer, Counterclaims, and Third Party Complaint.

Alexandra will not be unduly prejudiced by joinder to this action, as the claims asserted by Weston have already been asserted against Alexandra in a parallel state law action.

The Court should, therefore, allow Weston to join Alexandra as a party plaintiff in this matter.

## I.    FACTS

On or about June 25, 2001, Jan Five Corporation d/b/a Alexandra Construction ("Alexandra") entered into a contract with the Town of Weston (the "Construction Contract") for the construction of a project known as Additions and Renovations to the Country and Woodland Schools in Weston, Massachusetts (the "Project"). *See* a true and accurate copy of the Construction Contract attached hereto at *Exhibit B*.[2]  Alexandra is a Massachusetts corporation with a principal place of business located at 109 Oak Street, Newton, Massachusetts.

Hartford, as surety and Alexandra, as principal, made, executed and delivered to Weston a Performance Bond No. 08BCSAV7773 dated June 25, 2001 (the "Bond"). The penal sum of the Bond is $27,677,000.00. *See* a true and accurate copy of the Performance Bond attached hereto at *Exhibit C*.

The Design Partnership of Cambridge (the "Design Partnership") is the Project architect, and produced plans and specifications, which Weston issued to Alexandra.

On or about July 1, 2004, Weston notified Alexandra and Hartford that it intended to terminate Alexandra if Alexandra failed to complete its work under the Construction Contract.

On or about July 12, 2004, Alexandra filed a complaint in Middlesex Superior Court, Commonwealth of Massachusetts (the "State Court Action"), claiming that Weston breached the

---

[2] In attaching the Construction Contract, Weston is omitting the voluminous plans and specifications and the General Conditions which were incorporated into the Construction Contract by reference.

2

Construction Contract.  Alexandra also asserted claims against the Design Partnership alleging, among other things, "design errors."

On or about July 15, 2004, as a result of disputes that arose between Weston and Alexandra, Weston terminated the Construction Contract with Alexandra.  Weston demanded that Hartford, as surety, arrange for completion of the Construction Contract pursuant to the terms of the Bond.

On or about September 3, 2004, Weston filed counterclaims against Alexandra in the State Court Action for breach of the Construction Contract, misrepresentation, and unfair and bad faith business practices in violation of M.G.L. c. 93A.  Weston also asserted cross-claims against the Design Partnership for contribution and indemnification.

On or about November 18, 2004, with a reservation of rights by both parties, Weston and Hartford executed a Takeover Agreement to arrange for work to be performed in order to take steps to complete the Project.  *See* a true and accurate copy of the <u>Takeover Agreement</u>, p. 2, attached hereto at *Exhibit D*.[3]  Pursuant to the Takeover Agreement, Hartford agreed, in conformance with the Construction Contract, to:  (1) complete punch-list work on the Project; (2) complete other incomplete work on the Project not included on punch-lists; (3) repair certain defective work on the Project discovered after the completion of punch-lists; (4) perform warranty work on the Project; and (5) perform certain landscaping work pursuant to the Construction Contract.

During the course of the work under the Takeover Agreement, disputes arose between Hartford and Weston concerning the scope of the work to be completed under the Takeover

---

[3] In attaching the Takeover Agreement, Weston is omitting the exhibits to the Takeover Agreement with the exception of Exhibit A of the Agreement.  Any additional information provided by the other exhibits would be cumulative, and therefore, not necessary for the Court's consideration.

Agreement, the Construction Contract and other obligations of the parties under the Takeover Agreement. Weston terminated the Takeover Agreement on or about April 12, 2005.

On July 13, 2005, Weston filed a third-party complaint against Hartford in the State Court Action asserting, among other things, that Hartford breached the Takeover Agreement. Weston asserted a claim on the Bond.

On June 6, 2005, Hartford filed suit in this Court claiming that Weston breached the Construction Contract, the Takeover Agreement and the Bond. Included in Hartford's Complaint is a claim against Weston that Weston's architect provided Alexandra with deficient plans and specifications for the Project. Hartford also requested a declaration by this Court that Weston breached the Construction Contract, the Takeover Agreement and the Bond.

On August 5, 2005, Weston filed its answer and counterclaims against Hartford asserting that Hartford breached the Takeover Agreement, and asserting a claim on the Bond.

On March 20, 2006, Weston filed its Motion to Amend its Counterclaim against Hartford to include a claim for breach of the Construction Contract against Hartford.

## II.     ARGUMENT

### A.     Alexandra should be joined as a counterclaim defendant pursuant to Rule 20.

Under Rule 13 of the Federal Rules of Civil Procedure:

> Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20.

See Fed. R. Civ. P. 13(h). Rule 19 of the Federal Rules of Civil Procedure state in relevant part that

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action **shall** be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those

4

> already parties, or (2) the person claims an interest relative to the subject of the action and is so situated that the disposition of the action in the person's absence **may** (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court **shall** order that the person be made a party.

*See* Fed. R. Civ. P. 19(a) (emphasis added). In addition, Rule 20 provides in pertinent part:

> All persons … may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

*See* Fed. R. Civ. P. 20(a).

Alexandra may be joined to Weston's counterclaim if Weston asserts against Alexandra a right to relief arising out of the same transaction or occurrence as Weston's claim against Hartford, and common questions of law or fact are at issue. *See* Fed. R. Civ. P. 20(a); *Sunpoint Securities, Inc. v. Porta*, 192 F.R.D. 716, 719 (M.D.Fla. 2000) (two requirements for joinder under Rule 20(a) are that the claim against additional party involve common questions of law or fact as existing claims, and that new claim arises from same transaction or occurrence as existing claims); *Travelers Ins. Co. v. Intraco, Inc.*, 163 F.R.D. 554, 556 (S.D. Iowa 1995).

The purpose of Rule 20 "is to promote trial convenience and expedite the final determination of disputes thereby preventing multiple lawsuits." *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). Rule 20 is to be liberally construed to effectuate this end. *Watson v. Blankenship*, 20 F.3d 383, 389 (10th Cir. 1994). The same "transaction" and "common" question requirements of Rule 20 are "flexible concepts" used to implement the rule's purpose. *Intraco, Inc., supra*, 163 F.R.D. at 556 (*citing* 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*("Wright Miller"), § 1653, at 389). To achieve its purpose, Rule

B0453873v1

20 allows all reasonably related claims for relief by or against different parties to be tried in a single proceeding. *Mosely, supra,* 497 F.2d at 1333.

Here, Hartford has asserted that Weston breached the Construction Contract based on the performance of its principal Alexandra on the Project. Currently before this Court is Weston's Motion to Amend its counterclaim against Hartford to include a counterclaim for breach of the Construction Contract against Hartford, also based on Alexandra's performance on the Project. Weston's counterclaim against Alexandra is that Alexandra breached the Construction Contract due to its performance on the Project. Therefore, Weston's claim arises from the very same transaction and involves the same issues of fact as its claim against Hartford, and Hartford's claims against Weston.

### B.    Alexandra should be joined as a plaintiff pursuant to Rule 19.

The purpose of Rule 19 "is to bring before the court all persons whose joinder would be desirable for a just adjudication of the action." *See* 7 Wright Miller, § 1604, at 35. Joinder under Rule 19(a) is appropriate when **non**-joinder would: (1) prevent a current party (Weston) from being accorded complete relief; or (2) when the absent party (Alexandra) claims an interest in the subject matter of the case (the Construction Contract), and its absence will (i) prevent it from protecting its own interests or (ii) will leave a current party (Weston) to a substantial risk of incurring double, multiple or otherwise inconsistent obligations." *Id.* at 35. Here, joinder of Alexandra is appropriate for all the above reasons.

Weston cannot enjoy complete relief without Alexandra as a party. Hartford has asserted a claim against Weston for breach of the Construction Contract between Weston and Hartford's principal, Alexandra. Despite this assertion, Hartford does not make clear in its Complaint whether, or the extent to which, it is assuming Alexandra's rights and obligations under the Construction Contract. Should the Court find in favor of Weston on the breach of the

6

Construction Contract claims, Weston cannot be accorded complete relief by this Court to the extent that Hartford has not assumed all of Alexandra's obligations under the Construction Contract. If Hartford has not assumed all of Alexandra's obligations, Weston cannot be provided complete relief by this Court. Even if Hartford has assumed all of Alexandra's responsibilities under the Construction Contract, Weston would still have to relitigate its breach of the Construction Contract claims against Alexandra in state court. The fact that Alexandra is not a party to this action may shield it from *res judicata* as to this Court's decision in favor of Weston. Therefore, if Alexandra is absent from these proceedings, Weston cannot be afforded complete relief by this Court.

In addition, Alexandra's absence will subject Weston to a substantial risk of incurring double or inconsistent obligations. If the Court finds against Weston with regard to Hartford's claim that Weston breached the Construction Contract, Weston would not only be obligated in judgment to Hartford in this Court, but, due to the possibility of *res judicata*, Weston could also be obligated in judgment to Alexandra on Alexandra's suit in state court. Weston would thus be subject to double obligations – to Hartford *and* to Alexandra – for breach of the Construction Contract. Similarly, Weston could be subject to inconsistent obligations if this Court finds in Weston's favor on the breach of the Construction Contract claim. Because Weston may have to relitigate liability under the Construction Contract with Alexandra in state court, there is a significant risk that the state court could rule find in Alexandra's favor, a ruling inconsistent with a ruling by this Court on the very same issue.[4] Therefore, in Alexandra's absence, Weston faces significant risk of inconsistent or double obligations.

---

[4] Additionally, Alexandra may be prejudiced if remains absent from this action. See Fed. R. Civ. P. 19(a)(2)(i). As principal on the Bond, Alexandra presumably has the responsibility to indemnify Hartford to the extent Hartford assumes obligations under the Bond. If the Court finds for Weston on the breach of the Construction Contract, Alexandra may be required to indemnify Hartford for any judgment against Hartford.

7

Because in Alexandra's absence Weston cannot be accorded complete relief by this Court, and bears a significant risk of multiple or inconsistent obligations, the Court should join Alexandra pursuant to Rule 19(a).

### C.     The Court has supplemental jurisdiction over Weston's claims against Alexandra under 28 U.S.C. § 1367.

With limited exceptions:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a); ITT Commercial Finance v. Unlimited Automotive, 814 F.Supp. 664, 668 (N.D.Ill. 1992). Supplemental jurisdiction exists where the claims against a pendent party (Hartford) and a non-pendent party (Alexandra) "derive from a common nucleus of operative facts." See Hoek v. City of Portland, 57 F.3d 781, 785 (9th Cir. 1995).

Here, the Court has original diversity jurisdiction over the claims between Weston and Hartford pursuant to 28 U.S.C. § 1332. See 28 U.S.C 1332. Weston seeks to join Alexandra, a non-diverse party as to Weston, to the current action. Because Weston's claims against Alexandra derive from the same nucleus of operative facts – performance and liability under the Construction Contract – as Weston's and Hartford's claims against each other, § 1367(a) affords the Court supplemental jurisdiction over Weston's claims against Alexandra. See Development Finance Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156, 161 (3rd Cir. 1995); Intraco, Inc., supra, 163 F.R.D at 557.

8

Moreover, the limited exceptions to supplemental jurisdiction do not apply to Weston's claims against Alexandra. "Section (b) [of § 1367] prohibits claims by plaintiffs against joined parties that would defeat the principles of diversity jurisdiction." *Intraco, Inc.*, *supra*, 163 F.R.D. at 557, n. 2. Section 1367(b) clearly states that:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims **by plaintiffs** against persons made parties under Rule 14, 19, 20, or 24 of the Federal rules of Civil Procedure, or over claims **by persons proposed to be joined as plaintiffs** under Rule 19 of such rules, or seeking to intervene **as plaintiffs** under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b) (emphasis added). The language of §1367(b) reflects pre-statute case law recognizing jurisdiction is more readily available to parties – typically defendants – haled into court against their will. *See, e.g., Owen Equipment & Erection Co. v. Kroeger*, 437 U.S. 365, 98 S.Ct. 2396 (1978); *Development Finance, supra*, 54 F.3d at 160 ("§ 1367(b) is concerned **only** with efforts of a plaintiff to smuggle in claims that the plaintiff would ot otherwise be able to interpose.") (emphasis added). *See also Associated Dry goods v. Towers Financial Corp.*, 920 F.2d 1121, 1125-1126 (2nd Cir. 1990).

Where, as here, Weston, as a defendant, seeks to join Alexandra to assert claims arising from the same nucleus of facts – performance under the Construction Contract – as the claims between Weston and Hartford, the court has supplemental jurisdiction over such claims. *See Moor v. County of Alameda,* 411 U.S. 693, 714-715, 93 S.Ct. 1785 (1973) (allowing ancillary jurisdiction over pendent parties brought into an action through a counterclaim under Fed.R.Civ.P. 13(h)); *Development Finance, supra*, 54 F.3d at 160 (§ 1367(b) by its terms does not extend to joinder of non-diverse counterclaim defendants); *Intraco, Inc., supra*, 163 F.R.D. at

557 (recognizing supplemental jurisdiction over counterclaim defendant joined by original

defendant); *In re Joint East & South Dist. Asbestos Litigation*, 769 F.Supp. 85, 86 (E. &

S.D.N.Y. 1991) (recognizing supplemental jurisdiction over defendant's third party complaint

against non-diverse party). Similarly, nothing in the language of § 1367 limits supplemental

jurisdiction to parties joined by defendants under Rules 19 or 20. *See* 28 U.S.C. § 1367.

Therefore, the Court has supplemental jurisdiction over Weston's claims against

Alexandra, whether joined under Rules 19 or 20.

### III.    CONCLUSION

Because Weston's claims against Alexandra arise from the same transaction and

occurrences as Weston and Hartford's claims against each other, the Court should allow

Weston's motion to join Alexandra as a counterclaim defendant pursuant to Rules 13(h) and

20(a). Alternatively, because Weston cannot be accorded complete relief in Alexandra's

absence, and because without Alexandra as a party, Weston would be subject to the risk of

inconsistent or double obligations, the Court should allow Weston's motion to join Alexandra as

a plaintiff pursuant to Rule 19(a).

Respectfully submitted,

TOWN OF WESTON
By its attorneys,

/ s / John P. Martin
Joseph A. Barra, BBO # 632534
jbarra@ghlaw.com
John P. Martin, BBO # 637667
jmartin@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

B0453873v1

Dated:  March 28, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party, and on the attorney for Jan Five Corporation d/b/a Alexandra Construction, by mail.

By:      / s / John P. Martin

Date:    March 28, 2006

11

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TOWN OF WESTON, )<br>)<br>Defendant. )<br>) | C. A. No. 05-CV-11166-EFH |

**EXHIBIT A**

**TO**

**DEFENDANT TOWN OF WESTON'S MOTION TO JOIN JAN FIVE CORP. D/B/A ALEXANDRA CONSTRUCTION**

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C. A. No. 1:05-CV-11166-EFH |
| TOWN OF WESTON, | ) ) | |
| Defendant. | ) ) ) | |

## AMENDED ANSWER AND COUNTERCLAIMS

1.      The Town of Weston ("Weston") is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint for Declaratory Relief and Monetary Judgment ("Complaint"), and therefore denies them.

2.      Weston admits the allegations contained in Paragraph 2 of the Complaint.

3.      Weston admits the allegations contained in Paragraph 3 of the Complaint.

4.      Weston is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint that the Court has jurisdiction over this matter under 28 U.S.C. § 1332 as Hartford has citizenship diverse from Weston, and the amount in controversy exceeds $75,000.00, and, therefore, denies them.  Weston denies the remaining allegations contained in Paragraph 4 of the Complaint.

5.      Weston admits the allegations contained in Paragraph 5 of the Complaint.

6.      Weston admits the allegations contained in Paragraph 6 of the Complaint.

7.      Weston admits the allegations contained in Paragraph 7 of the Complaint.

8.      Weston admits the allegations contained in Paragraph 8 of the Complaint.

9.    Weston admits the allegations contained in Paragraph 9 of the Complaint.

10.    Weston admits that Weston terminated the June 25, 2001 contract for construction between Weston and Jan Five Corporation d/b/a Alexandra Construction effective July 15, 2004. Weston denies the remaining allegations contained in Paragraph 10 of the Complaint.

11.    Weston is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint, and therefore denies them.

12.    Weston admits the allegations contained in Paragraph 12 of the Complaint.

13.    Weston admits that on or about November 18, 2004, Weston and Hartford Fire Insurance Company ("Hartford") executed a Takeover Agreement, a written document, the terms of which speak for themselves. Weston denies the remaining allegations contained in Paragraph 13 of the Complaint.

14.    Weston denies the allegations contained in Paragraph 14 of the Complaint.

15.    Weston denies the allegations contained in Paragraph 15 of the Complaint.

16.    Weston admits that during the course of the performance of the work under the Takeover Agreement, disputes arose between Hartford and Weston. Weston denies the remaining allegations contained in Paragraph 16 of the Complaint.

17.    Weston admits that it terminated the Takeover Agreement. Weston denies the remaining allegations contained in Paragraph 17 of the Complaint.

18.    Weston repeats, reasserts and incorporates by reference its responses to Paragraphs 1 through 17 above as if fully set forth herein.

19.    Weston denies the allegations contained in Paragraph 19 of the Complaint.

20.    Weston denies the allegations contained in Paragraph 20 of the Complaint.

21.    Weston denies the allegations contained in Paragraph 21 of the Complaint.

22.    Weston repeats, reasserts and incorporates by reference its responses to Paragraphs 1 through 21 above as if fully set forth herein.

23.    Weston denies the allegations contained in Paragraph 23 of the Complaint.

24.    Weston denies the allegations contained in Paragraph 24 of the Complaint.

25.    Weston repeats, reasserts and incorporates by reference its responses to Paragraphs 1 through 24 above as if fully set forth herein.

26.    Weston states that statements made in Paragraph 26 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary.  To the extent the Court deems that Paragraph 26 necessitates a response from Weston, Weston denies the statements made in Paragraph 26 of the Complaint.

27.    Weston states that statements made in Paragraph 27 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary.  To the extent the Court deems that Paragraph 27 necessitates a response from Weston, Weston denies the statements made in Paragraph 27 of the Complaint.

28.    Weston states that statements made in Paragraph 28 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary.  To the extent the Court deems that Paragraph 28 necessitates a response from Weston, Weston denies the statements made in Paragraph 28 of the Complaint.

29.    Weston states that statements made in Paragraph 29 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary.  To the extent the Court deems that Paragraph 29 necessitates a response from Weston, Weston denies the statements made in Paragraph 29 of the Complaint.

30.    Weston denies the allegations contained in Paragraph 30 of the Complaint.

31.     Weston denies the allegations contained in Paragraph 31 of the Complaint.

32.     Weston denies the allegations contained in Paragraph 32 of the Complaint.

33.     Weston denies the allegations contained in Paragraph 33 of the Complaint.

34.     Weston repeats, reasserts and incorporates by reference its responses to Paragraphs 1 through 33 above as if fully set forth herein.

35.     Weston states that statements made in Paragraph 35 of the Complaint are not averments or allegations, but are instead conclusions of law, and, therefore, no response is necessary.  To the extent the Court deems that Paragraph 35 necessitates a response from Weston, Weston denies the statements made in Paragraph 35 of the Complaint.

Weston states that Hartford's "WHEREFORE" section of the Complaint does not contain averments or allegations, and as such, no response is necessary.  To the extent the Court deems that the "WHEREFORE" section of the Complaint necessitates a response from Weston, Weston denies the statements made in the "WHEREFORE" section of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Hartford's Complaint fails to state claims upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Hartford lacks standing to claim that Weston breached the June 25, 2001 contract for construction between Weston and Jan Five Corporation d/b/a Alexandra Construction.

### THIRD AFFIRMATIVE DEFENSE

Hartford's claims are barred by the equitable doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Hartford's claims against the City are barred by the doctrine of estoppel.

4

### FIFTH AFFIRMATIVE DEFENSE

Hartford's claims are barred by its own breaches of the Takeover Agreement.

### SIXTH AFFIRMATIVE DEFENSE

Hartford's claims are barred because it has failed to sustain any damages from Weston's actions and any alleged damages incurred resulted from the acts or omissions of Hartford or third parties or entities over which the Weston had no control.

### SEVENTH AFFIRMATIVE DEFENSE

Hartford's Complaint is premature in that Hartford has not completed its obligations under the Takeover Agreement.

### EIGHTH AFFIRMATIVE DEFENSE

Hartford's claims are barred by virtue of its failure to satisfy conditions precedent.

### NINTH AFFIRMATIVE DEFENSE

Hartford's Complaint is barred by virtue of its failure to comply with the notice and claim provisions of the June 25, 2001 contract for construction between Weston and Jan Five Corporation d/b/a Alexandra Construction.

### TENTH AFFIRMATIVE DEFENSE

The Court lacks subject matter jurisdiction to hear Hartford's claims.

The City reserves the right to raise such additional affirmative defenses as the evidence developed in this matter may dictate.

### COUNTERCLAIMS

Weston makes counterclaims against Hartford in response to:  (a) Hartford's refusal to fulfill its obligations under a performance bond (the "Bond") naming Weston as beneficiary, whereby Hartford agreed to complete the June 25, 2001 contract for construction between Weston and Hartford's principal, Jan Five Corporation, d/b/a Alexandra Construction Alexandra

and (b) Hartford's subsequent breach of the Takeover Agreement between Weston and Hartford whereby Harford agreed to complete a portion of Alexandra's incomplete and defective work under the Contract.

Weston more fully sets out its claims as follows:

## PARTIES

1.    Plaintiff, Town of Weston ("Weston"), is organized pursuant to the laws of the Commonwealth of Massachusetts and has its main office at 378 Town House Road, Weston Massachusetts.  Additionally, the Town of Weston School Department has an office at 89 Wellesley Street, Weston Massachusetts.

2.    Hartford Fire Insurance Company ("Hartford") is a company affiliated with the Hartford Financial Services Inc., with headquarters in Hartford Connecticut, and is authorized to engage in the business of suretyship within the Commonwealth of Massachusetts.  Hartford's principal office for conducting business in Massachusetts is located at 150 Federal Street, Boston, Massachusetts.

## FACTS

3.    On or about June 25, 2001, Weston, acting by and through the Town of Weston School Committee, hired Jan Five Corporation, d/b/a Alexandra Construction ("Alexandra"), pursuant to a written contract for construction ("Contract") to perform certain work involving the construction of additions and renovations to the Country and Woodland Elementary Schools (the "Project") in the Town of Weston.

4.    Weston fully performed its obligations under the Contract.

5.    Throughout the course of the Project's construction, Alexandra failed (among other things) to:

6

(a)  Perform the work in accordance with the Contract's deadlines and time restrictions;

(b)  Perform the work in accordance with the Contract's Plans and Specifications;

(c)  Furnish sufficient and properly skilled manpower to the Project;

(d)  Properly coordinate the Project's trade contractors and properly sequence the work;

(e)  Prepare submittals in a timely manner;

(f)  Properly supervise the work of the Project's trade contractors and its own forces;

(g)  Employ competent supervisory staff;

(h)  Properly pay its subcontractors;

(i)  Properly store materials;

(j)  Comply with the Project's February 20, 2001 Order of Conditions;

(k)  Provide a safe Project work Site;

(l)  Comply with the Project's Health & Safety Plan;

(m)  Promptly and properly correct defective and/or non-conforming work;

(n)  Provide Work Plans when working in occupied areas;

(o)  Provide coordination drawings;

(p)  Keep the Project Site clean; and

(q)  Timely and properly perform approximately $700,000 in punch list items on the Project.

6.   Pursuant to the Contract, Alexandra was required to provide a performance surety bond with Weston as beneficiary.

7.   Hartford, as surety, issued a performance bond (the "Bond") to Alexandra that secures performance by Alexandra of all work required under the Contract. Pursuant to the Bond's terms, Harford agreed to complete all of Alexandra's obligations under the Contract in

7

the event "the Contract is violated or not complied with or abandoned by [Alexandra], or is terminated by [Weston] for cause."

8.    The Project was scheduled, in the Contract, to be substantially complete on August 1, 2003.  The Project was not certified as substantially complete until November 13, 2003.

9.    By July 1, 2004, approximately 229 days after certification of substantial completion, Alexander had failed to complete approximately $700,000 in punch-list items that had been outstanding on the Project.

10.   On or about July 1, 2004, Weston sent a letter, certified mail, return receipt requested, to Alexandra notifying it that Weston would terminate the Contract for cause in 14 days if Alexandra failed to complete its work under the Contract.  Weston provided a copy of the July 1, 2004 "14-day" letter to Hartford.

11.   By July 15, 2004, Alexander had failed to complete the outstanding punch-list work, and other incomplete and defective work on the Project.

12.   On or about July 15, 2004, Weston sent a second letter, certified mail, return receipt requested, to Alexandra notifying it that Weston was terminating the Contract due, among other things, to Alexandra's failure to complete it work on the Project.

13.   Also on or about July 15, 2004, Weston sent a letter, certified mail, return receipt requested, to Hartford, notifying it that Weston had terminated the Contract for cause, and demanded that Hartford fulfill its obligations under the Bond.

14.   Hartford refused to fulfill its obligations under the Bond.  Instead, Hartford insisted on entering into an agreement whereby Hartford would complete only portions of Alexandra's work under the Contract (the "Takeover Agreement").  In an effort to have at least

8

portions of the Project completed as expeditiously as possible, Weston agreed to negotiate the terms of the Takeover Agreement.

15.     During the negotiations, Weston received notice, in a letter dated September 21, 2004 from Carlisle SynTec Incorporated ("Carlisle"), the roofing system supplier to the Project, that Alexandra had failed to pay A.J. Desjardins Roofing Co. ("Desjardins") its roofing subcontractor for its work on the Project.  Carlisle informed Weston that Carlisle would revoke the warranty for the Project's roofing system unless and until Desjardins was paid.

16.     Weston notified Hartford in a letter dated October 6, 2004 of Carlisle's demands, enclosing Carlisle's September 21, 2004 letter.  Weston further demanded that Hartford, pursuant to its obligations under the Bond, pay Desjardins all amounts due under the subcontract.

17.     Hartford failed to respond to Weston's notification and demand.

18.     In a facsimile transmission dated October 12, 2004, Carlisle notified Weston that it would be suspending additional warranties on Carlisle's roofing system until Desjardins was paid.

19.     Weston notified Hartford in a letter also dated October 12, 2004 of Carlisle's latest actions, and again demanded that Hartford perform its obligations under the Bond and pay Desjardins amounts owed under the subcontract.

20.     Hartford failed to respond to Weston's second notification and demand.

21.     On or about November 18, 2004, Weston and Hartford executed the Takeover Agreement.  Pursuant to the Takeover Agreement, the parties agreed that Weston reserved all of its rights under the Contract and the Bond.  Weston and Hartford further agreed that the Bond will remain in full force and effect despite the execution of the Takeover Agreement.

22.    Further pursuant to the Takeover Agreement, Weston and Hartford agreed on a "Scope of Work," valued at $541,732.60 (approximately 69 % of the $787,159.60 in incomplete and defective work left on the Project by Alexandra), that Hartford would complete.

23.    Under the explicit terms of the Takeover Agreement, Hartford agreed to complete the interior portion of the Scope of Work by January 31, 2005, and the exterior portion of the Scope of Work by May 15, 2005.

24.    The Contract between Alexandra and Weston, which Hartford is obligated to complete pursuant to the Bond, included a "time is of the essence" provision.

25.    Pursuant to the Takeover Agreement, Hartford further agreed to provide Weston with a weekly written "look ahead" schedule for the upcoming week's work, describing the work it intended to perform, and containing a list of the trade contractors that will perform that week's work, along with the dates, times and locations within each School where such work would be performed. The "look ahead" schedules were critical to Weston as it needed to make sure that the scheduled work would not affect the safety and security of the students attending the schools in which the work was to be performed.

26.    Weston agreed to pay for the Project Architect's services related to one (1) final inspection and review of completed items of the Scope of Work. Hartford agreed to pay for any other inspection and review, other than the final inspection and review, requested by Hartford.

27.    The Takeover Agreement also obligated Hartford to take certain measures to guard the health and safety of the students and staff of the Country and Woodland Elementary Schools, and to guard from disrupting school operations while it performed work at the Schools. Hartford repeatedly failed to fulfill these obligations.

10

28.     Hartford, over Weston's objections, retained Alexandra to perform the Scope of Work under the Takeover Agreement.

29.     Despite Hartford's agreement to complete the interior portion of the Scope of Work by January 31, 2005, Alexandra failed to begin work until December 4, 2004, nearly three (3) weeks after the execution of the Takeover Agreement.  Moreover, Weston was informed that Alexandra would perform work only on weekends and over the holiday break.

30.     As of December 7, 2004, Hartford had failed to provide Weston with a "look ahead" schedule.  Weston notified Hartford that it had serious concerns whether Hartford would be able to complete the interior portion of the Scope of Work by the agreed upon date of January 31, 2005, given Alexandra's late start and its intention to only work weekends and holidays.  Weston also questioned Hartford's commitment to manage the work given the lack of "look ahead" schedules, and the fact that Hartford's representative for the Scope of Work failed to accompany Weston and Alexandra on the walk-through of the work.

31.     On December 9, 2004 Hartford again failed to provide Weston with a "look ahead" schedule for the upcoming week's work.  In a letter dated December 9, 2004, Weston informed Hartford of its failure, and reminded Hartford that the schedule was necessary to assure student safety and to prevent disruptions to teachers and students.

32.     By December 23, 2004, the only information Hartford had provided in the few "look ahead" schedules it bothered to provide were the dates that Alexandra intended to perform work.  Hartford failed to inform Weston of the time, the type and the location of work to be performed, and the trades that would perform the work as it was required to do by the Takeover Agreement.  As a result, Alexandra and its subcontractors began disrupting classroom materials and furniture when performing work.  Alexandra further failed to use proper air quality and

11

hygiene controls. Finally, Alexandra's subcontractors failed to bring adequate equipment to perform their work; in one instance, painters arrived to work without ladders.

33.     Weston, in a letter from counsel dated December 23, 2004, informed Hartford of Hartford's failures to comply with it obligations under the Takeover Agreement. Weston also expressed concern that Hartford would be unable to complete the work by the January 31, 2005 deadline.

34.     On January 10, 2005, Hartford announced that Alexandra would complete the interior portion of the Scope of Work at the Country Elementary School by January 13, 2004. Hartford insisted that Weston have the Project Architect conduct a preliminary inspection of the Country Elementary School.

35.     Despite Hartford's announcement, by January 13, 2005 significantly less than half of the agreed upon interior work at the Country Elementary School had been completed.

36.     Weston and Hartford met on January 13, 2005 to discuss the lack of progress on the Scope of Work, and Hartford's continued failure to comply with its several obligations under the Takeover Agreement. Prior to the meeting, Hartford had supplied Weston with a punch-list schedule for the outstanding interior Scope of Work.

37.     Hartford represented that it would improve its efforts and performance, and would complete the interior portion of the Scope of Work by January 31, 2005, as originally agreed to. Hartford also agreed to provide more detailed "look ahead" schedules in compliance with the terms of the Takeover Agreement. Finally, Hartford agreed to pay the cost of the Architect's review and inspection of the work performed to date.

38.     Despite Hartford's representations, the punch-list schedule supplied by Hartford did not include several items Hartford had originally agreed to complete in the Takeover

12

Agreement, but had not been completed.  Moreover, Hartford's representative for the Scope of Work was completely unfamiliar with the contents of the punch-list schedule.

39.    Following the meeting, Weston memorialized its concerns with Hartford's performance to date, as well as its doubts that Hartford would complete the interior work on time, in a letter dated January 13, 2005.

40.    By January 31, 2005, the date by which Hartford had agreed to complete the interior portion of the Scope of Work, Hartford had failed to complete even half of the work.

41.    In a letter dated February 15, 2005, Weston informed Hartford of its failure to complete the interior portion of the Scope of Work, and provided Hartford with the Project Architect's analysis of outstanding work.  Despite Hartford's failures to date, Weston extended the time for Hartford to complete the interior portion of the Scope of Work to February 26, 2005 – through the February school vacation.  Weston informed Hartford that if it failed to complete the interior portion of the Scope of Work by February 26, 2005, Weston would hold Hartford in breach of both the Takeover Agreement and the Bond.

42.    On February 15, 2005, Alexandra informed Weston that it would stop working until the Project Architect completed a full, but still preliminary, inspection and review of the work it had performed to date.  In a February 17, 2005 letter to Hartford, Weston demanded that Hartford explain how it would complete the interior portion of the Scope of Work by February 26, 2005 if Alexandra intended to stop work.

43.    On or about February 17, 2004, Hartford requested additional inspections and reviews by the Project Architect of the Scope of Work performed to date.  Hartford agreed that it would pay the costs of these inspections and reviews – as it was obligated to do pursuant to the terms of the Takeover Agreement.

44.    The Architect's inspections and reviews demonstrated that, by March 31, 2005, Hartford had completed only 46 percent of the interior portion of the agreed upon Scope of Work.

45.    By April 1, 2005, Hartford had still not paid Desjardins, and had made no effort to have the roofing system warranties reinstated.  On April 1, 2005, Weston sent a letter to Hartford reminding Hartford of Weston's prior demands and correspondence regarding the roofing system warranties.  Weston again demanded that Hartford comply with its obligations under the Bond to complete the Contract by providing Weston with full warranties for the roofing system.

46.    In a letter dated April 12, 2005, Weston notified Hartford that Hartford was in default of its obligations under the Takeover Agreement and the Bond, and that Weston was terminating the Takeover Agreement.  Weston cited as the reasons for terminating Hartford:  (a) Hartford's failure to complete more than one half of the agreed upon interior work; (b) Hartford's repeated (and continual) failure to provide "look ahead" schedules that complied with the requirements of the Takeover Agreement; (c) Hartford's failure to comply with proper air quality and hygiene practices, as required by the Takeover Agreement; and (d) Hartford's failure to take any action to have the roofing system warranties reinstated.

47.    As of April 15, 2005, Hartford had also failed to pay the Project Architect for the review and inspection the Hartford had requested and for which it had agreed to pay pursuant to the Takeover Agreement.

48.    In a letter dated April 15, 2005, Weston reminded Hartford of its obligation to pay for the Project Architect's services, and demanded that Hartford immediately pay the Architect's fees.

49.     Due to the substantial amount of the Scope of Work from the Takeover Agreement left to complete – and the additional work remaining under the original Contract for Construction – the Project Architect has not performed a final inspection and review of the work completed.

50.     To date, Hartford has continued to refuse to fulfill its obligations under the Bond and complete the remaining work under the Contract.

51.     To date, Hartford has refused to pay the Architect for its services in providing the inspections and reviews demanded by Hartford.

## COUNT I

### (Claim on Bond)

52.     Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 51 of its Counterclaim as though fully set forth herein.

53.     Alexandra violated and failed to comply with the Contract.

54.     As a result, Weston terminated Alexandra for cause.

55.     Hartford agreed, pursuant to the terms of the Bond, to take such action as is necessary to complete the Contract.

56.     Hartford has failed to take such action as is necessary to complete the Contract.

57.     All conditions precedent to the maintenance of this third-party claim have been performed.

58.     Weston has suffered, and continues to suffer, damages due to Hartford's failure to comply with the terms of the Bond.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count I of Weston's Third-Party Complaint, in an amount to be determined at trial, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

## COUNT II

### (Breach of Contract)

59.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 58 of its Counterclaim as though fully set forth herein.

60.    Hartford was required by the Takeover Agreement to complete the interior portion of the Scope of Work by January 31, 2005.

61.    Hartford failed to complete the interior portion of the Scope of Work by January 31, 2005, and as of March 31, 2005, had completed only 46 percent of the interior portion of the Scope of Work.

62.    Hartford was required by the Takeover Agreement to pay for any and all inspections and reviews by the Project Architect of the Scope of Work it requested prior to the final inspection and review. Hartford requested several inspections and reviews of the Scope of Work.

63.    Harford has failed and refused to pay for the inspections and reviews by the Project Architect it requested.

64.    Hartford was required by the Takeover Agreement to exercise proper air quality and hygiene practices while performing the Scope of Work.

65.    Hartford failed and refused to exercise proper air quality and hygiene practices while performing the Scope of Work.

16

66.     Hartford's failures and refusals to comply with the Takeover Agreement constitute material breaches of the Takeover Agreement.

67.     Weston has suffered, and continues to suffer, damages due to Hartford's breaches of the Takeover Agreement.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count II of Weston's Counterclaim, in an amount to be determined at trial, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

## COUNT III

### (Breach of Covenant of Good Faith and Fair Dealing)

68.     Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 67 of its Counterclaim as though fully set forth herein.

69.     The Takeover Agreement contains an implied covenant of good faith and fair dealing.

70.     Hartford's actions constitute a breach of that covenant.

71.     Weston has suffered, and continues to suffer, damages due to Hartford's breach.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count III of Weston's Counterclaim, in an amount to be determined at trial, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

17

## COUNT IV

### (Violation of M. G. L. c. 93A)

72.     Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 71 of its Counterclaim as though fully set forth herein.

73.     The conduct at issue occurred primarily and substantially in the Commonwealth of Massachusetts.

74.     Hartford is engaged in trade or commerce within the meaning of M.G.L. c. 93A.

75.     Hartford represented to Weston in the Takeover Agreement that it would pay the costs for all reviews and inspections by the Project Architect that it requested prior to the final inspection.

76.     Upon requesting several inspections and reviews by the Project Architect, Hartford specifically represented to Weston that it would pay for the several requested inspections.

77.     When Hartford made the representations that it would pay the costs for the inspections and reviews it requested, it had no intention of paying such costs.

78.     Hartford has refused to pay the costs of the Architect's reviews and inspections it has requested.

79.     Weston has suffered and continues to suffer substantial damages as direct and proximate result of Hartford's actions.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count IV of Weston's Counterclaim, in an amount to be determined at trial, including treble damages and attorneys' fees, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

## COUNT V

### (Violation of M.G.L. c. 176D and M.G.L. c. 93A)

80.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 77 of its Counterclaim as though fully set forth herein.

81.    At all relevant times, Hartford was engaged in the business of providing surety bonds within the Commonwealth of Massachusetts.

82.    At all relevant times, Hartford was an insurer for purposes of M.G.L. c. 176D.

83.    Hartford's failure to acknowledge and act reasonably promptly upon Weston informing Hartford of its claim arising from the roofing system warranty issue constitutes unfair claim settlement practices.

84.    Hartford failed to conduct a reasonable investigation of Weston's claim that Hartford was responsible under the Bond to act to have the roofing system warranties reinstated.

85.    Hartford's failure constitutes an unfair claim settlement practice.

86.    Hartford's refusal to perform substantial portions of the Contract in settlement of Weston's claims, when liability became reasonably clear, constitutes an unfair claim settlement practice

87.    Weston has suffered and continues to suffer substantial damages as direct and proximate result of Hartford's unfair settlement practices.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count IV of Weston's Counterclaim, in an amount to be determined at trial, including treble damages and attorneys' fees, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

19

**COUNT VI**

<u>(Breach of Contract)</u>

88.     Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 87 of its Counterclaim as though fully set forth herein.

89.     Alexandra, Hartford's principal, materially breached the terms of the Construction Contract.

90.     To the extent Hartford asserts rights and seeks relief under the Construction Contract, it is liable to Weston for Alexandra's breach.

91.     Weston has suffered and continues to suffer substantial damages as direct and proximate result of Hartford's unfair settlement practices.

92.     All conditions precedent to maintain this claim have been satisfied.

WHEREFORE, Weston respectfully requests that the Court enter judgment in Weston's favor and against Hartford in Count IV of Weston's Counterclaim, in an amount to be determined at trial, including treble damages and attorneys' fees, plus interest and costs as may be allowed, and such further relief as the Court deems just and proper.

**AS AND FOR THE TOWN OF WESTON'S COUNTERCLAIMS AGAINST JAN FIVE CORPORATION D/B/A ALEXANDRA CONSTRUCTION**

**Parties**

1.     The Town of Weston ("Weston") is organized pursuant to the laws of the Commonwealth of Massachusetts and has its main office at 378 Town House Road, Weston, MA. 02493.  Additionally, the Town of Weston School Department has an office at 89 Wellesley Street, Weston, MA. 02493.

2.     The defendant Jan Five Corporation d/b/a Alexandra Construction ("Alexandra") is a Massachusetts Corporation with a usual place of business at 109 Oak Street, Newton, MA. 02464.

20

**Facts**

3.      On or about June 25, 2001, Weston, acting by and through the Town of Weston School Committee, hired Alexandra pursuant to a written contract ("Contract") to perform certain work involving the construction of additions and renovations to the Country and Woodland Schools (the "Project").

4.      Weston paid Alexandra over $28,677,000 in accordance with its Contract obligations.

5.      Weston fully performed its obligations under the Contract.

6.      Throughout the course of the Project's construction, Alexandra failed (among other things) to:

      a.      Perform the work in accordance with the Contract's deadlines and time restrictions;

      b.      Perform the work in accordance with the Contract's Plans and Specifications;

      c.      Furnish sufficient and properly skilled manpower to the Project;

      d.      Properly coordinate the Project's trade contractors and properly sequence the work;

      e.      Prepare submittals in a timely manner;

      f.      Properly supervise the work of the Project's trade contractors and its own forces;

      g.      Employ competent supervisory staff;

      h.      Properly pay its subcontractors;

      i.      Properly store materials;

      j.      Comply with the Project's February 20,2001 Order of Conditions;

      k.      Provide a safe Project work Site;

      l.      Comply with the Project's Health & Safety Plan;

m.    Promptly and properly correct defective and/or non-conforming work;

n.    Provide Work Plans when working in occupied areas;

o.    Provide coordination drawings;

p.    Keep the Project Site clean; and

q.    Correct defective and/or nonconforming work.

7.    Alexandra also failed to timely and properly perform numerous of the Project's Punch List items.

8.    As a result of Alexandra's poor performance, Alexandra was terminated in July 2004.

## COUNT I
## (Breach of Contract)

9.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 8 of this Counterclaim as though fully set forth herein.

10.    Alexandra's conduct as described herein and elsewhere in the Project's records is a breach of the Contract's material terms.

11.    As a result of Alexandra's Breach of Contract, Weston has been damaged, in an amount to be determined at trial which damages include, but are not limited to:

a.    Additional bussing costs;

b.    Payment to Regis College for Weston's pre-school program;

c.    Additional personnel costs for security and administration;

d.    Additional custodial and outside vendor costs;

e.    Additional lighting equipment costs for security;

f.    Packing, storage and escalated moving costs;

g.    Lost rental income for use of the Project's gymnasiums;

22

    h.   Unnecessary consulting fees, legal fees and administrative costs;

    i.    Children were not able to eat hot meals because the cafeteria was not operational; and

    j.   The schools were not able to offer the full benefit of certain educational programs.

## COUNT II
## (Breach of Contract)

12.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 11 as though fully set forth herein.

13.    The Contract provided that time was of the essence.

14.    Pursuant to the Contract, Alexandra agreed to pay Weston the sum of $1,000 per day as liquidated damages for his [sic] failure to Substantially Complete the Work or designated portions or phases thereof by the date or dates stipulated in the Contract.

15.    Alexandra did not Substantially Complete the Project in accordance with the Contract's deadlines.

16.    Alexandra's failure to timely achieve Substantial Completion of the Work is a breach of a material obligation of the Contract.

17.    As a result of Alexandra's Breach of Contract, Weston has been damaged and is entitled to liquidated damages.

## COUNT III
## (Breach of Implied Covenant of Good Faith and Fair Dealing, Mass. G. L. c. 93A)

18.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 17 as though fully set forth herein.

19.    Alexandra is engaged in business in accordance with Mass. G. L. c. 93A.

20.    Implied in the Contract was an obligation on part of Alexandra to act in good faith and to deal with Weston in a fair and equitable manner.

21.    Alexandra failed to act in good faith and did not treat Weston fairly and equitably. Alexandra breached its implied covenant of good faith and fair dealing by (among other things):

    a.  Billing Weston for work it did not perform;

    b.  Billing Weston for extra work at a premium when in fact the work Alexandra was performing was already within the scope of Alexandra's base Contract work;

    c.  Performing Time and Materials work inefficiently; and

    d.  Claiming that it had completed certain Punch List work, when in fact, such work was not performed, or was performed improperly.

22.    As a result of Alexandra's Breach of the Contract's implied covenant of good faith and fair dealing, Weston has been damaged in an amount to be determined at trial.

## COUNT IV
## (Breach of Warranty, Mass. G. L. c. 93A)

23.    Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 22 as though fully set forth herein.

24.    Alexandra warranted both expressly and implicitly that (among other things), its work would be of good quality, free from faults and defects and in conformance with the Project's Contract Documents.

25.    Alexandra's work was of poor quality, defective and did not conform to the Project's Contract Documents.

26.    Alexandra's defective work included, but is not limited to:

24

    a.   Boiler equipment failure;

    b.   Malfunctioning automatic temperature controls;

    c.   Fire notification system failures;

    d.   Leaky roofs and skylights;

    e.   Lighting equipment failure; and

    f.   Improper flashing and other building envelope issues.

27.     As a result of Alexandra's Breach of Warranty, Weston has been damaged, in an amount to be determined at trial. Such damages include, but are not limited to the costs that Weston has paid and will continue to pay in the future to vendors to correct the deficiencies referenced above and described elsewhere in the Project's records.

### COUNT V
### (Fraud, Deceit, Misrepresentation, Mass. G. L. c. 93A)

28.     Weston repeats, reiterates and realleges each and every allegation contained in paragraph nos. 1 through 27 as though fully set forth herein.

29.     In meetings with Weston School Officials, Building Committee Members and Weston's consultants, Alexandra misrepresented to Weston that Alexandra had sufficient resources (i.e.: manpower, labor, equipment and materials, etc.) to complete the relevant portions of the Project before the start of the applicable school year.

30.     Alexandra's misrepresentations were of material facts, were knowingly, recklessly, intentionally or negligently made with constructive and/or actual knowledge of their falsity with the intent that Weston would rely upon them.

31.     Weston relied upon Alexandra's misrepresentations to its detriment by (among other things), refraining from exercising certain of its remedies under the Contract and Massachusetts' law.

32.     As a result of Alexandra's Fraud, Deceit and/or Misrepresentations, Weston has been damaged, in an amount to be determined at trial.


**WHEREFORE,** the Town of Weston demands a trial by jury, and judgment:

(a)     Against Hartford on Weston's Counterclaim;

(b)     Against Alexandra on Weston's Counterclaim;

(c)     Awarding Weston treble damages and attorneys fees;

(d)     Awarding Weston the costs and disbursements of this action; and

(e)     For such other, further and different relief as this Court deems just and proper.

## JURY DEMAND

The Town of Weston hereby demands a trial by jury on Hartford's claims, and Weston's counterclaims.

THE TOWN OF WESTON
By its attorneys,


/ s / John P. Martin
Joseph A. Barra, BBO # 632534
jbarra@ghlaw.com
John P. Martin, BBO # 637667
jmartin@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

Dated: March 28, 2006

26

UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TOWN OF WESTON, )<br>)<br>Defendant. )<br>) | C. A. No. 05-CV-11166-EFH |

## EXHIBIT B

## TO

## DEFENDANT TOWN OF WESTON'S MOTION TO JOIN JAN FIVE CORP. D/B/A ALEXANDRA CONSTRUCTION

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS                    03/21/01
The Design Partnership of Cambridge, Inc., Project 2003

## SECTION 00500

## OWNER - CONTRACTOR AGREEMENT

THIS AGREEMENT, made this  25th  day of  June  ,  2001, by and between the TOWN OF
WESTON, MA. as represented by the WESTON SCHOOL COMMITTEE, herein called the "Owner"
and

_____Jan Five Corporation d/b/a Alexandra Construction_____

_____20 Ossipee Road, Newton, Massachusetts   02464_____

a corporation organized and existing under the laws of _____Massachusetts_____

~~a partnership consisting of~~ _____

~~an individual doing business as~~ _____

hereinafter called the "Contractor".

WITNESSETH, that the Owner and Contractor, for the consideration hereinafter named, agree as
follows:

Article 1.  SCOPE OF THE WORK:   The Contractor shall furnish all of the materials and perform all
of the work shown and described in the Contract Documents titled ADDITIONS AND RENOVATIONS
TO THE COUNTRY AND WOODLAND SCHOOLS, prepared by the Design Partnership of
Cambridge, Inc., 500 Rutherford Avenue, Charlestown, MA  02129, and shall do everything required
by this Agreement and the Contract Documents.

Article 2.  TIME OF COMPLETION:  The Contractor hereby agrees to commence work within five
calendar days (Saturdays, Sundays and legal holidays excluded) from receipt of a written "Notice to
Proceed" from Owner and to **Substantially Complete the entire Work by August 1, 2003** and no later.

The parties acknowledge that time is of the essence in the performance of this Contract.

Article 3.  THE CONTRACT PRICE:  The Owner shall pay the Contractor for the performance of the
Work, subject to additions and deductions by Change Order as provided in the Conditions of the
Contract, in current funds, the sum of:

_____TWENTY-EIGHT MILLION SIX HUNDRED SEVENTY-SEVEN THOUSAND ---------

_____------------------------------------- DOLLARS  ($___28,677,000.00).

The Contract Price is subdivided as follows:

Item 1:  The Work of the General Contractor, being all work other than that covered by Item 2.

_____TWENTY-ONE MILLION ONE HUNDRED FIFTY-NINE THOUSAND AND

_____FIFTY-FIVE ----------------------- DOLLARS  ($___21,159,055.00).

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS                03/21/01
The Design Partnership of Cambridge, Inc., Project 2003

Item 2: Filed Sub-Contractors as follows:

| Filed Sub-Bid Work | Subcontractor | Amount |
|---|---|---|
| Masonry Work | D'Agostino Associates, Inc. | $ 1,414,000.00 |
| Miscellaneous Metals | Larkin Iron & Fence, Inc. | $ 477,800.00 |
| Waterproofing, Dampproofing And Caulking | DeBrino Caulking Associates, Inc. | $ 294,785.00 |
| Roofing and Flashing | A.J. Desjardins Roofing Company, Inc. | $ 1,100,000.00 |
| Metal Windows | Chandler Architectural Products, inc. | $ 544,400.00 |
| Glass and Glazing | Prudential Door & Window Co., Inc. | $ 148,710.00 |
| Ceramic Tile | RLM Flooring, Inc. | $ 265,900.00 |
| Acoustical Tile | The Cheviot Corporation | $ 345,900.00 |
| Resilient Flooring | RLM Flooring, Inc. | $ 141,000.00 |
| Painting | W.D.Fowler, Inc. | $ 214,700.00 |
| Elevators | Atlas Elevator Services, Inc. | $ 72,750.00 |
| Plumbing | Included in "Item One" work | $ 0.00 |
| HVAC | Included in "Item One" work | $ 0.00 |
| Electrical | Aldon Electric, Inc. | $ 2,498,000.00 |
| | Total of Item 2: | $ 7,517,945.00 |

Article 4. PAYMENTS: The Owner agrees to pay the Contractor in current funds for the performance of the Contract as provided in the CONDITIONS OF THE CONTRACT and by Massachusetts statutes.

Article 5. THE CONTRACT: The following together with this Agreement, form the CONTRACT:

The Contract Documents as listed in the Table of Contents of the Project Manual.
The Specifications as listed in the Table of Contents of the Project Manual.
The Contract Drawings.
Addenda No. One through Four inclusive.
Modifications issued after the execution of the Contract.

Article 6. REQUIRED TERMS: This Contract shall be considered to include all provisions required to be included in it by the Massachusetts General Laws, Chapter 30 and 149, as amended, and any other applicable laws. as though such terms were set forth herein.

Article 7. DAMAGES: The Contractor agrees to pay the Owner the sum of $1,000 per day as liquidated damages for his failure to Substantially Complete the Work or designated portions or phases thereof by the date or dates stipulated herein. Such sum shall be payable for each day after the date of Substantial Completion stipulated herein that the Work is not substantially complete. This provision is in addition to and not in substitution of any other rights or claims the Owner may have for the

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS          03/21/01
The Design Partnership of Cambridge, Inc., Project 2003

Contractor's failure to achieve Substantial Completion by the date or dates stipulated in the Contract Documents.

Article 8.   ALTERNATES:  The following ALTERNATES have been accepted and the Contract Sum stated in Article 3 of this Agreement includes and has been adjusted to reflect the total cost of each accepted alternate.

| Alternate Number | Indicate Accepted or Rejected | Original Bid Value of Alternate |
|---|---|---|
| Alternate No. 1 | Accepted | $96,000.00 |
| Alternate No. 2 | Accepted | $43,000.00 |
| Alternate No. 3 | Rejected | $52,000.00 |

Article 9.   TERMINATION:  The Owner shall have the right to terminate the contract, without cause, upon ten (10) days' written notice to the Contractor.  In the event that the Contract is terminated pursuant to this paragraph, the Contractor shall be reimbursed in accordance with the Contract Documents for all Work performed up to the termination date, and for all materials or equipment not incorporated in the Work, but delivered and suitably stored at the site.

IN WITNESS WHEREOF, the parties hereto on the day and year first above written have executed this Agreement in five (3) counterparts, each of which shall, without proof of accounting for the other counterpart, be deemed an original thereof.

*SEAL*                              TOWN OF WESTON, MASSACHUSETTS
                                    SCHOOL COMMITTEE

COMMONWEALTH OF MASSACHUSETTS

_____ *[County]* _____, _____

Then personally appeared the above _____

_____

of the aforesaid _____ and acknowledged the foregoing

instrument to be the free act and deed of _____ before me.

My Commission expires: _____

OWNER - CONTRACTOR AGREEMENT
00500 - 3

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS                03/21/01
The Design Partnership of Cambridge, Inc., Project 2003

Notary Public

*SEAL*                                CONTRACTOR

                                      Jan Five Corporation d/b/a Alexandra Construction

                                      20 Ossipee Road

                                      Newton, Massachusetts   02464
                                      Address

                                      By  _____
                                           Gregory T. Clark

                                      Title   Treasurer

Note: If the Contractor is a corporation, attach Certificate of Vote by Board of Directors stating that the officer signing the contract has the authority of the Corporation to sign contracts binding on the Corporation.

**(This Notary Section for Contractor)**
**COMMONWEALTH OF MASSACHUSETTS**

Middlesex _____ (County) June 21 _____, 2001

Then personally appeared the above  Gregory  T. Clark

of the aforesaid  Jan Five Corporation  and acknowledged the foregoing

instrument to be the free act and deed of Gregory T. Clark / Jan Five Corp before me.

Patricia Hannan _____  My Commission expires: May 3, 2002
Notary Public

**AWARDING AUTHORITY APPROVALS**

I certify that an appropriation in the amount of this contract is available therefor, and that the Weston School Committee has been authorized to execute the contract and approve all requisitions and change orders:

_____           6/26/01 _____
Awarding Authority Accountant               Date

Approved as to form of agreement:
KOPELMAN AND PAIGE, P.C.
by _____           June 25, 2001 _____
Awarding Authority Legal Counsel            Date

**END OF OWNER – CONTRACTOR AGREEMENT**

OWNER – CONTRACTOR AGREEMENT
00500 - 4

UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>    v.<br><br>TOWN OF WESTON,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C. A. No. 05-CV-11166-EFH |

**EXHIBIT C**

**TO**

**DEFENDANT TOWN OF WESTON'S MOTION TO JOIN JAN FIVE CORP. D/B/A ALEXANDRA CONSTRUCTION**

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS          03/21/01
The Design Partnership of Cambridge, Inc., Project No. 2003

SECTION 00615

PERFORMANCE BOND
Bond No.  08BCSAV7773

KNOW ALL MEN BY THESE PRESENTS that Jan Five Corporation d/b/a

Alexandra Construction, 20 Ossipee Road, Newton, MA 02164

as Principal, and   Hartford Fire Insurance Company

150 Federal Street, Boston, MA  02110-1753

as Surety, are held and firmly bound unto the Awarding Authority, in the sum of Twenty-Eight

Million Six Hundred Seventy-Seven Thousand and --00/100 Dollars ($28,677,000.00)
lawful money of the United States of America to be paid to the Awarding Authority for which payment,
well and truly to be made, we bind ourselves, our respective heirs, executors, administrators, successors
and assigns, jointly and severally, firmly by these presents.

WHEREAS the said Principal has made a contract with the Awarding Authority bearing date of

June 25          2001, for the construction of Country and Woodland Schools,

Weston, MA.  Project No. 2003                                    (Project),

Now the condition of this obligation is such that if the Principal shall well and truly keep and perform all
the undertakings, covenants, agreements, terms and conditions of said contract and any extensions
thereof that may be granted by the Awarding Authority, with or without notice to the surety, and during
the life of any guaranty required under the contract, and shall also well and truly keep and perform all
the undertakings, covenants, agreements, terms, and conditions of any and all duly authorized
modifications, alterations, changes or additions to said contract that may hereafter be made, notice to the
surety of such modifications, alterations, changes or additions being hereby waived, then this obligation
shall become null and void; otherwise it shall remain in full force and virtue.

In the event that the contract is violated or not complied with or abandoned by the Contractor, or is
terminated by the Awarding Authority for cause, said surety hereby further agrees that said surety shall,
if requested in writing by the Awarding Authority, take such action as is necessary to complete said
contract.

In witness whereof, we hereunto set our hands and seals this 25th day of ___June___ , 2001.
Jan Five Corporation d/b/a Alexandra Construction
By Principal: _____          [Seal]
Hartford Fire Insurance Company
By Surety:    John J. Curtin, Jr., Attorney-in-Fact
Address:      150 Federal Street, Boston, MA. 02110-1753

Surety Agent: Curtin Int'l Ins. & Bonding Agcy., Inc[Seal]

Address:      81 Hartwell Avenue, Lexington, MA.  02421-3127

Telephone:    (781)863-0044

PERFORMANCE BOND
00615-1

COUNTRY AND WOODLAND SCHOOLS, WESTON, MASSACHUSETTS          03/21/01
The Design Partnership of Cambridge, Inc., Project No. 2003

### CERTIFICATE AS TO CORPORATE PRINCIPAL
### (PERFORMANCE BOND)

I, _Teresa Clark_____, certify that I am the ___Clerk_____

of the corporation named as principal in the within bond; that _Gregory Clark____

who signed said Bond on behalf of the Principal was then ___President_____

of said corporation and I know his signature and his signature thereon is genuine; and that said Bond
was duly signed, sealed and attested for and on behalf of said corporation by authority of its governing
body.

Signed: _Teresa M. Clark_____          [Seal]

Date: __June 25_____, 20 01

Rate of Premium on this bond is $_____ per thousand.

Total Amount of Premium Charge is $_____

### END OF PERFORMANCE BOND

PERFORMANCE BOND
00615-2

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C. A. No. 05-CV-11166-EFH |
| TOWN OF WESTON, | ) ) ) | |
| Defendant. | ) ) ) | |

## **EXHIBIT D**

## **TO**

## **DEFENDANT TOWN OF WESTON'S MOTION TO JOIN JAN FIVE CORP. D/B/A ALEXANDRA CONSTRUCTION**

# WESTON/HARTFORD

# TAKEOVER
# AGREEMENT

## NOVEMBER 18, 2004

## TAKEOVER AGREEMENT

This Takeover Agreement is made and entered into this 18th day of November, 2004 by and between the Town of Weston, as represented by the Weston School Committee (hereinafter "Weston"), and Hartford Fire Insurance Company (hereinafter "Hartford" or "Surety") (collectively, "the Parties").

### RECITALS

WHEREAS, on or about June 25, 2001, Jan Five Corporation d/b/a Alexandra Construction ("Alexandra" or "Principal") entered into a contract with Weston for the construction of a project known as Additions and Renovations to the Country and Woodland Schools in Weston, Massachusetts ("Project"). The original contract, including all contract documents forming a part of the original contract, and all change orders, modifications, amendments and addenda shall be referred to herein as the "Construction Contract"; and

WHEREAS, under the terms of the Construction Contract, Alexandra and Hartford made, executed and delivered to Weston a Performance Bond No. 08BCSAV7773 dated June 25, 2001 ("Performance Bond") as well as a Labor and Material Payment Bond No. 08BCSAV7773 dated June 25, 2001 ("Payment Bond") (collectively, the "Bonds"); and

WHEREAS, the penal sum of the Performance Bond is unencumbered and the full penal sum of $27,677,000.00 (twenty-seven million six hundred thousand seventy-seven and 00/100 dollars) is available, as of the date of this Takeover Agreement; and

WHEREAS, the penal sum of the Payment Bond is unencumbered and the full penal sum of $27,677,000.00 (twenty-seven million six hundred thousand seventy-seven and 00/100 dollars) is available, as of the date of this Takeover Agreement; and

WHEREAS, Weston terminated the Construction Contract, effective July 15, 2004; and

1

WHEREAS, Alexandra disputes the termination of the Construction Contract; and

WHEREAS, Weston has demanded that the Surety complete or procure the completion of the Construction Contract under the terms of the Performance Bond; and

WHEREAS, certain disputes exist between Alexandra and Weston, but the Surety nonetheless wishes to arrange for work to be performed under the Construction Contract. The Parties disagree as to the nature and extent of the balance of work to be performed in order to complete the Project. Nevertheless, the Surety has agreed to have the work described below performed in order to preserve continuity of performance while reserving each others respective rights concerning such disputes; and

WHEREAS, the Surety, with a complete reservation of all rights and defenses available to both it and Alexandra, including the right to contest the termination of Alexandra, has agreed to perform the work described below in accordance with the requirements of the Construction Contract and pursuant to the terms of the Performance Bond and the terms of this Takeover Agreement.

<u>AGREEMENTS</u>

NOW, THEREFORE, in consideration of the agreements and undertakings set forth in this Takeover Agreement, and for other good and valuable consideration, the sufficiency and adequacy therefore being hereby acknowledged, the Parties agree as follows:

1.      Consistent with its obligations under the Performance Bond, the Surety agrees to take such action as is necessary to perform the following work described below through its principal, Alexandra, ("Completion Contractor (1) all items on the June 24, 2004 Monetized Punchlist, as modified, the April 22, 2004 MEP/FP Punchlist, as modified, the April 22, 2004 Landscape Punchlist, as modified and the April 22, 2004 Kitchen Equipment Punchlist, as modified (collectively, the "Punchlists") attached hereto as **Exhibit A**, and (2) all work described

2

in the following four lists attached hereto as **Exhibit B**: "Incomplete Work not in the Punch list as of 6/24/2004"; list of alleged "Warranty Claims and Latent Defects (dated 11/8/04)" (to the extent any such warranties are still in effect); Landscape Items described in the June 21, 2004 Memorandum to Bill Barnes from Ian Ramey; and the October 24, 2003 Field Report from David M. Conway (revised 11/10/2004). All items in Exhibits A and Exhibit B are hereinafter collectively referred to as the "Scope of Work". Weston acknowledges that the Surety, by its execution of this Takeover Agreement, and by arranging for the performance of the Scope of Work herein, is acting in its capacity as the surety for the Principal, and not as a completing contractor. Weston further acknowledges that the Surety's execution of this Takeover Agreement, and arrangement for the Scope of Work herein, is not intended to be any form of admission by the Surety that the items listed in the Scope of Work are properly part of the Construction Contract.

2.      Notwithstanding the provisions of Paragraph 1, the Architect has determined that certain items set forth in the Punchlists have already been completed by Alexandra. A list of such items entitled "Elementary School Projects Completed Punch list as of 09/30/04" is contained herein in Exhibit C. The Architect has further determined that certain other items should be removed from the Punch Lists. A list of such items entitled "Country and Woodland Elementary Schools Punch list Changes (as of November 4, 2004) is also contained in <u>Exhibit C</u>. All items in Exhibit C are hereby removed from the Scope of Work.

3.      Notwithstanding the provisions of Paragraph 1, Weston and the Surety each acknowledge that there are items set forth in the Scope of Work that Alexandra disputes and claims to be outside the scope of work required to be performed under the Construction Contract (the "Disputed Items"). Such Disputed Items are collectively defined and set forth in <u>Exhibit D</u>,

3

which is attached hereto. The items described in Exhibit D are divided into two categories. The first category represents items that the Surety will not perform. These items are shaded. With respect to the remaining items in Exhibit D that are not shaded, the Surety agrees that it will perform these items, but reserves its right to later claim that such items are not part of the Construction Contract and/or are not valued properly.    A schedule describing the value of the items that the Surety disputes, does not dispute, and/or rejects is annexed hereto as **Exhibit E** and is entitled "Punch List Scope Analysis". To the extent that the Surety does not complete the full Scope of Work (contained in Exhibits A and B) or any of the Disputed Items, Weston reserves its rights to retain from the Construction Contract Balances, the value of any work not so completed including the reasonable costs associated with Weston's completion of these items. The right to retain such funds is in addition to any other rights that Weston may have including, but not limited to Weston's right to bring suit against the Surety for its alleged failure to perform any work that Weston contends is the Surety's responsibility.    To the extent Weston seeks to require the Surety to correct newly arisen warranty and/or latent defect issues, the Parties agree to follow the relevant terms of the Construction Contract. The Surety reserves any right it may have to refuse to perform any such work.    To the extent the Surety elects to complete Disputed Items, the Surety reserves the right to seek additional compensation for completing the Disputed Items.    Weston and the Surety each acknowledge that the Surety will not be required to perform any new change order work (other than warranty and/or latent defect work) as provided above.

4.    Prior to the commencement of the Work under the Construction Contract, the Surety shall provide evidence to Weston that the Completion Contractor has met the required insurance obligations under the Construction Contract.

4

5.      Weston represents to the Surety and agrees that, as of the date of this Takeover Agreement:

(a)      The authorized amount of the Construction Contract, including all approved change orders is the sum of $29,587,867.00 (twenty-nine million five hundred eighty-seven thousand eight hundred sixty-seven and 00/100 dollars);

(b)      Weston has made payments to Alexandra totaling the sum of $28,710,848.40 (twenty-eight million seven hundred ten thousand eight hundred forty-eight and 40/100 dollars) on the Construction Contract;

(c)      The "Construction Contract Balance" shall be hereinafter defined as the sum of $877,018.60 (eight hundred seventy-seven thousand eighteen and 60/100 dollars), which is the balance of funds remaining in the Construction Contract, notwithstanding Weston's claims.

(d)      In accordance with the Mass. Gen. L. c. 30, § 39K and the provisions of the Construction Contract, including but not limited to Article 9 and Paragraph 14.2.1 of the Construction Contract, Weston shall pay to the Surety the Construction Contract Balance, less (1) a retention based on Weston's estimate of the fair value of its claims against Alexandra, the Surety or the Completion Contractor, including but not limited to liquidated damages, (2) the fair and reasonable estimated cost of completing the incomplete and unsatisfactory items of work that Weston may opt to complete by other means, (3) a retention for direct payments to subcontractors based on demands for same in accordance

5

with the provisions of Mass. Gen. L. c. 30, 39F (hereinafter the "Construction Contract Balance Due").

6.      Weston expressly reserves all rights and claims that may be available under contract, at law, or in equity, including under the terms and provisions of the Construction Contract and the Bonds.  Weston expressly reserves the right to hold and deduct from the Construction Contract Balance and/or the Construction Contract Balance Due its claims under contract, at law or in equity, including, but not limited to the following claims:

(a)      Until satisfactorily completed, the monetized value of any remaining incomplete and/or defective items on the Project (see Exhibits A and B, attached hereto);

(b)      at least $151,000 for liquidated damages;

(c)      Until satisfactorily completed, at least $36,064.36 for damages incurred in relation to defective work;

(d)      at least $42,066.19 for damages incurred to date in relation to direct payments made by Weston to subcontractors, and/or direct payments placed into joint interest-bearing accounts pursuant to subcontractor direct payment demands, under Mass. Gen. L. c. 30, § 39F;

(e)      the value of any other, or future direct payments to be made by Weston under Mass. Gen. L. c. 30, § 39F including, but not limited to payments that Weston may make in response to the October 26, 2004 Direct Payment Demand of Chandler in the amount of $32,488;

(f)    the value of any and all costs associated with additional services provided by the Architect, which the Contractor is obligated to bear pursuant to the provisions of the Construction Contract, including but not limited to Paragraphs 12.2.1, 13.5.3 and 14.2.1;

(g)    the value of any and all costs associated with services provided by the Project manager, resulting from breach of contract by Alexandra;

(h)    the value of any and all costs associated with and/or resulting from Alexandra's breach of contract, including but not limited to:

    (i)    additional busing costs;

    (ii)    payment to Regis College for housing Weston's pre-school program;

    (iii)    costs associated with additional personnel for security and administration;

    (iv)    costs associated with additional custodial staff;

    (v)    costs associated with outside vendors;

    (vi)    costs associated with additional lighting equipment for security;

    (vii)    escalated costs associated with packing, storage and moving;

    (viii)    lost rental income for use of the Project's gymnasiums;

7

(ix)  costs associated with consulting fees, legal fees and administrative costs;

(x)  costs associated with the loss of certain educational programs;

(xi)  the value of any and all costs associated with and/or resulting from Alexandra's breach of warranty;

7.  Payment shall be made by Weston to the Surety in accordance with the provisions of the Construction Contract and Mass. Gen. L. c. 30, § 39K. Each of the Surety's requisitions shall be in accordance with the Construction Contract and will also contain a marked up copy of Exhibits A & B identifying the work for which the Surety is seeking payment.

8.  The Surety expressly reserves all of the Surety's and/or Alexandra's rights and claims that may be available under contract, at law, or in equity, including under the terms and provisions of the Construction Contract and the Bonds including, but not limited to the following claims:

(a)  Outstanding Change Proposals

(b)  Overtime/Acceleration Claim

(c)  Aldon O.T. Claim

(d)  Prudential Glass Claim

(e)  Beauce Atlas Claim

(f)  A.J. Desjardins Claim

(g)  Winter & General Conditions Claim

Weston shall require that the Architect review and make a determination regarding the "Outstanding Change Proposals in accordance with the standards and requirements of the

Construction Contract Documents. Weston shall submit Alexandra's Outstanding Change Proposals to the Architect immediately upon execution of this Takeover Agreement.

9.      Except as noted herein, nothing in this Takeover Agreement should be construed as limiting the obligations and/or rights of the Parties under the Construction Contract and/or under the Performance Bond. The Parties reserve their rights to make future claims under the Construction Contract and the Bonds.

10.     The Surety shall complete the work required by the Construction Contract and specifically all items in the Scope of Work by: (1) January 31, 2005 for interior items; and (2) May 15, 2005 for exterior items.

11.     Unless an exception to this condition is provided for by Weston in writing, completion of the work required by the Construction Contract shall not interfere with the operations of the schools and shall take place before 6:00 a.m. and after 3:00 p.m. on weekdays when school is in session.    Subject to emergencies and any exception to this condition that may be agreed to by the Parties, Weston agrees to provide Hartford with complete and unfettered access to all areas of the Project necessary for completion of the Project at the times set forth above and on weekends and holidays, provided that, to the extent that work is scheduled outside of the hours of the regular custodial shift at the schools, the Surety agrees to pay for the cost of having custodians on-site in order to allow access to the schools, as may be necessary. On the Wednesday of each week, the Surety is to provide Weston with a written "look ahead" schedule of the work it intends to perform over the course of the following week. Such notice is to include a list of the trade contractors that the Completion Contractor will be using to perform the Scope of Work and a description of the dates, times and locations where and when such work will be performed.  All work shall be performed consistent with the Construction Contract

9

provisions required for air quality and hygiene practices and maintenance of Weston's occupancy requirements.

12.     The Surety will be represented at the Project by Anthony Branca of PI Associates, or such other individual that the Surety may designate (the "Surety's Representative"). The Surety's Representative will represent the Surety on a day to day basis as work progresses at the Project. Weston agrees to provide the Surety's Representative with a reasonable work area and access to a phone, facsimile and copier for the performance of his duties while at the Project. Hartford agrees that it will reimburse Weston for the reasonable cost of the Surety's Representative's use of the phone, facsimile and/or copier. The Surety's Representative has no authority to negotiate changes to the Scope of Work without the express written consent of the Surety. The Surety will oversee the Completion Contractor's compliance of the work to be completed. The Surety will sign all pay requisitions submitted to Weston. Payments from Weston shall be made payable to the Surety.

13.     Weston will be represented at the Project by its clerk of the works, Lenny Bisson, or such other individual that Weston may designate ("Weston's Representative"). Weston's Representative shall be present at the Project site on a day to day basis to monitor the work that the Completion Contractor is performing. . Unless otherwise provided by Weston in writing subsequent to this Takeover Agreement, Weston's Representative has no authority to approve work. Weston and the Surety acknowledge and agree that determinations as to whether Scope of Work items have been completed shall be made in accordance with the provisions of the Construction Contract, except as may be modified by this Takeover Agreement.

14.     Weston and Hartford agree that Weston's Representative and the Surety's Representative will work cooperatively to make joint preliminary determinations concerning

whether Scope of Work items have been performed.  Upon receipt of notification that items in the Scope of Work have been performed, , Weston shall require that Bill Barnes of the Design Partnership of Cambridge ("the Architect") review the completed items of the Scope of Work for acceptance of portions of the Project and elimination and/or deletion of items on the Punchlists. If Bill Barnes is not available in isolated circumstances to review the completed items, Weston shall require that the Architect provide another qualified architect with knowledge of the Project and authority to review and make determinations concerning the completion of the Scope of Work.

15.    Weston agrees to pay for the Architect's services related to one complete inspection and review of completed items of work at the request of the Surety.  From time to time, the Surety may also submit a written request to Weston for inspection and review by the Architect of those Scope of Work items the Surety claims are complete.  The Surety agrees that if the Surety makes such a request, the Surety will pay for the Architect's services associated with such inspection.  Weston agrees that if the Surety makes such a request, Weston will require that the Architect conduct an inspection of those items within two (2) weeks of the receipt of such written request. .

16.    Weston agrees that the total liability of the Surety under this Takeover Agreement and under the Performance Bond is limited to and shall not exceed the bond penalty of the Performance Bond.  All payments made by the Surety for performance of the Scope of Work shall be credited against the bond penalty of the Performance Bond.  Nothing in this Takeover Agreement constitutes a waiver of such bond penalty, or an increase in the liability of the Surety under the Performance Bond.

17.    The Surety's Payment Bond shall remain in full force and effect in accordance with its terms and provisions. Weston agrees that the total liability of the Surety under its Payment Bond is limited to and shall not exceed the bond penalty of the Payment Bond. All payments made by the Surety under its Payment Bond shall be credited against the bond penalty of the Payment Bond. Nothing in this Takeover Agreement constitutes a waiver of the bond penalty under the Payment Bond, or an increase of the liability of Hartford under the Payment Bond. Weston acknowledges that the Surety, in accordance with the terms of the Payment Bond, has the discretion to settle or compromise and otherwise independently handle any and all claims under the Payment Bond.

18.    Weston expressly reserves all rights and claims that may be available under contract, at law, or in equity, including under the terms and provisions of the Construction Contract and the Bonds. Weston expressly reserves the right to prosecute any claims under the Construction Contract and performance under the Construction Contract, Performance Bond, or this Takeover Agreement.

19.    The Surety does not waive the rights of the Surety or its Principal, if any, to contest the validity of the termination by Weston of the Construction Contract, whether items of work are properly in the Scope of Work, or of any other claims that the Principal may have against Weston or any other person, corporation or entity. If it is determined by an appropriate forum that the termination was not proper, then the Surety reserves all of its rights against Weston as may arise from such determination.

20.    Except for the reservation of rights as set forth herein, this Takeover Agreement is solely for the benefit of Weston and the Surety. Weston and the Surety do not intend by any provision of this Takeover Agreement to create any rights in or to increase the rights of any

12

third-party beneficiaries, nor to confer any benefit upon or grant enforceable rights under this Takeover Agreement or otherwise to anyone other than Weston and the Surety. Weston and the Surety acknowledge that nothing in this Takeover Agreement shall extend or increase the rights, if any, of any third party claimants under the Performance Bond or Payment Bond.

21.    With respect to the work to be performed under the Construction Contract, this Takeover Agreement constitutes the whole of the understandings, discussions and Takeover Agreements by and between Weston and the Surety. Other than the Construction Contract, Weston and the Surety acknowledge that there have been no oral, written, or other Takeover Agreements of any kind as a condition precedent to, or to induce the execution of this Takeover Agreement. Other than the Construction Contract, any written or oral discussions conducted prior to the effective date of this Takeover Agreement with respect to the work performed herein shall not in any way vary or alter the terms of this Takeover Agreement.

22.    This Takeover Agreement may not be changed, amended or altered in any way except by a writing executed by both Weston and the Surety. This Takeover Agreement shall be governed and controlled by the laws of the Commonwealth of Massachusetts. The existing claim provisions of Section 4.5 of the Construction Contract shall apply as though fully set forth herein.

23.    This Takeover Agreement shall extend to and be binding upon the parties hereto and their respective successors and assigns.

24.    Any notices given by Weston to the Surety, or the Surety to Weston, under this Takeover Agreement shall be addressed as follows:

As to Weston:

Ms. Judith Belliveau
Assistant Superintendent for Business

13

Weston Public Schools
89 Wellesley Street
Weston, MA 02493

With a copy to:
Joseph A. Barra, Esq.
Gadsby Hannah, LLP
225 Franklin Street
Boston, MA 02110

**As to the Surety:**

Mr. Kenneth A. Cranston
The Hartford
Hartford Plaza T4
Hartford, CT 06115
Phone (860) 547-8229
Facsimile (860) 547-2092

With a copy to:
Bradford R. Carver, Esq.
Cetrulo & Capone LLP
Two Seaport Lane, 10th Floor
Boston, MA 02210
Phone (617) 217-5500
Facsimile (617) 217-5200

25.    This Takeover Agreement may be executed in counterparts, and shall be effective as of the date first written above.

26.    In the event that one or more provisions of this Takeover Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, illegality and enforceability of the remaining provisions contained in this Takeover Agreement shall not be in any way affected or impaired thereby.

27.    It is understood and agreed by Weston and Hartford that this Takeover Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the Takeover Agreement to be drafted.

IN WITNESS WHEREOF, the parties have executed this Takeover Agreement on the date indicated above, and each of the undersigned hereby represent that they are duly authorized to execute this document on behalf of and to bind the respective parties to the terms of this Takeover Agreement.

THE TOWN OF WESTON, AS REPRESENTED BY THE WESTON SCHOOL COMMITTEE

By:    _____

By:    _____

By:    _____

By:    _____

By:    _____

HARTFORD FIRE INSURANCE COMPANY,

By:    _____

Mr. Kenneth A. Cranston

15

IN WITNESS WHEREOF, the parties have executed this Takeover Agreement on the date indicated above, and each of the undersigned hereby represent that they are duly authorized to execute this document on behalf of and to bind the respective parties to the terms of this Takeover Agreement.

THE TOWN OF WESTON, AS REPRESENTED BY THE WESTON SCHOOL COMMITTEE

By: _____

By: _____

By: _____

By: _____

By: _____

HARTFORD FIRE INSURANCE COMPANY,

By: _____

    Mr. Kenneth A. Cranston

15

ED: 11/19/2004

11/12/04

WESTON ELEMENTARY SCHOOLS
Punch List Scope Analysis

| Exhibit A | Not Disputed | Disputed | Refused | TDPC Value |
|---|---|---|---|---|
| Landscape | $1,300.00 | $0.00 | $0.00 | $1,300.00 |
| Kitchen Equipment | $2,350.00 | $0.00 | $0.00 | $2,350.00 |
| Mechanical, Electrical, Plumbing, Fire Protection | $195,130.00 | $0.00 | $200.00 | $195,330.00 |
| Country School Roof | $8,200.00 | $0.00 | $0.00 | $8,200.00 |
| Country School Exterior Phase I | $9,730.00 | $4,850.00 | $1,000.00 | $15,580.00 |
| Country School Exterior Phase II | $15,275.60 | $29,625.00 | $0.00 | $44,900.60 |
| Country School Interior Part A | $30,839.00 | $7,175.00 | $2,225.00 | $40,239.00 |
| Country School Interior Part B | $32,985.00 | $14,335.00 | $3,875.00 | $51,195.00 |
| Country School Interior Part C | $24,165.00 | $5,445.00 | $3,275.00 | $32,885.00 |
| Woodland School Rip-Rap | $0.00 | $0.00 | $25,000.00 | $25,000.00 |
| Woodland School Roof | $2,000.00 | $5,000.00 | $0.00 | $7,000.00 |
| Woodland School Exterior Phase I | $7,375.00 | $11,750.00 | $1,475.00 | $20,600.00 |
| Woodland School Exterior Phase II | $10,475.00 | $8,350.00 | $3,600.00 | $22,425.00 |
| Woodland School Interior Part A | $27,583.00 | $7,560.00 | $4,925.00 | $40,068.00 |
| Woodland School Interior Part B | $11,760.00 | $5,510.00 | $350.00 | $17,620.00 |
| Woodland School Interior Part C Phase I | $18,745.00 | $8,760.00 | $10,150.00 | $37,655.00 |
| Woodland School Interior Part C Phase II | $24,240.00 | $5,325.00 | $4,250.00 | $33,815.00 |
| Woodland School Interior Part D | $28,940.00 | $27,425.00 | $1,000.00 | $57,365.00 |
| | | | | |
| SUBTOTAL | $451,092.60 | $141,110.00 | $61,325.00 | $653,527.60 |

| Exhibit B | Not Disputed | Disputed | Refused | Value |
|---|---|---|---|---|
| JNEI Field Report Rev. Date 11/10/04 | $4,000.00 | $0.00 | $1,700.00 | $5,700.00 |
| Warranty Claim - Sitework | $13,700.00 | $0.00 | $11,200.00 | $24,900.00 |
| Complete Work Not In Punchlist | $72,940.00 | $18,982.00 | $0.00 | $91,922.00 |
| Warranty Claims and Latent Defects | $0.00 | $11,110.00 | $0.00 | $11,110.00 |
| | | | | |
| SUBTOTAL | $90,640.00 | $30,092.00 | $12,900.00 | $133,632.00 |
| | | | | |
| TOTAL | $541,732.60 | $171,202.00 | $74,225.00 | $787,159.60 |